1  Edward C. Chen (SBN 312553)
2  LAW OFFICES OF EDWARD C. CHEN
   1 Park Plaza, Suite 600
3  Irvine, CA 92614
   Telephone: (949) 287-4278
4  Facsimile: (626) 385-6060
5  Edward.Chen@edchenlaw.com

6  *Attorney for Plaintiff and the Proposed Classes*

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| HUGH NGUYEN, an individual, on behalf of himself and all others similarly situated, | Case No. 8:19-cv-01442 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | 1. Violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*) |
| v. | 2. Violations of the California Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1780 *et seq.*) |
| | 3. Violations of the Federal Trade Commission Act (16 C.F.R. 455) |
| TESLA, INC. d/b/a/ TESLA MOTORS, INC., a Delaware corporation, | 4. Violations of the California Vehicle Code § 11713.18(a)(6) |
| | 5. Violations of California Vehicle Code § 11713.21 |
| Defendant. | 6. Violations of California's Consumer Legal Remedies Act (Civil Code § 1750 *et seq.*) |
| | 7. Violation of California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) |
| | 8. Violation of California's False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*) |
| | 9. Breach of Express Warranty |
| | 10. Breach of Implied Warranties |
| | 11. Intentional Misrepresentation |
| | 12. Negligent Misrepresentation |
| | 13. Fraud by Concealment |
| | 14. Quasi Contract/Unjust Enrichment/Restitution |
| | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................1

II. NATURE OF THE ACTION .............................................................5

III. PARTIES ............................................................................................8

IV. JURISDICTION .................................................................................10

V. VENUE ................................................................................................11

VI. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS................11

    A. HISTORY OF TESLA'S CERTIFIED PRE-OWNED ("CPO") VEHICLE PROGRAM ......................................................................11

    B. TESLA'S VIOLATIONS OF THE FTC'S "USED CAR RULE" .....................14

    C. TESLA'S VIOLATIONS OF CALIFORNIA VEHICLE CODE SECTION 11713.18(A)(6) ........................................................................16

    D. TESLA'S VIOLATIONS OF CALIFORNIA VEHICLE CODE SECTION 1172119

    E. TESLA'S VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA") ......................................................................20

    F. TESLA'S VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT AND SONG-BEVERLY WARRANTY ACT ......................................................23

    G. PLAINTIFF HUGH NGUYEN'S EXPERIENCE ...........................................27

VII. CLASS ACTION ALLEGATIONS ................................................33

VIII. CAUSES OF ACTION ......................................................................39

    COUNT I .................................................................................39
    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA") (15 U.S.C. § 2301 et seq.)
    COUNT II.................................................................................41
    VIOLATION OF CALIFORNIA'S SONG-BEVERLY CONSUMER WARRANTY ACT ("SONG-BEVERLY") (Cal. Civ. Code § 1790 et seq.)
    COUNT III.................................................................................45

VIOLATION OF FEDERAL TRADE COMMISSION ACT (Used Motor Vehicle Trade Regulation Rule)
(16 C.F.R. 455 et seq.)
COUNT IV .................................................................................46
VIOLATION OF CALIFORNIA VEHICLE CODE SECTION 11713
 (CA Veh. Code §11713 et seq.)
COUNT V.....................................................................................48
VIOLATION OF CALIFORNIA VEHICLE CODE SECTION 11713.21
(California Car Buyer's Bill of Rights, FFVR 35) (California Subclass Only)
COUNT VI ..................................................................................49
VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES
ACT (Cal. Civ. Code § 1750 et seq.)
COUNT VII ................................................................................54
VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
 (Cal. Bus. & Prof. Code § 17200 et seq.)
COUNT VIII................................................................................57
VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
 (Cal. Bus. & Prof. Code §§ 17500, et seq.)
COUNT IX ..................................................................................59
BREACH OF EXPRESS WARRANTY(Cal. Comm. Code § 2313)
COUNT X....................................................................................61
BREACH OF IMPLIED WARRANTIES(Cal. Comm. Code § 2314)
COUNT XI ..................................................................................63
INTENTIONAL MISREPRESENTATION(Cal. Civ. Code §§ 1709-1710)
COUNT XII .................................................................................64
NEGLIGENT MISREPRESENTATION(Cal. Civ. Code §§ 1709-1710)
COUNT XIII................................................................................65
FRAUD BY CONCEALMENT (Cal. Civ. Code § 3294)
COUNT XIV ...............................................................................68
QUASI CONTRACT/RESTITUTION/UNJUST ENRICHMENT
(California Law)

**IX.    REQUEST FOR RELIEF..............................................................68**

**X.     DEMAND FOR JURY TRIAL ...................................................69**

## I.   INTRODUCTION

1. "How many miles can I drive?" and "How long is the battery going to last?" are perhaps the two most common questions in the minds of consumers when shopping for an all-electric, battery-powered vehicle.   For Tesla, the right answer and approach to answering these questions appears to be not to answer these questions at all.   Instead, Tesla focuses its efforts on allaying the fears of what some drivers of electric vehicles call "range anxiety" by representing to consumers nationwide that they can rely on Tesla's promises to take care of them no matter what happens to the batteries of Tesla's vehicles.   As it turns out for many consumers who were led on to believe Tesla's promises, the fact is that Tesla never actually meant to keep their promises and follow through on their guarantees.

2. Tesla owners are met with the harsh reality that not everything is what it seems to be, when they realize that they are not living the dream world that Tesla ex-CEO Elon Musk represents to all consumers.   One example of Musk's dream world is outlined in the blog article titled, "Creating the World's Best Service and Warranty Program", where Musk describes what the "best warranty in the world" would be and ultimately goes on by promising that the warranty offered by Tesla equates to "peace of mind" for consumers and purchasers of Tesla vehicles. [1]   Displayed prominently at the top of the page are the words "[u]nconditional warranty for Model S battery, even for user error."



Creating the World's Best Service and Warranty Program

Elon Musk, Chairman, Product Architect & CEO   •   April 26, 2013

Fully loaded Model S Performance 85 cars or Tesla Roadsters as loaners
Tesla will seamlessly valet the loaner cars to your location
$600 annual service now optional with no effect on warranty
Unconditional warranty for Model S battery, even for user error [2]

---

[1] Tesla, "Creating World's Best Service and Warranty Program", https://www.tesla.com/blog/creating-world's-best-service-and-warranty-program-0 (last visited July 3, 2019).

[2] *Id.*

3. With regards to the driving force and arguably the most important component of an all-electric vehicle, the battery, Tesla offers the following warranty:

> "**Battery Warranty**
>
> The battery pack in your car is obviously very important and expensive to replace. In developing the Model S, we took great care to ensure that the battery would protect itself, always retaining a few percent of energy.  If something goes wrong, it is therefore our fault, not yours.
>
> Except in the cases of a collision, opening of the battery pack by non-Tesla personnel or intentional abuse (lighting the pack on fire with a blowtorch is not covered!), all damage is covered by warranty, including improper maintenance or unintentionally leaving the pack at a low state of charge for years on end. The battery will be replaced at no cost by a factory reconditioned unit with an energy capacity equal to or better than the original pack before the failure occurred.
>
> The intent is to provide complete peace of mind about owning your Model S even if you never read or followed the instructions in the manual." [3]

4. Tesla goes on to reassure consumers even further in a blog article titled, "When Life Gives You Lemons…" where Tesla describes a lemon law claim filed against Tesla by an attorney in Wisconsin[4].  While Tesla was able to find the silver-lining and make "lemonade" as a result of those claims, Tesla's bold claims and empty guarantees have only served to further induce the reliance of consumers nationwide.  Tesla specifically represents in the article:

> "First, let us state that we believe in lemon laws – they exist to protect customers against cars that repeatedly suffer defects. That's a worthy thing to address. *We also make a point of going above and beyond in*

---

[3] *Id.*
[4] Tesla, "*When Life Gives You Lemons*" (Apr. 9, 2014) https://www.tesla.com/blog/when-life-gives-you-lemons (last visited Jul. 4, 2017).

*customer service, which extends to buying back cars on fair terms from any customer who ultimately remains unsatisfied with their vehicle.* We never want someone to be unhappy in their ownership of a Model S."[5]

"We are continuing our efforts to work with the customer and are happy to address any legitimate concerns he has about his Model S. Customer service remains of utmost importance to Tesla, and no Model S owner should be unhappy with their car.  However, we would also like the public to be aware of the potential for lemon laws to be exploited by opportunistic lawyers."[6]

5.   Unfortunately for Tesla, the instant case is not one that can be turned into "lemonade" and it is time for Tesla to be held accountable.  Plaintiff brings this action on his own behalf, and on behalf of the Nationwide Class and California Classes, which consist of the putative class members who have purchased used Tesla Model S and X vehicles, and asserts various claims against Tesla for having committed violations of the federal Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.* ("MMWA"); Federal Trade Commission Act (16 C.F.R. 455), Used Motor Vehicle Trade Regulation Rule ("FTC Used Car Rule"); California's Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code § 1780 *et seq.*; California's Vehicle Code section 11713 *et seq.*, Cal. Veh. Code § 11713.18(a)(6); California Vehicle Code section 11721 *et seq.;* California's Consumer's Legal Remedies Act (Cal. Civ Code Section 1750 *et seq.*) ("CLRA"), California's Unfair Competition Law (Cal. Bus. Prof. Code Section 17200 *et seq.*)  ("UCL"); Violation of California's False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*; breach of express warranty, breach of implied warranty, intentional misrepresentation; negligent misrepresentation; common law fraud; unjust enrichment; breach of contract and violation of consumer protection and warranty laws nationwide.

---

[5] *Id. (emph. add)*
[6] *Id. (emph. add)*

6. Since April 2015, Tesla has been selling preowned models of their all-electric, battery-powered vehicles to consumers nationwide.  Tesla represents that each vehicle in their used vehicle fleet is given a full inspection and that owners of these vehicles will be taken care of for mostly any problems that they might experience.  Across the country, thousands of consumers believed Tesla's representations and have purchased over 13,000 used Tesla Model S and Tesla Model X vehicles since April 2015 (the "Class Vehicles"). For many purchasers of these vehicles, however, is the fact that Tesla inspects these vehicles without providing any type of checklist or written report to disclose the findings of the purported inspections.  With regards to the vehicle batteries, for example, purchasers are not told what the battery capacities of the vehicles they are purchasing are, thus leaving purchasers to rely upon Tesla's deceptive marketing and unfair, sometimes unlawful, business practices.  To make matters worse, purchasers of Tesla's used, certified pre-owned and fully inspected cars quickly come to learn that what Tesla represents as the "best warranty and service program in the world" isn't what it seems to be.  Thousands of purchasers, including Plaintiff, have been denied warranty coverage and have been frustrated by the seemingly endless delay and excuses given by Tesla and their apparent avoidance of having to service these cars.

7. Plaintiff Hugh Nguyen and the putative class members make up the individuals who purchased a used Tesla Model S or Tesla Model X Vehicle (the "Class Vehicles") directly from Tesla in the U.S.  Tesla induced Plaintiff and other putative class members to purchase the Class Vehicles despite violating federal and state laws and regulations, and induced owners and potential purchasers of Tesla vehicles throughout and across the U.S. that Tesla vehicles would be warrantied.  Tesla began selling used vehicles in or around April 2015 and has sold nearly 13,000 used Tesla Model S vehicles in the United States since the inception of its certified preowned program, with nearly 5,000 of those

vehicles having been sold in California alone.[7]  The number of putative class members and Class Vehicles that will be sold is only expected to grow larger in volume, and this action is necessary to prevent further harm.[8]

8. By representing that used Tesla vehicles are fully inspected but failing to provide purchasers of the Class Vehicles with results of said inspections, let alone disclose any material facts of these vehicles including the batteries, Tesla violated and continues to violate various state and federal consumer protection and warranty laws. Consumers rely on Tesla's warranties for the Class Vehicles, which include a 4-year, 50,000-mile or 2-year, 100,000-mile warranty which cover a list of standard parts and defective items.  Additionally, as part of Tesla's representation that it provides the "worlds-best warranty", Tesla offers an 8-year, unlimited mile warranty for the batteries of the Class Vehicles.  Despite representing that their warranties are the best in the world, Tesla engages in unfair business practices, deceptive marketing, and fraudulent acts and concealment in order to avoid performance on said warranties.  Plaintiff and the putative class members have been damaged by Tesla actions and are left out to dry or are forced to pay out-of-pocket costs for things that should have been and were supposed to have been taken care of by Tesla as promised.

## II.    NATURE OF THE ACTION

9. Plaintiff Hugh Nguyen brings this action individually and on behalf of all others similarly situated who purchased a used Tesla Model or Model X vehicle (the "Class Vehicles") and seeks a buy-back for his vehicle, a buyback of the Class Vehicles, including a full refund for any out-of-pocket repairs or replacements made for batteries of the Class Vehicles, damages, injunctive relief, and equitable relief for the conduct of

---

[7]  https://ev-cpo.com/hunter/ (Advanced Options Filter – Model S/Model X - Used Inventory – Archived Listings – U.S.A)

[8]  Tesla Press Release, *Tesla First Quarter 2019 Update* (Jan. 30, 2019), https://ir.tesla.com/static-files/b2218d34-fbee-4f1f-ac95-050eb29dd42f

Tesla related to the violations as alleged in this complaint. Plaintiff and other putative class members allege and seek equitable and monetary relief from Tesla based upon false and deceptive advertising practices employed by Tesla and introduced widely and publicly on its website in order to intentionally and fraudulently mislead potential consumers as to the condition of its certified preowned/used vehicles. Additionally, Plaintiff and other putative class members seeks punitive and exemplary damages for Tesla's knowing fraud that garnered it illicit profits for selling warrantied products without disclosure of inspection reports and failure to provide consumers with the required buyer's guide and/or displaying them as required by federal and state laws, and for fraudulently representing to purchasers that such warranties would be upheld by Tesla.

10. Plaintiff's individual claims against Tesla, and the allegations made on behalf of class arise from the same conduct and circumstances alleged herein and based upon the purchase of a Class Vehicle. Upon information and belief, and by investigation of Plaintiff's counsel, it is approximated that there are nearly 13,000 Tesla vehicle owners who are likely to be found to have suffered from Tesla's actions. Tesla's direct control and oversight through the used/preowned purchasing process puts Tesla at a unique and powerful bargaining situation. Tesla's exclusivity and proprietary knowledge regarding the batteries of its vehicles allows Tesla to commit various deceptive acts and/or fraudulently withhold and conceal material information to both potential and actual customers. In fact, Tesla's approach to the used, certified preowned car buying process puts potential and actual customers at risk and leaves them with the shortest end of the bargaining stick. Simply put, there is only one way to buy a used Tesla vehicle from Tesla, and that means there's no choice but to play by Tesla's rules.

11. Plaintiff's individual claim arises from the purchase of one of the Class Vehicles, for which Tesla continues to deny replacement of an obviously-defective and/or severely degraded battery under warranty, and unlawfully refuses to provide the proper

remedies and relief available to consumers in accordance with various state and federal laws such as the Magnuson-Moss Warranty Act ("MMWA") 15 U.S.C.  §§ 2301 *et seq.*, California's Song-Beverly Warranty Act ("Song-Beverly") Cal. Civ. Code §§ 1790 *et seq.*, California's Unfair Competition Law ("UCL") Cal. Bus. Prof. Code §§ 17200 *et seq.*, California Consumers Legal Remedies Act ("CLRA"), and both federal and California state laws prohibiting certain acts and establishing requirements for sellers of used vehicles.

12. Plaintiff Nguyen brings this action on his own behalf and on behalf of the putative class members because he: (1) paid for a vehicle that was advertised to have approximately 210 miles of range at a full charge per EPA estimates but received a vehicle that could only reach 166 miles at full charge; (2) paid for a vehicle that was advertised to have been fully-inspected by Tesla but was never provided a checklist or written details regarding such inspection; (3) paid for vehicle that Tesla warrantied with a 2-year, 100,000 limited warranty for which Tesla denies warranty replacement under; (4) paid for a vehicle that was advertised and publicly known to have an 8-year, unlimited mile battery warranty for which Tesla denies warranty replacement under; (5) has been denied a battery replacement despite the fact that his battery is either seriously defective or severely degraded and detrimentally relied upon Tesla's advertising and marketing practices by believing that critical functions of his vehicle would be covered; (6) relied upon Tesla's representations that his vehicle was "fully inspected" prior to sale and paid more for his vehicle had Tesla fully disclosed the relevant and material information with regards to the vehicle, and namely, the battery health of the vehicle; (7) was damaged by Tesla's violations of federal and state laws governing used car sales and deceptive business practices; and (8) for all other acts of Tesla that result in the various federal and state law violations as described herein.

13. Tesla violated and continues to violate various state and federal consumer and warranty protection laws selling cars through its used/preowned car program.   As

applicable to Plaintiff and the putative class, Tesla has engaged in unlawful and unfair business practices, false and deceptive advertising, fraudulent concealment, intentional misrepresentation, and specifically failed to disclose the battery health of Plaintiff's vehicle prior to sale. Tesla also breaches various express and implied warranties by failing to provide the proper service and replacement for Plaintiff and the other putative class members' vehicles. Left unchecked, Tesla has and will continue to engage in the same behavior to the detriment of thousands of consumers nationwide.

### III.    PARTIES

14. Plaintiff Hugh Nguyen ("Plaintiff") is an individual who was, and is at all times relevant herein, a resident of Rancho Cucamonga, California. Plaintiff purchased a certified pre-owned/used 2014 Tesla Model S bearing the vehicle identification number 5YJSA1S11EFP32857.

15. Plaintiff Nguyen took delivery of the Subject Vehicle on November 17, 2017. The Subject Vehicle was advertised and represented by Tesla to be capable of providing approximately 210 miles of range at a full charge based on estimates provided by the Environmental Protection Agency ("EPA") and relied upon by Plaintiff prior to purchase. At the time of delivery and pickup, Plaintiff's vehicle only contained a maximum range of approximately 165-166 miles at a full charge, over 20% less than what was advertised by Tesla. Plaintiff Nguyen's vehicle was purchased and delivered with a 2-year, 100,000 limited warranty, including an 8-year, unlimited mile warranty for the vehicle's battery.

16. Plaintiff Nguyen was directly harmed by Tesla's actions as described in the complaint and alleged herein. Plaintiff has been harmed by Tesla's fraudulent acts concealment of material facts, deceptive advertising, unfair and unlawful business practices.

17. Defendant Tesla, Inc. d/b/a/ Tesla Motors, Inc. is a Delaware corporation, with its principal place of business in Palo Alto, California. Tesla is an auto manufacturer of electric vehicles and designs, manufacturers, markets, distributes, and sells exclusively

electric vehicles.  Since 2012, Defendant Tesla designed, manufactured, distributed, marketed and sold the Tesla Model S electric vehicle ("Model S") and, later, the Tesla Model X ("Model X") in the United States and with a large concentration of both vehicles being sold in the State of California.

18. Tesla also regularly conducts business throughout the State of California, and as stated above more specifically, owns operates at least two stores and vehicle service centers within the Court's jurisdictional district.  On information and belief, through Tesla's publicly filed financial reports and its website, Tesla's design, testing, and manufacturing of its vehicles, including the Class Vehicles at its headquarters in California and throughout the State of California.  Tesla's advertising, promotional materials, and website are designed to show the operation of various Tesla vehicles in a manner which emanates that its vehicles are from California.  Tesla also utilizes promotional videos which are purporting to show the operation of Model S, X and other Tesla vehicles being operated and driven in California.

19. Tesla has a system of company-owned Tesla dealerships in states throughout the United States, via which it distributes, markets, advertises, and sells Tesla-branded goods and vehicles, including the Class Vehicles.

20. Tesla's authorized dealerships are tightly and highly controlled by Tesla and are structured as agents of Tesla.  Tesla controls the marketing practices of Tesla-authorized dealerships, the repair and service facilities within those dealerships, and has full rein over the appearance of these purported dealerships.  Tesla's control of its dealerships emanates primarily from its headquarters in California.

21. At all times relevant to this action, Tesla, marketed, distributed, advertised, leased, sold, and warranted its vehicles, including the Class Vehicles by and through its dealerships located nationwide with many of them located in California.

/ / /

/ / /

## IV.  JURISDICTION

22. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims of Plaintiff and the Class arise under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 et seq., a United States federal law, the FTC's rules and regulations governing the sale of used cars, amongst others.  This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a)(1) and (d), because the proposed classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exist.  Tesla sold approximately 13,000 used, certified pre-owned Model S and 163 Model X vehicles between April 2015 until present.9  It is believed, and therefore alleged that Tesla failed to complete a full inspection, disclose required materials, and honor the warranties for all, or virtually all of the Class Vehicles.

23. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24. This Court has both specific and general personal jurisdiction over Defendant Tesla because it maintains minimum contacts with the United States, this judicial district, and this state.  Tesla purposefully availed itself of the laws of this state by conducting a substantial amount of its business in the state, including designing, testing, manufacturing, and/or distributing Tesla vehicles, including the Class vehicles, in this state.  Tesla also developed, prepared, and disseminated warranty materials for the Class Vehicles within and from its headquarters in this state.  Thousands of Class Vehicles were sold, leased, and delivered at various Tesla showroom and service center locations in this state.

/ / /

/ / /

---

9 *See* https://ev-cpo.com/hunter/ (Model S and X; Used Inventory; Archived Listings)

## V.    VENUE

25. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2). and for all purposes pursuant to the requirements set forth under California Civil Code Section 1780 *et seq.* (Cal. Civ. Code § 1780(e)) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and Tesla conducts business within this judicial district and operates two service center and showroom locations in this judicial district, one in Buena Park, CA and in Costa Mesa, CA. Plaintiff's vehicle was purchased and delivered at Tesla's Buena Park location, and Plaintiff's vehicle was mainly serviced in Orange County, California.

26. Venue in this judicial district is also is proper because a substantial portion of Tesla's wrongdoing alleged in this Complaint took place in the State of California and in this judicial district; Tesla is authorized to do business in the State of California; Tesla is licensed by the State of California as a dealer of used automobiles; Tesla has sufficient minimum contacts with the State of California and/or otherwise intentionally avails itself of the markets in the State of California through the production, promotion, marketing, manufacturing, advertising, and sale of products and services in the State of California. An exercise of jurisdiction by this Court is permissible and reasonable under traditional notions of fair play and substantial justice since over 5,000 of the 13,000 Class Vehicles were sold by Tesla in the State of California alone.

## VI.    FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.    History of Tesla's Certified Pre-Owned ("CPO") Vehicle Program

27. Since April 2015, Tesla has been selling its used cars through its own version of a certified pre-owned ("CPO") program.  To date, Tesla has sold over 13,000 used, certified pre-owned, Model S and Model X cars nationwide, with over 5,000 of those vehicles having been sold in California alone.  Tesla provides various express warranties to its used vehicle fleet, which include a 4-year, 50,000-mile and a 2-year, 100,000-mile pre-owned vehicle limited warranty.

28. At various times throughout the course of selling the Class Vehicles, Tesla represented that the Class vehicles would receive full inspections to determine whether repairs would be necessary.  Throughout the course of selling these Class Vehicles, Tesla has offered various "numbered-point programs" which correlates to the number of parts or items checked before being deemed certified or ready to be sold by Tesla as a used vehicle.  Tesla has changed its mind over the past few years and has gone from a 214-point, seven-hour inspection to a 70-point, unknown timing inspection.  As of the date of filing this instant action, Tesla offers a "120+ point" inspection as displayed on their website in the frequently asked questions (FAQ) section for used cars:

> **WARRANTY & CONDITION**
> **What warranties come with a used Tesla?**
> Every used Tesla vehicle has passed a 120+ point inspection and comes with a bumper-to-bumper warranty. Model S and X will come with either a 4-year or 50,000 additional mile warranty or 2-year, up to 100,000 total mile warranty (dependent on age and mileage at time of purchase). Model 3 will come with the remainder of the original 4-year or 50,000 mile warranty. The balance of original Battery and Drive Unit Limited warranty still applies for used cars. Warranty information will be available for all vehicles currently listed for sale. For the most accurate warranty information for your used Tesla, please contact Tesla Service.
> Back to Top

[10]

29.  What Tesla fails to address here, however, is the fact that consumers, including Plaintiff and other putative class members, are not provided with any information regarding the results of the purported inspections.  Tesla fraudulently conceals this information as they did to Plaintiff and other putative class members, with

---

[10] *See* Tesla, "Ordering a Used Tesla", https://www.tesla.com/support/used-tesla-support#warranties-used-Tesla (last visited July 19, 2019).

the intention of tricking them into buying cars that they would not have bought had this information been shared with them from the start.  Plaintiff and other putative class members have been harmed by Tesla's violations of federal and state laws which require disclosure of this material information because they were put into an extremely unfair bargaining position with Tesla.  Tesla had and continues to have a duty to consumers to disclose the results of these inspections so that consumers may be better informed.  Plaintiff, other putative class members, and future consumers are harmed by overpaying for Tesla cars that are known to be defective or in much worse condition than represented by Tesla, and they would not have paid so much or would not have purchased at all had Tesla fulfilled its duty and obligation to inform them of such.

30. On March 2, 2017, Tesla announced what was called a "Tesla Infinite Mile Warranty" which provided most, if not all of Tesla Model S and X vehicles with an 8-year, infinite mile warranty on both the battery pack and drive unit of its Model S 85kWh vehicles to all future-produced vehicles of the same model, and retroactively to then-existing vehicles as well.[11]  Customers like Plaintiff and the putative class members relied upon statements by Tesla, such as the "worlds-best warranty program" and the "infinite-mile warranty" as Tesla's representation that the Class Vehicles and all Tesla vehicles would be taken care of.

31. Furthermore, customers like Plaintiff and the putative class members found themselves unable to resist to Tesla's empty promises, false advertisements, and deceptive marketing strategy.  Plaintiff and the putative class members purchased the Class Vehicles with what they believed were covered under warranty by Tesla, or at the very least fully inspected by Tesla.  Plaintiff and the putative class members also believed

---

[11] *See* Tesla, "Infinite Mile Warranty" (Mar. 2, 2017), https://www.tesla.com/blog/infinite-mile-warranty (last visited July 16, 2019).

that such inspections would cover an inspection of what is arguably the most important part of a Tesla vehicle, the battery.

32. In fact, Tesla maintains the exclusive rights to this information as indicated in the warranty language below:

> "The Tesla lithium-ion battery (the "Battery") and Drive Unit are extremely sophisticated powertrain components designed to withstand extreme driving conditions. You can rest easy knowing that Tesla's state-of-the-art Battery and Drive Unit are backed by this Battery and Drive Unit Limited Warranty, which covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit…" [12]

33. Tesla's statements regarding the full-inspection, vehicle, and battery warranties were empty promises to induce consumers to purchase Tesla's vehicles. They were deceived, however, as Plaintiff and the putative class members soon realized that Tesla failed to honor the represented warranties that were made expressly and impliedly by Tesla. Despite making such grandiose and deceptive promises to consumers without intending to actually repair or provide replacements as warrantied, Tesla falls short of its promises. In fact, Tesla failed to provide required material information regarding the results of inspection for all, or for basically all of the Class Vehicles. Tesla knowingly failed to disclose any relevant or useful information of the same results and failed to provide information such as the level of current battery capacity for each of the Class Vehicles.

**B.     Tesla's Violations of the FTC's "Used Car Rule"**

34. Federal Trade Commission Act (16 C.F.R. 455), also known as the Used Motor Vehicle Trade Regulation Rule ("FTC Used Car Rule") requires that used vehicle dealers display a "Buyers Guide" on all used vehicles that are offered for sale. Dealers who fail

---

[12] Tesla Warranty https://www.tesla.com/support/vehicle-warranty (last visited July 19, 2019)

to comply with the FTC Used Car Rule face penalties of up to $42,530 per violation in subsequent FTC enforcement actions.  The FTC actively enforces this rule against used vehicle dealers, and despite knowing this, Tesla failed to comply with the rule.[13]

35. Dealers are required to display the written form prominently and conspicuously on or in a vehicle when a car is available for sale.[14]  According to the FTCs' own words, this means that the Buyer's Guide form must be "in plain view and both sides must be visible."[15]  Additionally, dealers are required to give buyers the original copy or a copy of the vehicle's Buyers Guide at the sale.  The FTC Used Car Rule is separate from a dealer's mandatory compliance under state and federal warranty laws.

36. Tesla failed to provide Plaintiff with the requisite Buyer's Guide form Tesla further violated federal and state laws requiring used car dealers to display a "Buyer's Guide" on used vehicles.  Plaintiff did not see a "Buyer's Guide" placed on the Subject Vehicle and was not aware of any such display throughout the purchase process.  On the date of vehicle delivery, the Subject Vehicle did not have a "Buyer's Guide" displayed as required by federal and state laws, nor did Tesla provide a copy of the same.

37. Plaintiff and other putative class members never received a buyer's guide form, nor was such form ever displayed on the Subject Vehicle at any time prior to and up until purchase.  Plaintiff was never provided a copy of the buyer's guide at any time prior to, during and after the sale of Plaintiff's vehicle w Plaintiff provided a copy of the buyer's guide.  Upon further information and belief, Tesla has never actually placed a buyer's

---

[13] "FTC, Partners Conduct First Compliance Sweep under Newly Amended Used Car Rule" (Jul 12, 2018), https://www.ftc.gov/news-events/press-releases/2018/07/ftc-partners-conduct-first-compliance-sweep-under-newly-amended (last visited July 12, 2018).

[14] Federal Trade Commission Buyer's Guide, https://www.ftc.gov/system/files/documents/plain-language/cfr_buyers_guides_english.pdf (last downloaded July 23, 2019).

[15] Federal Trade Commission website, "Dealer's Guide to the Used Car Rule", https://www.ftc.gov/tips-advice/business-center/guidance/dealers-guide-used-car-rule (last visited July 22, 2019).

guide for any of its used vehicles that have ever been sold by Tesla, which warrants an award of exemplary and punitive damages.[16]

38. Upon information and belief, and by investigation of Plaintiff's counsel, Tesla has failed to provide over 13,000 buyer's guide forms, the number being the estimated amount of used vehicle purchasers, which represents the entire putative class.  Upon information and belief, Tesla continues to fail to provide the requisite written disclosures in violation of the FTC Used Car Rule and therefore thousands of consumers nationwide are subject to harm.

## C.      Tesla's Violations of California Vehicle Code Section 11713.18(a)(6)

39. California Vehicle Code Section 11713.18, part of the California's Car Buyer's Bill of Rights (FFVR 35), was enacted in 2006 to require mandatory disclosures of items such as warranties and insurance by California-licensed car dealers like Tesla.  Tesla has violated various sections of the Car Buyer's Bill of Rights and continues to violate the same at the expense of California consumers.

40. California state law regulates the use of the word "Certified" when selling used vehicles.  A dealer cannot "advertise for sale or sell a used vehicle as 'certified' or use any similar descriptive term" if the dealer does not comply with the requirements set forth in Vehicle Code section 11713.18.  §11713.18(a)(6) states that it is a violation of California law if "[p]rior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected."

41. California Vehicle Code § 11713.18(b) provides the remedies for used car purchasers in California, and states that "[a] violation of this section is actionable under the [Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.*], [and] the

---

[16] Tesla would be subject to over $500,000,000 (five-hundred million dollars) if a FTC enforcement action sought the maximum penalty per violation against the estimated 13,000 violations that have already been committed.

[Unfair Competition Law ("UCL"), Bus. And Prof. Code §17200 *et seq*.]…"  (Ca. Veh. Code. § 11713.18(b).)

42. On June 6, 2017, during a Tesla shareholder meeting held by then-CEO Elon Musk, the topic of a new warranty for higher mileage Tesla Model S vehicles is brought up where Musk goes on by stating the following:

> "…I should mention we are going to really give more prominence to used Teslas on our website.  But we are not going to call it pre-owned.  That is like a bogus name, that's really BS – it is used okay.  Everyone knows that. Who are we fooling here?"  [17]

43. Meanwhile, as Musk was discussing the obvious differences between a "used" and "preowned" car, Tesla's webpage displayed, and had been displaying for months prior the following:



44. As it later comes to show, Tesla realized that the difference between the two terms isn't as obvious as it seems.  Tesla made multiple revisions to its used vehicle sales

---

[17] *See* InsideEVs, "$40,000 Used CPO Model S EVs Overwhelm Tesla's Pre-Owned Site", https://insideevs.com/news/333227/40000-used-cpo-model-s-evs-overwhelm-teslas-pre-owned-site/, (last visited July 18, 2019).

program, revisions which answers the ex-Tesla CEO's question of the "who" in the "who are we fooling here?" have clearly been reasonable consumers and purchasers of Tesla used/preowned vehicles.  In addition to the lack of foresight of Tesla at the time, and perhaps more alarming, was the failure of Tesla ex-CEO to recognize that the true issue lies not in the wording description of used or preowned Tesla vehicles, but rather, the fact that the average reasonable consumer would detrimentally rely upon Tesla's lofty representations and fail-proof vehicle warranties when buying a used, certified preowned vehicle and later learn that their vehicles would not be taken care of as promised.

45. Tesla makes extensive use of marketing terms and advertising tactics to lead consumers to believe that its used vehicles for sale are "certified" and such usage is prevalent throughout its sales, promotions and advertising.  On the vehicle purchase page for the Subject Vehicle, Tesla states that the vehicle will receive a "full inspection" in accordance to Tesla standards.

46. Tesla never provided Plaintiff with a report or checklist of the components that were inspected by way of a "completed inspection report indicating all components inspected" prior to sale, during the sale, or after the sale.  Tesla's failure to disclose a report violates the CLRA and federal laws in the following ways.

47. First, Tesla violated the CLRA by publicly advertising that its used vehicles were in some way, shape, or form, "certified" by Tesla standards without providing a completed inspection report *prior to sale,* or at any time thereafter.

48. Second, Tesla fraudulently induced Plaintiff and the putative class to rely upon Tesla's representation that the used vehicles sold by Tesla would receive a "full inspection" prior to sale, yet Tesla did not provide any form of a "completed inspection report."  Plaintiff and the putative class did not receive anything that indicated the components inspected, nor did Plaintiff and the putative class receive any information regarding the status and health of the batteries in the used vehicles.

49. Third, Tesla actively suppressed and concealed the results of its vehicle inspection, which it had a duty to disclose to Plaintiff and the putative class members. If Tesla had conducted a "full inspection" on the Subject Vehicle, then Tesla knew or should have known that the car Plaintiff had purchased was only capable of providing approximately 166 miles when charging the battery to 100%.

50. Tesla failed to disclose the battery health and true status of the Subject Vehicle to Plaintiff at any time prior to purchase and actual delivery, despite advertising the Environmental Protection Agency's estimated mileage range prominently on its webpage of 210 EPA estimated miles.

51. Tesla's failure to provide a checklist of the parts and components inspected to Plaintiff and other putative class members violates, at the very least, California Vehicle Code section 11713.18(a)(6). Plaintiff and the putative class members are entitled to relief from Tesla's violations under the CLRA.

**D.    Tesla's Violations of California Vehicle Code Section 11721**

52. In addition to Tesla's failure to provide a full and completed inspection checklist for its used vehicles, Tesla also fails to disclose and inform customers of their right to return the problem vehicles after purchase.

53. California Vehicle Code Section 11721, also part of the California's Car Buyer's Bill of Rights (FFVR 35), makes it mandatory for used car dealers like Tesla to provide customers who purchase a used car for less than $40,000 a two-day contract cancellation option agreement. This law is different than the "cooling off" period that is provided when consumers separately purchase a contract cancellation agreement.

54. Plaintiff's Model S was priced at $38,000, yet upon delivery and purchase of the vehicle, Plaintiff was completely unaware of the option to cancel the purchase contract and return the vehicle, albeit with a fee.

55. At the time of purchase, Tesla provides customers with a final list of documents to sign as part of a "final delivery documents" package, which includes among other documents, a Motor Vehicle Purchase Agreement and payment instructions.

56. Plaintiff's final delivery packet included the items mentioned above, however, it was notably devoid of any mention of a two-day contract cancellation option or agreement.[18]  The only mention of any cancellation is made regarding new vehicles and where the deposit for ordering new vehicles is non-refundable after three days elapse from the order date.

57. Plaintiff and other putative class members have been harmed by Tesla's failure to disclose the cancellation option because Plaintiff could have returned the vehicle, albeit with a minor cancellation fee.  Plaintiff and the other class members had no idea that this was an option and thousands of consumers are at risk of becoming harmed.

58. Tesla's fraudulent concealment harms consumers and creates profit for Tesla because consumers like Plaintiff and the putative class, are denied material information and are forced to stick with vehicles that they would otherwise have an option of returning.  Punitive damages are proper to deter Tesla's acts, and to deem such as socially unacceptable and discourage the perpetuation of Tesla's objectionable corporate policies.

**E.     Tesla's Violations of California Consumer Legal Remedies Act**

59. Tesla violated and continues to violate Federal Trade Commission Act, 16 C.F.R. 455, ("FTC Used Car Rule") by failing to display the requisite use d vehicle "Buyer's Guide" in accordance with the law.  Plaintiff and the putative class members are entitled to relief from Tesla's violations of the FTC Used Car Rule under the CLRA.

60. Plaintiff discovered the true condition of the Subject Vehicle's battery shortly after purchase, as Plaintiff drove the Subject Vehicle to the Tesla Supercharger station in Victoria Gardens, CA.  It was at that time when Plaintiff discovered that the Subject

---

[18] Tesla Final Delivery Documents Serial: RN9170625-02-20171115234805.

Vehicle charged fully to 100% at 166 miles.  This was never disclosed to Plaintiff at any time prior to sale or at the time of purchase and delivery of his Model S vehicle.

61. Tesla's representations that its used cars were fully inspected prior to sale were made in an effort to induce Plaintiff and the other putative class members to rely on such representations to purchase the Class Vehicles.  Plaintiff and the other putative class members were harmed by Tesla's representations.

62. In an effort induce Plaintiff and other putative class members to purchase the Class Vehicles, Tesla fraudulently conceals material information regarding the Class Vehicles, including the status of the batteries for the Class Vehicles, at the expense of harm and detriment to Plaintiff and the putative class.

63. Plaintiff and the putative class members were damaged by Tesla in at least the following different ways.  First, Plaintiff and the putative class did not receive the benefit of their bargain and have suffered harm because they received less than what they paid for.  Concerted marketing of "Certified" pre-owned or used vehicles by auto manufacturers and dealers to consumers has created an association of high quality.  Consequently, the "Certified" label itself has intrinsic perceived value, apart from the qualities of the vehicle itself.  In other words, simply calling a vehicle "Certified" or as Tesla refers to as "fully inspected" increases its value and consumers are charged a premium for allegedly certified vehicles.  The fact that Tesla's used vehicles are sold as "certified" in some way, shape, or form by Tesla, is publicly known and relied upon by consumers such as Plaintiff and the putative class.

64. "Certified" pre-owned vehicles typically sell for anywhere between a few hundred and a few thousand dollars more for a comparable, non-certified vehicle.  Plaintiff paid for a 2014 Tesla CPO Model S 60 with a 210-mile EPA estimated mile range.  Instead, Plaintiff received an uncertified 2014 Tesla Model S 60 with severe battery degradation equaling an actual 166-mile range.  Had Tesla disclosed to Plaintiff

that the battery of the Subject Vehicle could only provide 166 miles at a full, 100% charge, Plaintiff would have paid less and/or not purchased the vehicle in question

65. Plaintiff was damaged because he suffered opportunity costs due to Tesla's misrepresentations and failures to disclose material information.  Plaintiff relied on Tesla's representation that the Subject Vehicle would be "certified" and "fully inspected."  Plaintiff has also been damaged after relying upon Tesla's representation that the Subject Vehicle could provide or come close to providing the EPA estimated mileage of 210 miles at full charge.  Instead, Plaintiff's ability to use the Subject Vehicle as intended to transport his wife for medical treatment has been severely limited and affected by the limited range of the Subject Vehicle.

66. Plaintiff was damaged by Tesla's fraudulent concealment of the true condition of the Subject Vehicle and its representations regarding the inspection of the same.  Had Tesla conducted a "full inspection" as promised, Tesla surely would have figured out that the battery of the Subject Vehicle was defective and/or that the Subject Vehicle could not provide anywhere close to the EPA estimated 210mile rating.

67. Despite Tesla's representation that its used vehicles would receive a "full inspection", Tesla fails to provide any document or purported checklist of any components inspected prior to sale of its used vehicles to Plaintiff and the putative class members.  Tesla undermined and continues to undermine protections granted to consumers by federal and state laws.  Tesla's intentional acts harm consumers and creates profit for Tesla because consumers like Plaintiff and the putative class, are denied material information and purchase vehicles that they would not otherwise purchase. Punitive damages are proper to deter Tesla's acts, and to deem such as socially unacceptable and discourage the perpetuation of Tesla's objectionable corporate policies.

/ / /

/ / /

### F.    Tesla's Violations of the Magnuson-Moss Warranty Act and Song-Beverly Warranty Act

68. Notwithstanding the fact that Tesla failed to provide material information to Plaintiff and the putative class, Tesla now doubles down on federal and state law violations by failing to honor and/or perform under the express warranties provided to Plaintiff's vehicle and the Class Vehicles.  Tesla has violated the federal Magnuson-Moss Warranty Act ("MMWA"), California's Song-Beverly Warranty Act ("Song-Beverly"), and other applicable state warranty laws by failing to provide a proper remedy, repair, or replacement for the Subject Vehicle and Class Vehicles.

69. Plaintiff's vehicle was sold with a 2-year, 100,000-mile pre-owned vehicle limited warranty provided by Tesla.  The warranty language required that Plaintiff first arbitrate all claims arising out of the warranty.  The warranty language further required that the claims be arbitrated and sent through the California Department of Consumer Affairs' "California Dispute Settlement Program" ("CDSP") and National Center for Dispute Settlement ("NCDS").

70. On April 5, 2018, Plaintiff submitted a claim to NCDS, which then forwarded the claim to the California Department of Consumer Affairs for arbitration.

71. On April 6, 2018, Plaintiff submitted a claim to the California Department of Consumer Affairs.  Plaintiff's claims were set for arbitration on May 4, 2018, and an arbitration was conducted on the same date.  Plaintiff asserted that the Subject Vehicle suffered from severe battery degradation, based upon the fact that the battery provided only 166 miles at a 100% full charge.  Despite the obvious fact that the battery was severely and abnormally degraded, at over 20% degradation, counsel for Tesla reported that the battery was "not defective" and that the condition of the battery did not substantially affect the vehicle's use, safety or value.  Counsel for Tesla asserted that the battery continues to operate at a reasonable and expected level, essentially admitting to the fact that over 20-plus percent degradation is normal.

72. Plaintiff and other putative class members have made repeated, yet unsuccessful attempts to seek help from Tesla to repair and/or inspect the batteries for the Class Vehicles.  Despite the Subject Vehicle having suffered from a significant decrease in range due to a defective battery, Tesla failed to address and acknowledge the fact that a 24% decrease in battery capacity is abnormal and fails further by not providing the computations for the determination of what severe battery degradation should look like. Instead, Tesla denies proper warranty coverage and replacement of batteries that are clearly degraded from a consumer standpoint and refuses to perform under the express and implied warranties given.

73. Electric vehicle researchers in the Netherlands have studied the long-term battery degradation of Tesla vehicles, and one study shows the following:



[19]

---

[19] Steinbuch, Maarten, "Tesla Model S degradation data", https://steinbuch.wordpress.com/2015/01/24/tesla-model-s-battery-degradation-data/ (last visited July 18, 2018).

74. The graph above represents a collection of data from Tesla owners worldwide and shows the comparison of maximum battery capacity and remaining range for Tesla Model S and X vehicles.  Plaintiff's Tesla Model S 60 has a usable battery capacity of 58.5 kilowatts.  Plaintiff's vehicle currently has a maximum usable battery capacity of 40.5 kilowatts, which translates into an approximately 30% degradation or 69% maximum battery capacity.  Plaintiff's Model S is capable of providing approximately 150 miles as of the filing date of this action.  Tesla dismisses the Netherlands study, and disclaims it as unofficial, however, Tesla never addresses the fact that Plaintiff's vehicle is an outlier if plotted on the chart.

75. Tesla's treatment of battery replacements under warranty have been historically inconsistent.   Tesla has the ultimate choice and final say in determining whether consumers are entitled to battery replacements, irrespective of whether the battery should be replaced under warranty.  Tesla has a history of replacing batteries for owners who have suffered from a lower percentage of battery degradation than Plaintiff's 24%. This type of "pick-and-choose" behavior by Tesla violates some of the basic principles upon which state and federal warranty laws are founded upon.[20] [21]  Plaintiff's car currently suffers from nearly 30% degradation, and currently provides approximately 150 miles at 100% charge, which has significantly affected the value, safety, and use of the vehicle.  Despite these facts, Tesla has failed to remedy, repair, or replace the battery and in failing to do so, violates federal and state warranty and consumer protection laws as alleged herein.

76. Tesla fails to perform under the express and implied warranties given to the Class Vehicles despite having knowledge of specific defects, including the battery health

---

[20] "Tesloop's Tesla Model S Surpasses 400,000 miles"
https://www.tesloop.com/blog/2018/7/16/tesloops-tesla-model-s-surpasses-400000-miles-643737-kilometers (Last accessed on July 12, 2019)
[21] *See* Tesla Forums, post titled "2013 s60 battery replacement",
https://forums.tesla.com/forum/forums/2013-s60-battery-replacement (Oct. 31. 2018).

and status of the same.  At the time of purchase, Plaintiff's car did not have anywhere close to the battery capacity as advertised, nor was it ever disclosed to Plaintiff that his car would only be capable of reaching 166 miles at a full 100% charge.

77. Using the same graph with the data collected from the Netherlands study above, it is clear that Plaintiff's car was sold with a battery that is substantially and more severely degraded than other vehicles of similar make and model.  If one were to plot the battery condition for Plaintiff's car <u>at the time of purchase</u>, it would something like the following chart:



[22]

<hr>

22  Same graph from fn. 16, which green dot representing Plaintiff Hugh Nguyen's Tesla Model S 60 at approximately 76% remaining battery capacity <u>on the date it was purchased</u> with approximately 120,000 miles on the odometer at time of purchase.

78. Tesla's failure to honor the express and implied warranties offered to the Class Vehicles have harmed and continue to harm Plaintiff and other putative class members. Tesla's treatment of Plaintiff and other putative class members has been inconsistent, and consumers nationwide are subject to the harm and damage if Tesla's actions are not curbed and if they are allowed to continue operating this way.

### G.    Plaintiff Hugh Nguyen's Experience

79. Plaintiff Hugh Nguyen was introduced to Tesla in 2017 after hearing from a friend that Tesla was offering used, "certified pre-owned" ("CPO") vehicles.  During the same year, Plaintiff received the unfortunate news that his wife had been diagnosed with Pancreatic Neuroendocrine Tumor (PNET) and started to undergo treatment of the terminal cancer.  Plaintiff's wife requires medical treatment from various medical facilities in Los Angeles and Orange County, which Plaintiff has been taking her to receive treatment from their home in Rancho Cucamonga, California.  Plaintiff's wife requires treatment at least three, sometimes four, times per week, Plaintiff decided it was time for a more efficient and effective means of transportation.  Thus, Plaintiff began shopping for a hybrid or all-electric vehicle and intended it to be a gift for his wife's birthday.

80. Plaintiff was impressed by the fact that Tesla CPO vehicles were fully inspected prior to sale and would be covered under warranty by Tesla.   After researching and learning more about Tesla's CPO vehicles, Plaintiff chose to purchase a 2014 Model S 60, bearing the vehicle identification number 5YJSA1S11EFP32857 (the "Subject Vehicle").  Tesla's website and advertisement for Plaintiff's vehicle provided and displayed the following:

> "60 (illus.) 60 kWh Battery 210 miles range (EPA) 5.9 seconds 0-60 mph 2014 | 5,712 miles | P32857 $38,000"

"This Model S will receive a full inspection, remaining battery and drive warranty and a two year, 100,000 miles maximum odometer pre-owned limited warranty with 24 hour roadside assistance."



[23]

23 Tesla Model S, VIN# 5YJSA1S11EFP32857

81. Plaintiff and other putative class members understood and relied upon this to mean that the Subject Vehicle would be fully inspected by Tesla and be in full compliance with Tesla's standards.  Plaintiff further relied upon multiple sources and various website when he researched the Tesla used CPO program further.  All of the marketing materials that Plaintiff saw in the news, be it Tesla.com and/or Teslamotorsclub.com and/or other car-buying and automotive websites indicated that the used CPO vehicles sold by Tesla were given a 270-point inspection and that it was customary for Tesla to take care of repairs and issues with their vehicles.[24]

82. Plaintiff had every reason to believe that this vehicle was being sold as a certified-preowned vehicle by Tesla.  Indeed, Plaintiff learned from various online sources and reputable webpages that Tesla's program was indeed a used vehicle, certified preowned vehicle program.[25, 26]  After careful consideration, Plaintiff placed a $1000 (one-thousand dollars) deposit on October 27, 2017 to reserve his Model S.  Shortly thereafter, Plaintiff was contacted by a Tesla Used Vehicle Sales Advisor ("UVSA") who communicated with Plaintiff and arranged the purchase and delivery date of the Subject Vehicle.  Plaintiff paid a total purchase price of $40,287.00, to Tesla, Inc. and arranged for delivery and pickup of the vehicle.

83. During and between the date that Plaintiff placed the initial deposit until the actual delivery date on November 17, 2017, at Tesla's showroom and service center location in Buena Park, CA, Tesla never disclosed any information regarding the battery health of his Model S.  In fact, Tesla failed to mention anything to Plaintiff with regards

---

[24] *See* Voelker, John, "Used Tesla Electric Cars: Certified Previously Owned (CPO) Program Coming, Company Confirms" (Oct. 6, 2014) Green Car Reports, https://www.greencarreports.com/news/1094785_used-tesla-electric-cars-certified-previously-owned-cpo-program-coming-company-confirms (last visited July 17, 2019).

[25] *See* Tesla Motors CPO Car Prices, NADA Guides, https://www.nadaguides.com/Cars/Certified-pre-owned/Tesla-Motors (last visited July 16, 2019).

[26] *See* Trop, Jaclyn "Tesla CPO Buying Guide", https://www.autotrader.com/car-shopping/cpo-program-review-tesla-239862 (last visited July 16, 2019).

to inspection that was supposedly done, nor did Tesla provide Plaintiff with a checklist of components inspected and parts checked as required by law.  Plaintiff relied upon Tesla's marketing, advertisements, and representations that his Model S would be fully inspected and essentially, certified, as a used Tesla vehicle and would conform to Tesla's standards accordingly.  Plaintiff additionally relied upon the Tesla marketing and advertisement of their cars and reasonably believed that the Subject Vehicle would provide for approximately 200 miles per full charge at 100% battery capacity, close to the 210 EPA mile rating displayed on Tesla's website.

84. After taking delivery of the vehicle, Plaintiff drove his Model S home and learned for the first time after charging his car's battery to 100% that the maximum rated range was only 166 miles.  Plaintiff drove and charged the Subject Vehicle to 100% battery capacity several times, yet still received approximately 165 - 166 rated miles each time.  Plaintiff took reasonable steps to notify Tesla that there was an issue with the battery and that it was only providing 160-or so miles per full charge.  This maximum range capacity was never disclosed to Plaintiff, nor was there a reasonable way for Plaintiff to discover this issue until after purchasing the car and taking it home.

85. On December 16, 2017, after informing Tesla about the battery capacity and severely limited mileage range on his vehicle, Plaintiff brought his car to the Tesla service center for the first time in Buena Park, CA.  Plaintiff reiterated the issues to Tesla's service center technicians and that his car was only showing 166 miles of range at maximum battery capacity of 100%  Tesla attempted to repair this issue by making a correction to the "Battery Management System (BMS) (HV Battery 1.0/1.5)" which did not fix the issues with the battery.  Plaintiff was told to report back to the service center after driving around with the car and after "cycling" the battery, which refers to the practice of charging to 100% and discharging the battery to low levels for purposes of recalibrating the battery.

86. Between December 2017 to July 2018, Plaintiff brought his Model S to Tesla on at least 5 separate occasions.  During these visits, Tesla performed tests and conducted further inspection of the battery.  However, Tesla has been unable repair these issues and continues to avoid providing Plaintiff with a proper remedy.  Instead, Tesla has relied upon its own discretion and "pick-and-choose" behavior to determine whether Plaintiff's car will receive a battery replacement under warranty.  Tesla has blatantly refused to provide Plaintiff with a proper remedy as warrantied and continues to fraudulently deceive consumers like Plaintiff.

87. On one particular occasion, Tesla service center technicians attempted to downplay the issues that Plaintiff was experiencing with his Model S.  The notes incorrectly state that Plaintiff's Model S battery shows 166-rated miles at 90% batter charge.  This is number is blatantly incorrect, and Tesla has fraudulently attempted to cover this up subsequently as evident in later versions of the repair invoicing.  If this mistake were to be taken out in a different context, then it could be said that Tesla's mistake here was unintentional.  However, Tesla relied upon this incorrect calculation and proffered the information during a later arbitration between Plaintiff and Tesla on the same battery issue.

88. During the initial arbitration between Plaintiff and Tesla, Tesla contended that Plaintiff's Model S was only experiencing normal battery degradation.  As evidenced in a service repair order on March 6, 2018, Tesla service technicians incorrectly indicated that Plaintiff's car was only suffering from 11% degradation.  Tesla technicians failed to record the actual correct numbers, as Plaintiff's vehicle was actually only charging up to 165/166 miles at 100% battery capacity.  Tesla blatantly lied and made the fraudulent representation that the battery was charging up to 165/166 miles at 90%.  If it weren't for Tesla's fraudulent motives, concealment and deceptive behavior, the true battery degradation of 24%, not 11%, would have been noted by Tesla.

89. On April 20, 2018, Plaintiff brought the vehicle for more battery diagnostic testing.  The battery was purportedly tested by the technicians at the Tesla Service Center in Costa Mesa, CA, and it was once again ultimately concluded that the battery was "normal" and indicating a battery degradation of 11%.  In good faith, Plaintiff informed Tesla service technicians of their mistaken numbers and pointed out the errors in the previous service invoice.  Tesla intended to fraudulently cover up this mistake by issuing subsequent invoicing that deleted any mention of the prior miscalculations.

90. Tesla has continued to make the fraudulent assertions that Plaintiff's vehicle suffers only from normal battery degradation, despite the fact that the vehicle was suffering from approximately 25% degradation before Plaintiff had ever set foot in the vehicle.  Tesla ultimately prevailed during the arbitration despite the arbitrator having based the decision upon false and misleading statements, as well as completely false and incorrect data.[27]  Despite having followed Tesla's instructions under the warranty terms, Tesla has continued to deny Plaintiff's request for a replacement battery, or repurchase the Model S as allowed and proper under federal and state lemon law.

91. Despite the fact that Tesla warrantied Plaintiff's vehicle with a 2-year, 100,000 mile limited warranty, and the fact that it provided a 8-year, unlimited mile battery warranty, Tesla has failed its duty to Plaintiff by unlawfully, improperly, and fraudulently denying proper service and repair of Plaintiff's vehicle.

92. Upon information and belief, and upon investigation by Plaintiff's counsel, Tesla has denied, and will continue to deny purchasers of its vehicles lawful and proper remedies under warranty.  Tesla also fails to provide or disclose any material information regarding the vehicle inspections that it purportedly conducts prior to selling its used

---

[27] Tesla in-house counsel, Ryan McCarthy stated during the initial arbitration that it was normal for a car similar to Plaintiff's to be suffering from the level of degradation that Plaintiff was experiencing. Plaintiff concedes that 11% degradation is normal and given the circumstances beyond reasonable, however, Plaintiff's vehicle suffers from approximately 25% degradation, not 11%.

vehicles, and therefore Plaintiff and other putative class members were unaware of any issues prior to purchase and have been harmed as a result thereof. Tesla continues to engage in this fraudulent scheme of tricking consumers and leading them to believe that these issues will be taken care of by Tesla, and thousands of consumers are at risk of Tesla's fraudulent and dishonest acts as alleged herein.

## VII.    CLASS ACTION ALLEGATIONS

93.  Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually, and on behalf of the following proposed classes:

**Nationwide Class**

All persons or entities who purchased or will purchase a used, certified preowned Tesla Model S or X vehicle (the "Class Vehicles") directly from Tesla in the United States. Class Vehicles include Tesla Model S and X vehicles from 2012-present and include the following models:

| | | |
|---|---|---|
| Model S 60 | Model S 70D | Model S P85+ |
| Model S 60D | Model S 85 | Model S 90D |
| Model S 75 | Model S P85 | Model S 85D |
| Model S 70 | Model S 90D | Model S P90D |
| Model S 75D | Model S 90 (2015) | Model S P85D |
| Model S 70D | Model S P100D | Model S 100D |
| Model X 60D | Model X 70D | Model X 75D |
| Model X 90D | Model X P90D | Model X 100D |
| Model X P100D | | |

94. Alternatively, if California law does not apply to all owners of Class Vehicles, Plaintiff brings this action individually, and on behalf of the following proposed classes:

**California Class**

All persons or entities who purchased or will purchase a Class Vehicle in the State of California from Tesla in California.

**California Subclass**

All persons or entities who purchased or will purchase a Class Vehicle with a purchase price of $40,000 (forty-thousand dollars) or less in the State of California from Tesla in California.

95. Excluded from the proposed classes are Tesla, its employees, officers, directors, legal representatives, heirs, successors, wholly or partly owned, and its subsidiaries and affiliates, Tesla dealers, and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons who make a timely election to be excluded from the proposed classes.

96. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

97. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.  There is a well-defined community of interest in the litigation and the proposed class is ascertainable.

98. <u>Numerosity</u>.  Federal Rule of Civil Procedure 23(a)(1): The members of the classes proposed herein are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. While Plaintiff believes that there are thousands of members of the proposed classes, the precise number of class members

is unknown to them but may be ascertained from Tesla's books and records. Based upon information, belief, and investigation by Plaintiff's counsel, it is estimated that nearly 13,000 used, certified preowned Tesla Model S Vehicles and approximately 163 Tesla Model X vehicles were sold to members of the Nationwide Class, with the majority of Class Vehicles, over 5,000, having been sold to members of the California Classes.  Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

99. <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and (b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

a.   Whether Tesla engaged in the conduct alleged herein;

b.   Whether Tesla designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class into the stream of commerce in the United States;

c.   Whether Tesla provided the requisite materials and disclosures pursuant to federal laws, including the FTC Used Car Rule;

d.   Whether Tesla's violations of the FTC's Used Car Rule constitutesa *per se* violation, actionable under state consumer and warranty protection laws;

e.   Whether Tesla's violations of California's Car Buyer's Bill of Rights, Cal. Veh. Code §§ 11713.18(a)(6) constitutes a *per se* violation, actionable under state consumer and warranty protection laws;

f.   Whether Tesla's violations of California's Car Buyer's Bill of Rights, Cal. Veh. Code §§ 11713.21 constitutes a *per se* violation, actionable under state consumer and warranty protection laws;

g.    Whether Tesla knew the health and status of the batteries for Class Vehicles prior to purchase and delivery by Plaintiff and the proposed classes;

h.    Whether it was Tesla's intent and/or policy to refuse to provide the required disclosures to Plaintiff and the proposed classes including, but not limited to, an inspection list containing requisite and material information, a buyer's guide pursuant to FTC's Used Car Rule, amongst others in a fraudulent, deceptive, or unfair manner so as to trick Plaintiff and the proposed classes?

i.    Whether it was Tesla's intent and/or policy to refuse to provide the required disclosures to Plaintiff and the proposed classes including, but not limited to, an inspection list containing requisite and material information, a buyer's guide pursuant to FTC's Used Car Rule, amongst others;

j.    Whether Plaintiff and proposed classes were denied battery replacements or wrongfully denied a vehicle "buyback" despite Tesla's failure to provide any relevant information regarding the Class Vehicles and Class Vehicles regarding the health or status of its batteries;

k.    Whether Tesla's actions including the blog posts on its website, as well as other display mediums, are misleading, false, and therefore violating consumer protection statues, false advertising laws, and any other laws as asserted herein;

l.    Whether Tesla had a duty to Plaintiff and the proposed classes to disclose the battery health and status of battery capacity prior to sale of the Class Vehicles;

m.    Whether Tesla knew about the violations, and if so, for how long;

n.    Whether Tesla breached their express and implied warranties;

o.    Whether the advertisements and statements made by Tesla were and are false and/or had and have had a tendency to deceive

customers by either failing to disclose the current level of maximum battery capacity or battery health for the Class Vehicles, or misrepresenting that the Class Vehicles would be capable of reaching or, close to reaching EPA mileage ratings for the Class Vehicles.

p.    Whether Tesla's conduct violates nationwide consumer protection statutes, false advertising laws, sales contracts, and other laws as asserted herein;

q.    Whether Plaintiff and proposed class members overpaid for the Class Vehicles;

r.    Whether Plaintiff and the proposed class members overpaid for the Class Vehicles;

s.    Whether Plaintiff and putative class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

t.    Whether Plaintiff and putative class members are entitled to damages and other monetary relief for Tesla's violations of the applicable laws as alleged herein, and, if so, in what amount; and

u.    Whether Plaintiff and putative class members are entitled to an award of punitive or exemplary damages based on Tesla's conduct and violations as alleged herein and if so, in what amount.

100. <u>Typicality</u>.  Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Tesla's wrongful conduct as described above.

101. <u>Adequacy</u>.  Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate proposed class representative because Plaintiff's interests do not conflict with the interests of the other members of the proposed classes they seek to represent; Plaintiff has

retained counsel competent and experienced in complex litigation and the technology and subject matter in regards to the underlying suit; and Plaintiff intends to prosecute this action vigorously. The interests of the proposed classes will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

102. Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): Tesla has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the proposed classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed classes as a whole.

103. Superiority. Federal Rule of Civil Procedure 23(b)(3): Class actions are a superior means for the fair and efficient adjudication of this controversy and action, when compared to any other available means. It is unlikely that there will be any difficulties or problems encountered with regards to management of this class action. A class action is superior here also where damages, financial detriment, or any other harm that Plaintiff and the other putative class members have suffered is small in comparison and relation to the large burden, unnecessary expense and costs spent if individual litigants proceeded against Tesla instead of together as a class. Individual litigation and individual claims sought against Tesla would make it impracticable for the members of the proposed classes to individually seek redress for Tesla's wrongful conduct. Despite the likely fact that individual class members have the means to and could afford to litigate as separate individual actions, doing so would place unnecessary burden on the court and would not promote judicial efficiency. Furthermore, individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. Undoubtedly here, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, as well as comprehensive supervision by a single court.

/ / /

/ / /

# VIII.    CAUSES OF ACTION
## COUNT I
# VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")
### (15 U.S.C. § 2301 *et seq.*)

104. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105. Plaintiff brings this count on his own behalf, the Nationwide Class, and the California Classes.

106. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

107. The Class Vehicles are a "consumer product" as defined by the term in 15 U.S.C. § 2301(1).

108. Plaintiff and the other Class members are "consumers" as defined by the term in 15 U.S.C. § 2301(3).

109. Tesla is a "warrantor" and "supplier" as defined by the terms in 15 U.S.C. § 23014) and (5).

110. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

111. As described herein, Tesla provided Plaintiff and the other Class members with "implied warranties" and "written warranties" as those terms are defined in 15 U.S.C. § 2301 et seq.

112. Tesla provided warranties to the Class Vehicles consisting of either a either a 48-month, 50,000-mile new vehicle warranty or a 24-month, 100,000-mile limited warranty against defects in materials or workmanship to the Affected Vehicles.

113. Tesla also provided an 8-year, unlimited mile battery warranty for the Class Vehicles.  The Class Vehicles were provided these express and implied warranties by Tesla.

114. Tesla breached these written and implied warranties as described in the allegations herein, with respect to the batteries of the Class Vehicles and by failing to acknowledge that Plaintiff's battery and those of other Class members were defective and eligible to be replaced under Tesla's written and implied warranties.

115. By Tesla's conduct described and alleged herein, including Tesla's knowledge that the batteries of the Class Vehicles were abnormally degraded or otherwise defective, Tesla has failed to comply with its obligations under their written and implied promises, warranties, and representations.

116. In its capacity as a warrantor, and by the conduct and allegations described herein, any attempts by Tesla to limit the implied warranties in a manner that would exclude coverage is unconscionable and any such effort to disclaim, or otherwise limit liability is null and void.

117. The transactions by which Plaintiff and the putative class members purchased the Affected Vehicles were transactions for the sale of goods and at all times relevant, Tesla was the seller of the Affected Vehicles and placed these products into the stream of commerce throughout the United States, including California.  At all times relevant, Tesla maintained showroom stores and vehicle service centers in California.

118. Plaintiff and putative class members purchased the Class Vehicles by placing a deposit online for a specific vehicle, and Tesla would provide a delivery date for the Class Vehicles whereby Plaintiff and putative class members would take possession of the vehicles.

119. The Class Vehicles came with an implied warranty that any parts thereof were merchantable, were the same quality as those generally accepted in the trade, were not of poor or below average quality within the description and/or conformed to the affirmations of fact made by Tesla.

120. The Class Vehicles, however, were non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were of poor or below

average quality within the description and/or did not conform to affirmations of fact disseminated by Tesla because they did not achieve the advertised and displayed estimated approximate mileage range as displayed by Tesla for the Affected Vehicles.

121. The Class Vehicles, at all times relevant herein, were of poor or below average quality within the description of electric vehicles with the same capacity battery for similar Tesla Model S and X vehicles.

122. The Class Vehicles, at all times relevant herein, did not and do not have the quality that a buyer would reasonably expect.

123. As a direct and proximate result of the foregoing, Plaintiff and the putative class members sustained loss and damage and did not receive the benefit of their bargain.

124. All jurisdictional prerequisites have been satisfied.

125. Plaintiff and the other Class members are in privity with Tesla in that they purchased the Class Vehicles from Tesla or its agents.

126. As a result of Tesla's breach of warranties, Plaintiff and the other Class members are entitled to revoke their acceptance of the Class Vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

**COUNT II**

**VIOLATION OF CALIFORNIA'S SONG-BEVERLY CONSUMER WARRANTY ACT ("SONG-BEVERLY")**

**(Cal. Civ. Code § 1790 *et seq.*)**

127. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128. Plaintiff brings this count on his own behalf, the Nationwide Class, and the California Classes.

129. Pursuant to the Song Beverly Consumer Warranty Act ("Song-Beverly") Cal. Civ. Code §1790 *et seq.*, the Class Vehicles are "consumer goods" purchased primarily

for family or household purposes and Plaintiff and the other Class members have used the Class Vehicles primarily for those purposes.

130. Plaintiff and the other Class members are considered "buyers" of consumer goods under Song-Beverly.

131. Tesla is a "seller" and "retailer" under Song-Beverly.

132. Tesla provided warranties to the Class Vehicles consisting of either a either a 48-month, 50,000-mile new vehicle warranty or a 24-month, 100,000-mile limited warranty against defects in materials or workmanship to the Affected Vehicles.

133. Tesla also provided an 8-year, unlimited mile battery warranty for the Class Vehicles.  The Class Vehicles were provided these express and implied warranties by Tesla.

134. Plaintiff's vehicle was a Class Vehicle that was delivered to Plaintiff with serious defects and nonconformities, including but not limited to a defective, malfunctioning, or otherwise abnormally degraded battery.

135. The foregoing defects and nonconformities to the warranty manifested themselves within the applicable implied and express warranty periods.  The nonconformities substantially impair the use, value and/or safety of the vehicle and violate the implied warranty of merchantability.

136. Tesla's provided the aforementioned warranties in consideration for the purchase of the Class Vehicles, and said warranties became part of the basis of the bargain, because it was incorporated into the purchase agreements of the Class Vehicles.

137. Plaintiff and the putative class members learned about the existence of such warranties pre-purchase/pre-lease, and as reasonable persons, relied on the existence of such warranties.  Plaintiff and the putative class members conduct of purchasing the Class Vehicles was in accordance with their reliance on the described warranties.

138. Plaintiff's vehicle has a defective battery, such that it is a defect in materials and/or workmanship and is expressly covered under the warranty.  Applying any

warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, inter alia, the vehicles at issue contain a defect at the time of deliver, Tesla was either aware of or consciously and/or recklessly disregarded this defect which could not be discovered by Plaintiff and putative class members at the time of such purchase of the Class Vehicles, and said purchasers lacked any meaningful choice with respect to the warranty terms.

139. Plaintiff and the putative class members substantially performed all of their obligations under the warranty, by presenting the Class Vehicles to authorized Tesla repair facilities during the warranty coverage period and/or by accepting all of the over-the-air updates provided by Tesla.

140. Defendants have and continue to breach said express warranties by failing to repair the defects in materials and workmanship in the Affected Vehicle batteries and by failing to disclose the maximum battery capacity and corresponding mileage range prior to the purchase and delivery of the Class Vehicles.

141. Furthermore, Tesla represented on their website for each of the Class Vehicles, the Environmental Protection Agency ("EPA") estimated mileage for Plaintiff's vehicle, and for the Affected Vehicles to Plaintiff and the putative class members.

142. Tesla further represented on their advertising for each of the Affected Vehicles that there would be a "full inspection" of the Class Vehicles prior to purchase and delivery.

143. Tesla's representations regarding the battery capacity and approximate mileage range were false representations of fact, that were known by Tesla to be untrue at the time they were made and were intended to create reliance by Plaintiff and the putative class members.

144. Tesla's representations about the estimated mileage range and that the Class Vehicles would be subject to a "full inspection" thus, creating express warranties that the

Affected vehicles would contain approximately the stated mileage range as advertised by Tesla.

145. Tesla's failure to recognize the severe battery degradation in Plaintiff's vehicle, and the other Class Vehicles and continued denial of a warranty battery replacement caused Plaintiff to be harmed.

146. Tesla breached the express warranties by selling the Class Vehicles, which failed to contain the estimated and advertised approximate mileage range, by failing to repair and fix the mileage range in Plaintiff's vehicle and the Class Vehicles, and failing to repair/fix the flaws in Plaintiff's vehicle and to the putative class members.

147. Tesla's breach caused injury to Plaintiff and putative class members, because Plaintiff and putative class members did not get the benefit of their bargain, which included, inter alia, a battery that would provide approximately the same estimated mileage range as represented by Tesla marketing and advertising for the Class Vehicles.

148. Tesla breached and continues to breach the express warranties as alleged herein, because Affected Vehicles do not meet the mileage range as estimated and advertised by Tesla; because Tesla fails to repair/fix the flaws in the Class Vehicles' batteries; because Tesla fails to recognize the fact that Plaintiff's vehicle is equipped with a defective battery.

149. As a result of Tesla's breach of express warranties as set forth above, Plaintiff and others similarly situated have suffered and will continue to suffer damages in an amount to be determined at trial. Plaintiff and the other Class members are entitled to and seek damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from Tesla's failure to comply with its warranty obligations under Song-Beverly.

150. Plaintiff and the other Class members are entitled under Song-Beverly to recover as part of the judgment a sum equal to the aggregate amount of costs and

expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

## COUNT III

## VIOLATION OF FEDERAL TRADE COMMISSION ACT

### (Used Motor Vehicle Trade Regulation Rule, 16 C.F.R. 455 *et seq.*)

151. Plaintiff realleges and incorporates by reference all paragraphs as through fully set forth herein.

152. Plaintiff brings this count on his own behalf, the Nationwide Class, and the California Classes.

153. Plaintiff and the putative class members are "consumers" and tesla is a "dealer" of used cars as defined by Federal Trade Commission Act 16 CFR §455.1.

154. 16 CFR §455.1 ("FTC Used Car Rule") provides that it is a deceptive act or practice for any used vehicle dealer to: (1) misrepresent the mechanical condition of a used vehicle; (2) misrepresent the terms of any warranty offered in connection with the sale of a used vehicle; and (3) represent that a used vehicle is sold with a warranty when the vehicle is sold without any warranty. 16 CFR § 455.1.

155. The FTC Used Car Rule also requires that used vehicle dealer's display a "Buyers Guide" that is "displayed prominently and conspicuously in any location on a vehicle and in such a fashion that both sides are readily readable…" 16 CFR § 455.2(1). Amongst other stylistic requirements for the form, the rule specifies the exact wording, punctuation and font size for the buyer's guide form.

156. Tesla has violated, and upon information and belief, continues to violate these sections of the FTC Used Car Rule by misrepresenting the mechanical condition of the Class Vehicles to Plaintiff and the putative class members.  Plaintiff and the putative class members were led on by Tesla to believe that, at the very least, the batteries of the Class Vehicles were in a sound mechanical condition free of any major defects or severe battery degradation.

157. Tesla has violated, and upon information and belief continues to violate the FTC Used Car Rule by failing to provide Plaintiff and the putative class members with the requisite buyer's guide, let alone place such form for display on the Class Vehicles at any time prior to purchase.

158. Plaintiff and the putative class members suffered harm and have been damaged as a result of Tesla's misrepresentations regarding the mechanical condition of the Class Vehicles.  Specifically, Tesla's misrepresentation regarding the battery health and maximum capacity for Plaintiff's vehicle and the other Class Vehicles has caused damage to Plaintiff and the putative class members because they would not have, or would not have paid as much for the Class Vehicles as they did.

159. Tesla is subject to penalties of up to $42,530 per violation of the FTC Used Car Rule in FTC enforcement actions.

160. Plaintiff and the putative class members seek relief provided by the federal and state consumer protection and warranty laws as provided for herein.

161. Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

## COUNT IV

## VIOLATION OF CALIFORNIA VEHICLE CODE SECTION 11713
### (CA Veh. Code §11713 *et seq.*)

162. Plaintiff realleges and incorporates by reference all paragraphs as through fully set forth herein.

163. Plaintiff brings this count on behalf of himself and the California Classes.

164. Plaintiff is a purchaser within the meaning of California Vehicle Code section 11713 (CA Veh. Code §11713 et seq.).  Fraud, as the term is used in Vehicle Code §11713 et seq., is the same fraud as commonly defined in the law.  As set forth herein,

Defendant Tesla has committed fraud within the common law meaning of the term fraud in violation of §11713.18.

165. Vehicle Code §11713.18(a) provides that it is a violation for the holder of a dealer's license to "advertise for sale or sell a used vehicle as "certified" or use any similar descriptive term in the advertisement or the sale of a used vehicle that implies the vehicle has been certified to meet the terms of a used vehicle certification program" for certain acts.

166. Specifically, Vehicle Code §11713.18(a)(6) provides that a violation occurs where "[p]rior to sale, the dealer fails to provide the buyer with a completed inspection report including all the components inspected." CA Veh. Code §11713.18(a)(6).

167. Tesla offered these vehicles and used deceptive advertisement and made fraudulent representations to consumers to induce Plaintiff and the putative class members to rely on such advertising and representation in purchasing the Class Vehicles.

168. Tesla violated the vehicle code sections herein by failing to provide Plaintiff and the putative class members with any form of inspection or checklist of any vehicle parts that were inspected as defined by and required under the sections of the vehicle code sections herein.

169. Plaintiff and the putative class members were harmed by Tesla's violations, in that they would not have purchased, or would have purchased the Class Vehicles for much lower price had Tesla provided them with an inspection checklist.

170. Violations under this California vehicle code section is actionable under the California Consumer Legal Remedies Act (CLRA), California's Unfair Competition Law, false advertising statutes, or any other applicable state or federal law. Cal. Veh. Code § 11713.18(b) for which Plaintiff and the California Classes seek all proper relief for as alleged herein.

171. Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and

the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

## COUNT V

## VIOLATION OF CALIFORNIA VEHICLE CODE SECTION 11713.21

### (California Car Buyer's Bill of Rights, FFVR 35)

### (California Subclass Only)

172. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

173. Plaintiff brings this count on behalf of himself and the California Subclass.

174. California Vehicle Code Section 11713.21, part of the California Car Buyer's Bill of Rights, FFVR 35, provides that a dealer "shall not sell a used vehicle, as defined in Section 665 and subject to registration under this code, at retail to an individual for personal, family, or household use without offering the buyer a contract cancellation option agreement that allows the buyer to return the vehicle without cause.  This section does not apply to a used vehicle having a purchase price of forty thousand dollars ($40,000) or more…" Ca. Veh. Code §11713.21(a)(1).

175. Plaintiff is an individual as defined by vehicle code 11713.21, and the Class Vehicles that had a purchase price of $40,000 or less are used vehicles as defined by vehicle code 11713.21.

176. Plaintiff and other California Subclass members were never offered a contract cancellation option agreement as required by the vehicle section referenced above.

177. Tesla's failure to offer or provide any disclosures to Plaintiff and the California Subclass members constitutes fraud and shows Tesla's intent to defraud Plaintiff and other Subclass members by letting them believe that they had no viable options to deal with the Class Vehicles after purchase.

178. Violations under this California vehicle code section is actionable under the California Consumer Legal Remedies Act (CLRA), California's Unfair Competition

Law, false advertising statutes, or any other applicable state or federal law. Cal. Veh. Code § 11713.18(b) for which Plaintiff and the California Classes seek all proper relief for as alleged herein.

179. Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

**COUNT VI**

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

**(Cal. Civ. Code § 1750 *et seq.*)**

180. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

181. Plaintiff brings this count on behalf of himself, the Nationwide Class and the California Classes.

182. California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., proscribes "unfair methods of competitions and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

183. The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

184. Plaintiff and other putative Nationwide class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other class members, and Tesla are "persons" as defined in Cal. Civ. Code § 1761(c).

185. As alleged above, Tesla made numerous representations concerning the quality, performance, effectiveness, performance, safety, and status of the Class Vehicles, that were misleading, all of which emanated from Tesla's headquarters in California, as well as Tesla's showroom stores and service centers throughout California, and publicly displayed on Tesla's website.

186. In purchasing the Class Vehicles, Plaintiff and other putative Nationwide class members were deceived by Tesla's fraudulent and deceptive advertising, and for failing to disclose certain material facts regarding the Class Vehicles as required by federal and state laws.

187. Tesla's conduct as described herein was and is in violation of the CLRA. Tesla's conduct emanates from its headquarters in California and violates at least the following enumerated CLRA provisions:

    a.    Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification goods;

    b.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

    c.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

    d.    Cal Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised;

    e.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not;

    f.    By deceptively, falsely, and fraudulently advertising on Tesla's website that the Affected Vehicle's would receive a "full inspection" when the Affected Vehicles were not inspected;

    g.    By violating state laws, including California Vehicle Code Section 11713 et seq., for failing to disclose material information in violation of Section 11713.18(a)(6) which requires disclosure of material information by used car dealers as defined by statute and California Vehicle Code Section 11713.21 by failing to disclose the required two-day contract cancellation option to the California Subclass.

h.   By violating federal laws, including the Used Motor Vehicle Trade Regulation Rule, 16 CFR Part 455 et seq. for failing to disclose material information including the written form "Buyer's Guide" to Plaintiff and the putative class members.

188. California Vehicle Code Section 11713.18(a)(6), Cal. Veh. Code § 11713.18(a)(6) requires used car dealers, like Tesla, to provide an "inspection report" which conforms to one that is within the commonly understood meaning of the term in the automobile industry, namely, "a report that lists the components inspected, with a space corresponding to each component in which the inspector designates whether or not that component is functional".

189. Furthermore, § 11713.18(a)(6) prohibits car dealers from advertising or selling a used car as "certified" (or any similar word) unless before the sale, the dealer provides the buyer with "a completed inspection report indicating all components inspected."

190. Tesla advertised and marketed that the Class Vehicles would receive a "full inspection" by Tesla.  Tesla failed to provide Plaintiff, the Nationwide Class, and the Defective Battery Class with an "inspection report" as required by Cal. Veh. Code § 11713.18(a)(6).  Tesla never disclosed the outcome or details regarding any inspection of the Class Vehicles or specific parts that were inspected prior to Plaintiff's purchase.

191. Plaintiff, the Nationwide Class, and the Defective Battery Class relied upon Tesla's representation that the Class Vehicles would receive a "full inspection" prior to purchase.  Plaintiff would not have purchased the product, or would have paid significantly less for the product, but for Tesla's unlawful conduct.  Nationwide Class and Defective Battery Class members were likely to also have relied upon Tesla's deceptive labeling and advertising.  Plaintiff, the Nationwide Class, California Classes

and putative class members acted reasonably when they purchased the Affected Vehicles under the mistaken belief that the cars they purchased would be fully inspected.

192. Due to Tesla's failure to complete a "full inspection" of the Class Vehicles and failure to provide Plaintiff with the requisite inspection reports, let alone anything related to the status of the inspected vehicle parts, Plaintiff was never aware that the Subject Vehicle would only provide an estimated 150 mile range at a full charge.

193. Tesla had a duty to disclose the material information regarding the Class Vehicles, including the status of the batteries, maximum capacity and current level of estimated mileage range for the Class Vehicles to Plaintiff and the putative class members.  Tesla is in the sole and exclusive position to conduct tests and it does so under its "full inspection" of the Class Vehicles prior to sale.  Plaintiff and the putative class members did not have access to this information, nor was it reasonably or readily accessible to them.

194. The facts concealed and omitted by Tesla in its interaction with Plaintiff and the putative class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price for the Class Vehicles.  Had Plaintiff and other class members known about the defective nature of the Class Vehicles, or had Tesla provided the required material information disclosure, they would not have purchased, or they would not have paid the prices they paid for the Class Vehicles.

195. By failing to disclose material information regarding the Class Vehicles to Plaintiff and the other class members, the entire purchase transaction was tainted by Tesla's CLRA violations because Plaintiff and the other class members were damaged by purchasing a product that they would not have, and/or not getting the benefit of their bargain.

196. Plaintiff provided Tesla with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Tesla on April 24, 2019.

Plaintiff's letter was sent via Certified Mail, advising Tesla of the multiple violations of the CLRA, UCL, federal and state warranty and consumer protection statutes, as well as Tesla's deceptive and fraudulent business practices.  Plaintiff informed Tesla that his vehicle did not provide the advertised and displayed mileage range of 210, and that the mileage range of the Subject Vehicle was beyond what is acceptable, normal, and expected.  Plaintiff demanded that Tesla comply with a buyback of the vehicle, including payment of costs incurred and attorneys' fees incurred as provided for by the CLRA.

197. Following the original April 24, 2019 notice, Plaintiff discovered additional violations that Tesla had committed, in violation of the CLRA and actionable by Plaintiff and the putative class members.  Specifically, it was discovered by Plaintiff that Tesla has failed, and upon information and belief, continues to fail to display and provide the requisite buyer's guide on the Class Vehicles, in addition to failure to provide Plaintiff and the putative class members with any form of an inspection checklist.

198. On July 23, 2019, Plaintiff, individually and on behalf of the putative class, provided notice to Tesla based on the newly discovered violations of the CLRA including Tesla's violations of Cal. Veh. Code Section 11713.18(a)(6) and the Used Motor Vehicle Trade Regulation Rule, 16 CFR Part 455 *et seq*.

199. In accordance with Cal. Civ. Code § 1780(a) Plaintiff and members of the putative class seek only injunctive relief for Tesla's violations of the CLRA at this juncture.

200. While Plaintiff and the putative class members do not seek to recover damages under the CLRA in this Complaint, after mailing appropriate notice and demand in accordance with Cal. Civ. Code § 1782(a) & (d) on July 23, 2019, Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages because Plaintiff and the putative class members have suffered injury in fact and actual damages resulting from Tesla's material omissions and misrepresentations because Plaintiff and putative class members would not have

purchased the Class Vehicles or would have paid significantly less, had Tesla been compliant with the relevant federal and state laws.  Plaintiff and the putative class members were damaged by not getting the benefit of their bargain and overpaid for the Class Vehicles.

201. In an amendment to this complaint, and following the notice sent on July 23, 2019, Plaintiff will seek an additional award against Tesla, under Cal. Civ. Code § 1780(b) of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA on behalf of the putative class members.  Tesla knew or should have known that its conducted was directed to one or more putative class members who are senior citizens or disabled persons.  Tesla's conduct caused putative class members who are senior citizens or disabled persons to suffer a substantial loss of property set for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more putative class members who are senior citizens or disabled persons are substantially more vulnerable to Tesla's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Tesla's conduct.

202. Plaintiff, individually and on behalf of the putative class, further seek an order enjoining Tesla's unfair or deceptive acts or practices, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

## COUNT VII

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

203. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

204. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

205. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act and unfair, deceptive, untrue or misleading advertising."

206. Tesla's conduct, as described herein, was performed in and emanated from California and is in violation of the UCL.  Tesla's conduct violates the UCL in at least the following ways:

a.   By deceptively and fraudulently advertising to Plaintiff and the other class members that the Affected Vehicles would be "fully inspected" and certified by Tesla prior to purchase and delivery of the Affected Vehicles;

b.   By violating federal laws, including the Used Motor Vehicle Trade Regulation Rule, 16 CFR Part 455 et seq. for failing to disclose material information in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. section 45(a).

c.   By violating state laws, including California Vehicle Code Section 11713 *et seq*., for failing to disclose material information such as a written inspection checklist and/or requisite "Buyer's Guide", in violation of Section 11713.18(a)(6) which requires disclosure of material information by used car dealers as defined by statute and Section 11713.21 which requires an offer by dealers to purchasers of used cars under $40,000 with a two-day contract cancellation option;

d.   By failing to disclose material information regarding the health of the battery for the Class Vehicles, including the estimated mileage range of the Class Vehicles, maximum battery capacity level, and failure to provide any written inspection report regarding the status of the batteries of the Class Vehicles;

e.    By marketing the Affected Vehicles with the Environmental Protection Agency (EPA) estimated mileage range, therefore misrepresenting the actual mileage range of the Class Vehicles with the intent for Plaintiff and the other class members to rely on such fraudulent advertising;

f.    By deceptively advertising and fraudulently representing to Plaintiff and the other class members, by stating that the Class Vehicles would be fully inspected by Tesla standards prior to purchase and delivery of the Class Vehicles;

g.    By violating federal and state laws requiring that used vehicle dealers display and disclose material information, including a "buyers guide" and an inspection checklist prior to and after the purchase of used vehicles;

h.    By violating other California laws, including California laws governing false advertising and consumer protection.

207. Tesla's misrepresentations, omissions, and fraudulent act alleged herein, which emanated from its headquarters in California and multiple showroom store and service center locations in California, caused Plaintiff and putative class members to make their purchases of the Class Vehicles.  Absent these misrepresentations and omissions, Plaintiff and the other class members would not have purchased the Affected vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defects described herein, namely, defective battery units.

208. Accordingly, Plaintiff and other putative Nationwide class members have suffered injury in fact, including lost money or property, as a result of Tesla's misrepresentations and omissions.

209. Plaintiff and the putative class members seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Tesla under Cal. Bus. & Prof. Code § 17200 *et seq*.

210. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices as described herein, and to restore to Plaintiffs and members of the Nationwide class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 and 3345; and for such other relief as is set forth herein.

211. Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

**COUNT VIII**

**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

212. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

213. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

214. California Business & Professions Code ("Unfair Competition Law") or "UCL") §§17500 states: "[i]t is unlawful for any…corporation…with intent directly or indirectly to dispose of real or personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device…or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

215. Tesla caused to be made or disseminated throughout California and the United States, through advertising, marketing, and other publications emanating from its headquarters in California, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Tesla, to be untrue and misleading to consumers, including Plaintiff and putative class members.

216. Tesla has violated Cal. Bus. & Prof. Code §§17500 *et seq.* because the misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles, as set forth in this complaint, were material and likely to device a reasonable consumer.

217. Plaintiff and other putative Nationwide class members have suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful, and/or deceptive practices.  In purchasing the Class Vehicles, Plaintiff and putative class members relied on the misrepresentations and/or omissions with respect to the safety, performance, and reliability of the Class Vehicles, including representations as to the battery health, condition, capacity, and mileage range.  Tesla's representations turned out not to be true because the Class Vehicles were sold with batteries that were abnormally degraded, dangerously defective, faulty, inoperable, unsafe or otherwise not capable of reaching close to the maximum battery capacity as advertised and represented by Tesla. Had Plaintiff and putative class members known about this, they would not have purchased the Class Vehicles, or would not have paid as much for them.  Accordingly, Plaintiff and putative class members overpaid for the Class Vehicles and did not receive the benefit of their bargain.

218. All of the wrongful conduct alleged herein occurred and continues to occur, in the conduct of Tesla's business, which is headquartered and has its principal operations in California.  Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, all of which emanates from California and occurs both in the state of California and nationwide.

219. Plaintiff, individually, and on behalf of putative class members, request that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices and to restore Plaintiff and the putative class members any money that was acquired by Tesla's acts of unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

220. Based upon Tesla's deceptive and fraudulent acts that have garnered Tesla significant profits at the expense of Plaintiff and the putative class members, Plaintiff and the putative class members seek an award of exemplary and punitive damages against Tesla for the violations and acts as alleged herein.

**COUNT IX**

**BREACH OF EXPRESS WARRANTY**

**(Cal. Comm. Code § 2313)**

221. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

222. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

223. Tesla provided all nationwide purchasers of the Class Vehicles with a 48 month or 50,000-mile limited warranty and a 24 month or 100,000-mile warranty (the "Warranties") against defects in materials and/or workmanship.

224. Tesla also provided all Class Vehicles with a 8 year, unlimited mile warranty which would cover the Class Vehicle's drivetrain and batteries.

225. The Warranties were provided in consideration for the purchase of the Class Vehicles, became part of the basis of the bargain, because they were incorporated into the purchase agreements of all Class Vehicles.

226. Plaintiff and the putative class members learned about the existence of such Warranties pre-purchase, and as reasonable consumers, relied on the existence of such

warranties.  Plaintiff and the putative class members conduct of purchasing the Class Vehicles is in accordance with their reliance on said Warranties.

227. The severe battery degradation defect complained of herein is a defect in materials and/or workmanship and is covered under the Warranties.  Applying any warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, *inter alia*, the Class Vehicles contained a defect at the time of delivery, Tesla was either aware of or consciously and/or recklessly disregarded this defect which could not have been discovered by Plaintiff and putative class members at the time of such purchase, and purchasers lacked any meaningful choice with respect to the terms provided by the Warranties.

228. Plaintiff and the putative class members substantially performed all of their obligations under the Warranties, by presenting the Class Vehicles to authorized Tesla repair facilities during the warranty coverage period and/or by accepting all of the over-the-air updates provided by Tesla.  Plaintiff and the putative class members heeded to the advice of Tesla technicians by recalibrating the batteries of the Class Vehicles.

229. Tesla breached and continues to breach said express warranties by failing to repair the defects in materials and workmanship in the severely degraded batteries.

230. Tesla's representations about the way in which consumers would be able to use the Class Vehicles without paying much attention to the batteries created express warranties that the Class Vehicles would not have severely degraded batteries.

231. Plaintiff and the putative class members have been injured as a result of Tesla's breach, as they did not get the benefit of their bargain, which included, *inter alia*, effective and not severely degraded batteries in the Class Vehicles.

232. Tesla breached and continues to breach, said express warranties as alleged herein, because the Class Vehicles are sold to purchasers with said battery defects and severe degradation, because Tesla fails to fix/repair the batteries through over-the-air updates and in-store.

233. As a result of Tesla's breach of express warranties as set forth above and herein, Plaintiff and putative class members similarly situated have suffered and will continue to suffer damages in an amount to be determined at trial.

234. Plaintiff and the putative class members are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds that Tesla was unjustly enriched with.

**COUNT X**

**BREACH OF IMPLIED WARRANTIES**

**(Cal. Comm. Code § 2314)**

235. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

236. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

237. The Class Vehicles are manufactured goods.

238. The transactions by which Plaintiff and the putative class members purchased the Class Vehicles were transactions for the sale of goods and at all times relevant, Tesla was the seller of the Class Vehicles and placed these products into the stream of commerce throughout the United States, including California.

239. Plaintiff and the putative class members purchased the Class Vehicles online and picked them up at Tesla showroom locations after purchase.

240. Plaintiff and the putative class members purchased the Class Vehicles and for the purpose and usage of the vehicles for transportation that would achieve approximately similar mileage to EPA estimates.

241. Plaintiff and the putative class members purchased the Class Vehicles with the intent that they could be driven to the full range allowable and as advertised and displayed on for sale by Tesla.

242. Each of the Class Vehicles were sold with implied warranties that any parts thereof were merchantable, were the same quality as those generally accepted in the trade, were not of poor or below average quality within the description and/or conformed to the affirmations of fact made by Tesla.

243. At the time of purchase of the Class Vehicles, Tesla knew or had reason to know that Plaintiff and other putative class members were relying on Tesla's skill and judgment to inspect and certify the Class Vehicles for the particular purposes, and Plaintiff justifiably relied on Defendant's skill and judgment.

244. This became a part of the basis of the bargain between the parties.

245. The Class Vehicles were non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were of poor or below average quality as those generally accepted in the trade, because other vehicles similarly situated and sold by Tesla are capable of reaching the estimated EPA mileage range, or at the very least, do not suffer from 24% battery degradation.

246. The Class Vehicles were of poor or below average quality within the description of electric vehicles provided by Tesla and did not possess the qualities that a buyer would have reasonably expected.  The Class Vehicles were not suitable for these purposes.

247. Plaintiff and the other putative class members purchased the Class Vehicles believing it had the qualities that were sought, based on the deceptive advertising and fraudulent acts of Tesla, but the Class Vehicles were not of the same quality as similar products in the product category generally acceptable in the trade.

248. The Class Vehicles were not acceptable commercially and breached the implied warranty because they did not conform to the promises or affirmations of fact made Tesla's website and other marketing materials, Cal. Comm. Code § 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

249. As a result of Tesla's breach, Plaintiff and other putative class members did not receive goods as impliedly warranted by Tesla.

250. As a direct and proximate result of the foregoing, Plaintiff and the putative class members sustained losses and damage by not receiving the benefit of their bargain.

251. Plaintiff and the putative class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which have been unjustly enriched by Tesla.

**COUNT XI**

**INTENTIONAL MISREPRESENTATION**

**(Cal. Civ. Code §§ 1709-1710)**

252. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

253. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

254. Tesla represented to Plaintiff and the putative class members that the Class Vehicles would be fully inspected and that such inspection would cover the battery health of the Class Vehicles.  Tesla also represented to Plaintiff and the putative class members that Tesla used/preowned vehicles would come close to approximately the same mileage rating provided by the EPA estimates.

255. Tesla knew that such a representation was false, at least to Plaintiff, that the battery of Plaintiff's vehicle would be similar to the EPA estimated mileage rating.  Tesla intended that Plaintiff and the putative class members rely on Tesla's intentional misrepresentations regarding the Class Vehicles.

256. Plaintiff, and the putative class members, reasonably relied upon Tesla's representations regarding the Class Vehicles.  More specifically, Plaintiff reasonably believed and relied upon Tesla's representation that his vehicle was fully inspected.

257. Plaintiff, and the putative class members, were damaged by Tesla misrepresentations, and or, Tesla's failure to disclose material information regarding the condition and status of the Class Vehicles' batteries prior to purchasing the Class Vehicles because Plaintiff and members of the proposed classes did not get their benefit of the bargain, which included, inter alia, vehicles that could reach, or come approximately close to reaching EPA rated mileage ratings.

## COUNT XII

## NEGLIGENT MISREPRESENTATION

## (Cal. Civ. Code §§ 1709-1710)

258. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

259. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

260. Tesla represented to Plaintiff and the putative class members that they were selling the Class Vehicles that would receive full inspections prior to sale, and that would provide mileage that would be approximately close to the EPA estimated mileage ratings.

261. Tesla had no reasonable grounds to believe that the Class Vehicles would be capable of reaching the EPA estimated mileage rating, especially after having the exclusive ability to test and inspect the Class Vehicles.

262. Tesla intended for Plaintiff and the putative class members to rely on their representations about the Class Vehicles.

263. Tesla's representations were material, because it related to the safety and purchase of the Class Vehicles, and because reasonable consumers are likely to be influenced by the mileage range and maximum battery capacity of electric vehicles. Tesla's representations of the batteries for the Class Vehicles was material because reasonable consumers are likely to be influenced by the fact that the batteries would be

covered under warranty and replaced and/or repaired by Tesla for almost any reason imaginable.

264. Plaintiff and the putative class members relied upon Tesla's representations and purchased the Class Vehicles.

265. As a direct and proximate result of the foregoing, Plaintiff and the putative class members were damaged because they would not have purchased the Class Vehicles or would have paid significantly less for the Class Vehicles had they known that Tesla's representations were false.

**COUNT XIII**

**FRAUD BY CONCEALMENT**

**(Cal. Civ. Code § 3294)**

266. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

267. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

268. Tesla concealed and suppressed material facts concerning the battery health and status of the Class Vehicle batteries.

269. More specifically, Tesla concealed and suppressed material facts concerning the design, safety, performance, and quality of the Class Vehicles and the batteries in the Class Vehicles. As alleged herein, notwithstanding its promises regarding the batteries of the Class Vehicles and warranties both express and implied regarding the same, Tesla knowingly and intentionally represented to consumers that the Class Vehicles would receive full inspections prior to sale. Tesla conducted full inspections of the Class Vehicles, which would include testing the batteries of the Class Vehicles to determine the maximum battery capacity of the Class vehicles.

270. Tesla fraudulently concealed the results of any inspection performed on the Class Vehicles, including any results from testing of the batteries and maximum battery

capacity of the Class Vehicles.  Tesla did so in order to boost sales of the Class Vehicles and in order to falsely assure consumers that the Class Vehicles were fully inspected and performing as promised.  The false representations were material to consumers, both because they concerned the safety and performance of the Class Vehicles, and because the representations played a significant role in the value of the Class Vehicles.

271. Plaintiff and the other Class members viewed advertising on Tesla's website, read promotional materials, and heard a plethora of Tesla information regarding the safety, performance, and quality of Tesla vehicles and Class Vehicles, including the battery health and maximum battery capacity.  They had no way of knowing that Tesla's representations were false and gravely misleading and there was no way that Plaintiff and the other Class members could have unraveled Tesla's deception.

272. Tesla failed to provide any inspection checklist or report for any of the Class Vehicles, nor did Tesla provide any type of written disclosure regarding the battery health and maximum battery capacity of the Class Vehicles.  Tesla had a duty to disclose the true battery health and maximum battery capacity of the Class Vehicles because the tests could only have been conducted by Tesla.  Tesla had readily available access to this information, superior knowledge, and understood this information.  Tesla knew that these facts would be difficult and nearly impossible for this information to be discovered by Plaintiff and the other Class members.  Tesla failed to disclose and/or fraudulently concealed material information regarding the batteries of the Class Vehicles, which are material concerns to consumers because they directly impact the safety, performance, and value of the Class Vehicles.

273. Tesla actively concealed and/or suppressed these material facts, including facts regarding the batteries and degradation of the Class Vehicles, in whole or in part, to pad and protect its profits and to burnish the perception that its vehicles were the leading edge of electric vehicle and battery technology, which perception would enhance the

brand's image and garner Tesla more money and profits.  However, Tesla did so at the expense of Plaintiff and the other Class members.

274. Plaintiff and the other Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased Class Vehicles manufactured by Tesla, would not have paid a premium for a Class Vehicle sold by or through Tesla, and would not have continued to drive the Class Vehicles.  Tesla was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or the other Class members.  This includes the results and testing information of the batteries of the Class vehicles and any information regarding the capacity of the batteries.

275. Based on the concealment and/or suppression of the material facts, Plaintiff and the other Class members sustained damages because they did not receive the value for: (1) the Class Vehicles that should have been operating at close, or near to the approximate mileage rating for the Class Vehicles; and (2) the value of purchased a Class Vehicle that was provided a warranty by Tesla.  Had Plaintiff and the other putative class members been aware of the severely deteriorated, defective, faulty, and abnormally degraded health and significantly lower than advertised mileage ratings of the Class Vehicles, they would certainly have paid less for the Class Vehicles, or they would not have purchased or leased them at all.

276. Accordingly, Tesla is liable to Plaintiff and the putative class members for damages in an amount to be proven at trial.

277. Tesla's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and the class members' rights and well-being, and as part of efforts to enrich itself in California at the expense of consumers. Tesla's conduct warrants an assessment of punitive damages sufficient to deter such conduct in the future, the amount which shall be determined according to proof.

/ / /

## COUNT XIV

## QUASI CONTRACT/RESTITUTION/UNJUST ENRICHMENT

### (California Law)

278. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

279. Plaintiff brings this count on his own behalf and on behalf of the Nationwide Class and California Classes.

280. Tesla intentionally and recklessly made misrepresentations and concealed facts about the Class Vehicles to Plaintiff and the putative class members with an intent to induce them to purchase the Class Vehicles.

281. In reliance on Tesla's misrepresentations and concealment, Plaintiff and the putative class members believed that the Class Vehicles contained safe and effective batteries that were not severely degraded or defective, and that would be capable of reaching approximately close to, or actual EPA estimated mileage as represented by Tesla.

282. Plaintiff and the putative class members made monetary payments to Tesla to purchase the Class Vehicles, for which Tesla received and has been unjustly enriched by accepting such payments.

283. Plaintiff and the putative class members are entitled to restitution based on the contract and the quasi contract between Plaintiff and the putative class members and Tesla, and each of them.

### IX.    REQUEST FOR RELIEF

284.    WHEREFORE, Plaintiff HUGH NGUYEN, individually and on behalf of the putative class members and the proposed classes, respectfully requests that the Court enter judgment in their favor and against Defendant Tesla, Inc., as follows:

A.        Certification of the proposed classes, including appointment of Plaintiff's counsel as class counsel;

B.      An order temporarily and permanently enjoining Tesla from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this complaint;

C.      Injunctive relief in the form of a recall, as applicable to the CLRA cause of action only;

D.      Equitable relief in the form of buyback of the Class Vehicles;

E.      Costs, restitution, damages, including punitive and exemplary damages, penalties, and disgorgement in an amount to be determined at trial;

F.      An order requiring Tesla to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees to Plaintiff's counsel; and

H.      Such other or further relief as may be appropriate.

## X.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated:  July 23, 2019                    LAW OFFICES OF EDWARD C. CHEN

                                         By      /s/ *Edward C. Chen*
                                                 Edward C. Chen (SBN 312533)

                                         1 Park Plaza, Suite 600
                                         Irvine, CA 92614
                                         Telephone:   (949) 287-4278
                                         Facsimile:   (626) 386-6060
                                         Email: Edward.Chen@edchenlaw.com

                                         *Attorney for Plaintiff Hugh Nguyen and the*
                                         *Proposed Classes*