LEWIS BRISBOIS BISGAARD & SMITH LLP
ERIC Y. KIZIRIAN, SB# 210584
  E-Mail: Eric.Kizirian@lewisbrisbois.com
MICHAEL K. GRIMALDI, SB# 280939
  E-Mail: Michael.gr@lewisbrisbois.com
ZOURIK ZARIFIAN, SB# 306368
  E-Mail: Zourik.Zarifian@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant
TESLA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| HUGH NGUYEN, TODD WOLVEN, IAN ELLWOOD, E'RIKA BROCK, individuals, on behalf of themselves  and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>TESLA, INC., a Delaware corporation,<br><br>          Defendant. | Case No. 8:19-CV-01422-JLS-JDE<br><br>**TESLA'S NOTICE OF MOTION AND MOTION TO COMPEL ALL PLAINTIFFS TO INDIVIDUAL ARBITRATION AND TO DISMISS THE ACTION**<br><br>Concurrently filed with the Declarations of Jasjit Ahluwalia and Victor Barclay and Proposed Order<br><br>Date:          January 31, 2020<br>Time:          10:30 a.m.<br>Courtroom.:   10A |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### NOTICE OF MOTION TO COMPEL

**PLEASE TAKE NOTICE** that on that on January 31, 2020, at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Josephine L. Staton, Courtroom 10A, of the above-entitled Court, located at 411 W. Fourth Street, Santa Ana, CA 92701, Tesla, Inc. ("Tesla"), will and hereby does move this Court as follows:

1.     For an order compelling plaintiffs Hugh Nguyen, Todd Wolven, E'rika Brock, and Ian Ellwood (together "plaintiffs") to submit their claims to final and binding *individual* arbitration under the terms of the Arbitration Agreements between plaintiffs and Tesla; and

2.     For an order dismissing this action after plaintiffs are compelled to individual arbitration.

Tesla makes this motion under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, on the grounds that plaintiffs and Tesla entered into valid and enforceable arbitration agreements that fully encompass each cause of action alleged in plaintiffs' First Amended Class Action Complaint and require individual arbitration of each plaintiff's claims.

This motion is made after the Local Rule 7-3 telephonic meet and confer, which occurred on November 18, 2019 between Edward Chen (counsel for plaintiffs) and Michael Grimaldi (counsel for Tesla).  After a full discussion of this motion (including the factual and legal basis for same), the parties could not reach a resolution that obviated the need for this this motion.

//
//
//
//
//
//

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1    This Motion is based upon this Notice, the accompanying Memorandum of

2 Points and Authorities in support thereof, the declarations of Victor Barclay and

3 Jasjit Ahluwalia, all papers and pleadings filed in this action, and any other evidence

4 and argument as may be presented in connection with the hearing on the Motion.

5

6 DATED: December 4, 2019          LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8

9                                 By: _____

10                                     Eric Y. Kizirian
                                       Attorneys for Tesla
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.      Introduction ........................................................................................ 1

II.     Summary of Pertinent Facts ............................................................. 2

III.    Argument ........................................................................................... 7

    A.   The FAA Requires that Courts Enforce the Parties' Arbitration Agreement According to Its Terms........................................ 7

        1.   The Arbitration Agreement Is Enforceable. ................................ 8

        2.   Plaintiffs' Agreement to Arbitrate "Any Dispute" with Tesla Indisputably Encompasses Their Claims Here. ............... 11

        3.   The Arbitration Must Be Limited to Plaintiffs' Individual Claims. ........................................................................ 12

    B.   The Arbitration Agreement Is Not Unconscionable. ............................ 12

        1.   The Arbitration Agreement Is Not Procedurally Unconscionable.......................................................................... 13

        2.   The Arbitration Agreement Is Not Substantively Unconscionable.......................................................................... 14

IV.   The Court Should Dismiss the Case So the Parties Can Bilaterally Arbitrate.......................................................................... 15

V.     Conclusion ...................................................................................... 16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## Cases

*A.V. v. iParadigms,*
    544 F. Supp. 2d 473 (E.D. Va. 2008)..........................................................11

*Alford v. Dean Witter Reynolds, Inc.,*
    975 F.2d 1161 (5th Cir. 1992)...................................................................15

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ......................................................................7, 9, 12, 16

*Bagley v. Mt. Bachelor, Inc.,*
    356 Ore. 543, 340 P.3d 27 (2014) .............................................................13

*Beard v. PayPal, Inc.,*
    No. 09-1339-JO, 2010 WL 654390 (D. Or. Feb. 19, 2010)........................10

*Cairo, Inc. v. Crossmedia Servs., Inc.,*
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ................................................10

*Comedy Club, Inc. v. Improv W. Assocs.,*
    553 F.3d 1277 (9th Cir. 2009)......................................................................8

*Cox v. Ocean View Hotel Corp.,*
    533 F.3d 1114 (9th Cir. 2008)......................................................................8

*First Options of Chi., Inc. v. Kaplan,*
    514 U.S. 938 (1995) ......................................................................................8

*Fteja v. Facebook, Inc.,*
    841 F. Supp. 2d 829 (S.D.N.Y. 2012).......................................................10

*Gray v. Toyota Motor Sales, U.S.A., Inc.,*
    554 Fed. App'x 608 (9th Cir. 2014).............................................................1

*Howsam v. Dean Witter Reynolds,*
    537 U.S. 79 (2002) ........................................................................................7

*In re Holl,*
    925 F.3d 1076, 1083 (9th Cir. 2019)..........................................................10

*Johnmohammadi v. Bloomingdale's, Inc.,*
    755 F.3d 1072 (9th Cir. 2014).....................................................................15

*Knezovich v. DirecTV, L.L.C.,*
    No. 4:17-cv-00165-MWB, 2017 U.S. Dist. LEXIS 170111 (D. Idaho
    Oct. 13, 2017) ..............................................................................................10

*KPMG LLP v. Cocchi,*
    565 U.S. 18 (2011) ........................................................................................8

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP,*
    74 Cal. App. 4th 1105 (1999).........................................................13

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019) ................................................................7

*Loewen v. Lyft, Inc.,*
    129 F. Supp. 3d 945 (N.D. Cal. 2015) ..........................................15

*Lovey v. Regence Blueshield of Idaho,*
    139 Idaho 37 (2003) ..................................................................12

*Meyer v. Uber Techs., Inc.,*
    868 F.3d 66 (2d Cir. 2017)...............................................9, 10, 11

*Miguel v. JPMorgan Chase Bank, N.A.,*
    2013 U.S. Dist. LEXIS 16865 (C.D. Cal. Feb. 5, 2013)...................13

*Mortensen v. Bresnan Commc'ns, LLC,*
    722 F.3d 1151 (9th Cir. 2013) .......................................................7

*Paduano v. Am. Honda Motor Co., Inc.,*
    169 Cal. App. 4th 1453 (2009).......................................................1

*Perry v. Thomas,*
    482 U.S. 483 (1987) ...................................................................8

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal. 4th 899 (2015)...............................................................13

*Sanders v. Certified Car Ctr., Inc.,*
    93 Va. Cir. 404 (Cir. Ct. 2016).....................................................12

*Serpa v. Cal. Surety Investigations, Inc.,*
    215 Cal. App. 4th 695 (2013) ......................................................14

*Swift v. Zynga Game Network, Inc.,*
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................10

*Wiseley v. Amazon.Com, Inc.,*
    709 F. App'x 862 (9th Cir. 2017)...................................................10

*Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ..................................................................8

Statutory Authorities

15 U.S.C. § 2301..............................................................................2

Cal. Bus. & Prof. Code § 17200 *et seq*...............................................2

Cal. Bus. & Prof. Code § 17500 *et seq*...............................................2

Cal. Civ. Code § 1750 *et seq* ............................................................2

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                  iii                         8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

Cal. Civ. Code § 1790 *et seq* ........................................................................2

Cal. Civ. Code § 3294 ....................................................................................2

Cal. Civ. Code §§ 1709-10 .............................................................................2

Cal. Veh. Code § 11713 *et seq* .....................................................................2

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ...............................................1, 7

<u>Rules and Regulations</u>

Federal Trade Commission Act (Used Motor Vehicle Regulation Rule, 16
     C.F.R. § 455 ............................................................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**INTRODUCTION**

Plaintiffs are consumers from four states who purchased used electric vehicles from Tesla.  As part of their used-vehicle purchases, plaintiffs expressly agreed to arbitrate any dispute "arising out of or relating to any aspect of [their] relationship" with Tesla. Declaration of Victor Barclay ("Barclay Decl.") ¶¶2-4 ("Arbitration Agreement").  Plaintiffs also waived any right to sue on behalf of "any class" or to pursue a "representative action." *Id.*

Plaintiffs filed this lawsuit in violation of their express agreement.  Their nearly 100-page First Amended Complaint ("FAC") seeks individual *and* class relief under twenty-three misguided and thinly-pled warranty and consumer protection claims. Plaintiffs claim that Tesla breached warranties and violated various laws because the batteries in their *used* Tesla vehicles provide less driving range than the EPA-approved "driving range" *estimate* that Tesla (like all automakers) uses to approximate the range of its vehicles.  But as Tesla makes clear on its website,[1] these EPA ranges are not range guarantees,[2] and there is no cognizable cause of action for publicizing EPA-approved range estimates.[3]  Plaintiffs' throw-in claims,

---

[1]     Tesla's used vehicle listings explain that EPA range is "based on testing new vehicles to EPA standards. Vehicle range may change depending on battery age and condition, vehicle configuration, driving style, environmental and climate change." https://www.tesla.com/inventory/used/ms (click on any listing).  Similar disclosures have been in place at all relevant times.

[2]     *See*   https://www.fueleconomy.gov/feg/label/learn-more-electric-label.shtml ("Driving Range When the vehicle is fully charged, this value represents the ***approximate*** number of miles that can be travelled in combined city and highway driving before the vehicle must be recharged." (emphasis in original)).

[3]     *See, e.g.*, *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 Fed. App'x 608, 609 (9th Cir. 2014) ("California law does not recognize a cause of action for publicizing EPA fuel economy estimates and omitting further explanation."); *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1470-71, (2009) ("As a matter of law, there is nothing false or misleading about Honda's advertising with regard to its (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                   1
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

alleging violations of the FTC "Used Car Rule" and certain California Vehicle Code sections are also meritless, as Tesla will show at the appropriate time.

Critically, however, each of plaintiffs' claims "aris[es] out of or relat[es] to" their "relationship" with Tesla and thus, is covered by their Arbitration Agreements.[4]   Under the terms of those agreements, as well as the Federal Arbitration Act, plaintiffs should be compelled to arbitrate all of their claims on an individual basis, and the case should be dismissed.

# I. SUMMARY OF PERTINENT FACTS

Tesla sells new and used electric vehicles on its website and in Tesla-owned stores. *See* https://www.tesla.com/inventory/used/ms.   Plaintiffs each purchased a

---

statements that identify the EPA fuel economy estimates for the two Civic Hybrid models," where plaintiff's vehicle allegedly achieved a much lower fuel economy).

[4]     The FAC asserts claims for/under (1) the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*); (2) Federal Trade Commission Act (Used Motor Vehicle Regulation Rule, 16 C.F.R. § 455, *et seq.*); (3) Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*); (4) Vehicle Code § 11713 *et seq.*; (5) Vehicle Code § 11713.21 (Cal. Car Buyer's Bill of Rights, FFVR 35); (6) Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); (7) Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*); (8) False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*); (9) Breach of Express Warranty (Cal. Com. Code § 2313); (10) Breach of Implied Warranties (Cal. Com. Code § 2314); (11) Intentional Misrepresentation (Cal. Civ. Code §§ 1709-10); (12) Negligent Misrepresentation (Cal. Civ. Code §§ 1709-10); (13) Fraud by Concealment (Cal. Civ. Code § 3294); (14) Quasi Contract/Restitution/Unjust Enrichment (Cal. Law); (15) Idaho Consumer Protection Act (Idaho Code § 48-601, *et seq.*); (16) Breach of Express Warranty (Idaho Code §§ 28-2-313 and 28-12-210); (17) Breach of Implied Warranty of Merchantability (Idaho Code §§ 28-2-314 and 28-12-212); (18) Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §§ 646.605, *et seq.*); (19) Breach of Express Warranty (Or. Rev. Stat. §§ 72.3130 & 72a.2100); (20) Breach of Implied Warranty of Merchantability (Or. Rev. Stat. §§ 72.3140 & 72A.2120); (21) Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, *et seq.*); (22) Breach of Express Warranty (Va. Code § 8.2-313 & 8.2a-210); and (23) Breach of Implied Warranty of Merchantability (Va. Code §§ 8.2-314 & 8.2a-212).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                   2                      8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

*used* Model S vehicle online directly from Tesla.  Declaration of Jasjit Ahluwalia ("Ahluwalia Decl.") ¶¶3, 8, 13, 18.[5]  As explained in greater detail below, each plaintiff agreed, through *at least* two separate documents, to arbitrate "any dispute arising out of or relating to any aspect of the relationship[,]" and had ample time to review (and opt out of) the Arbitration Agreement before finalizing their purchases.

*First*, plaintiffs agreed to the Arbitration Agreement when they completed an online order for a used Tesla Model S and clicked a "Place Order" button on the website (depicted below as seen by plaintiff Nguyen on his order date) (Barclay Decl. ¶¶2-3):

//
//
//
//
//
//
//
//
//
//

---

[5]     Plaintiffs allege the following facts about their purchases:

In October 2017, Brock purchased a used 2013 Tesla Model S 85 vehicle and picked up her car from Tesla's showroom in Tyson's Corner, Virginia. SAC ¶25.

In August 2018, Ellwood purchased a used Tesla Model S 70D vehicle and picked up his car from Tesla's showroom in Portland, Oregon. SAC ¶20.

In November 2017, Nguyen purchased a used 2014 Tesla Model S vehicle with nearly 76,000 miles on it and picked up his car from Tesla's showroom in Buena Park, California. SAC ¶¶14, 90.

In July 2019, Wolven purchased a used 2015 Tesla Model S 85, and picked up his car from Tesla's showroom in Portland, Oregon. SAC ¶17.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                           3                           8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21  The text immediately below the "Place Order" button states:  "By placing this order

22  you agree to the Model S Order Agreement…."  Barclay Decl. ¶2.  The phrase

23  "Model S Order Agreement" is displayed in *bold red font* and is a hyperlink that

24  opens a new Internet-browser window to reveal the "Motor Vehicle Order

25  Agreement" and its "Terms & Conditions."  Barclay Decl. ¶¶3-4 & Ex. A.  Although

26  there were slight variations, the order process was substantially identical for all of

27  the named plaintiffs.  Barclay Decl. ¶¶5-7 & Exs. C, D, E.

28          The Order Agreement for each plaintiff was either three or four pages.  The

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                    4                          8:19-cv-01422-JLS-JDE

TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

arbitration clause is prominently displayed, in a standalone text box, and reads as follows:

> **Agreement to Arbitrate.** Please read this provision carefully.
> In the event of a concern or dispute between us, please send Tesla written notice to resolutions@tesla.com describing the nature of the dispute and the relief sought.
>
> If it is not resolved within 60 days, Tesla and you agree that any dispute arising out of or relating to any aspect of the relationship between us will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA). This includes claims arising before this Agreement, including claims related to statements about our products. Alternatively, you may opt out of arbitration as described below.
>
> The AAA Consumer Arbitration Rules will apply. We will pay all AAA fees for any arbitration. The arbitration will be held in a location most convenient to your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.
>
> The arbitrator may only resolve disputes between you and Tesla on an individual basis. The arbitrator cannot award relief for anyone who is not a party and may not consolidate claims. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.
>
> If you prefer, you may instead take your individual dispute to small claims court.
>
> You may opt out within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name and intent to opt out of the arbitration provision.

Barclay Decl. ¶¶3-4 & Exs. A-B.

*Second*, after plaintiffs' initial orders, but before they took delivery of their vehicles, Tesla made another copy of the Order Agreement available through plaintiffs' personal Tesla Accounts (sometimes referred to as a "MyTesla" account). Ahluwalia Decl. ¶¶4, 5, 9, 14, 19; *see id.* ¶5 (Tesla emailed plaintiff Nguyen a copy

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

of his Order Agreement).  The agreements provided plaintiffs with a 30-day period to opt out of the Arbitration Agreement.  Barclay Decl. ¶¶3-4 & Exs. A-B. None of the plaintiffs did. Ahluwalia Decl. ¶¶7, 12, 17, 22.

*Third*, when they took delivery of their vehicles, plaintiffs *physically signed* documents reaffirming their assent to the Arbitration Agreements.  Plaintiff Brock *signed* a "Motor Vehicle Purchase Agreement Terms & Conditions" including Tesla's Arbitration Agreement. Ahluwalia Decl. ¶5.  And the other three plaintiffs (Ellwood, Nguyen, Wolven) *signed* a *"Delivery Declaration"* that states "[B]Y SIGNING BELOW, YOU AGREE THAT YOU HAVE TAKEN DELIVERY OF YOUR MODELS ON OR BEFORE [DATE OF DELIVERY] AND THAT *YOU AGREE WITH YOUR FINAL MOTOR VEHICLE PURCHASE AGREEMENT*, WHICH HAS BEEN UPLOADED TO AND IS AVAILABLE IN YOUR MYTESLA ACCOUNT." Ahluwalia Decl. ¶¶6, 13, 17 & Exs. 3, 8, 11.   The final motor vehicle purchase agreements, in turn, acknowledge that the customer/plaintiff previously "accepted" Tesla's online offer by clicking their assent to the Order Agreements (which contain the Arbitration Agreement).

*Fourth*, three of the plaintiffs had *weeks* between the time they placed their order (and accepted the Order Agreement) and the time they took delivery of their vehicles (and signed Delivery Declarations and other documents).  Plaintiff Nguyen had 23 days between his online order and his delivery (Ahluwalia Decl. ¶¶3, 6); plaintiff Wolven had 14 days (*id.* ¶¶3, 6); and plaintiff Ellwood had 18 days (*id.* ¶¶15, 17). None of the plaintiffs was under any time pressure, and each had ample time to read and understand the agreement and its implications. Again, none of the plaintiffs opted out of the Arbitration Agreements.

*Finally,* the arbitration clause and class action waiver are express terms of the used-vehicle warranty plaintiffs seek to enforce.  FAC ¶¶78-82.  Tesla's Used Vehicle Limited Warranty reminds customers that "you agreed [in your Vehicle Order Agreement] to resolve disputes with Tesla by arbitration rather than by

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                          6                                    8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

litigation in Court." Ahluwalia Decl. ¶20. That same Arbitration Agreement, including the class waiver, is reprinted in the warranty "for your convenience." Ahluwalia Decl. ¶20.[6]

## II.   ARGUMENT

The "overarching purpose" of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011) ("*Concepcion*"). Plaintiffs agreed both to arbitrate "any dispute arising out of or relating to any aspect of the relationship" with Tesla and to a class-action waiver. The question whether the parties have submitted a dispute to arbitration is generally an issue for judicial determination. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002). The Court should thus order this case to arbitration on an individual, non-class basis.

### A.   The FAA Requires Enforcement of the Parties' Arbitration Agreement According to Its Terms.

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving [interstate] commerce." 9 U.S.C. §§ 1, 2. Both criteria are met here. The Arbitration Agreement is in writing. And Tesla operates in interstate commerce, as evidenced by the complaint filed by plaintiffs from four different states, as well as Tesla's nationwide and global operations.[7]

"The FAA requires courts to enforce arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). Courts must "give

---

[6]   To the extent the FAC invokes the "remaining battery and drive warranty" (FAC ¶90) under the New Vehicle Limited Warranty, that Warranty also incorporates the arbitration clause and class action waiver. Ahluwalia Decl. ¶19.

[7]   *See* https://www.tesla.com/findus/list/stores/United+States; https://www.tesla.com/findus/list/services/United+States; https://www.tesla.com/factory.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                7                         8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). The FAA reflects an "emphatic federal policy *in favor of* arbitral dispute resolution," *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam), and "where the contract contains an arbitration clause, there is a presumption of arbitrability," *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009). The Court must compel arbitration if (1) "a valid agreement to arbitrate exists and, if it does," (2) "the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Because both of these requirements are abundantly met here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### 1. <u>The Arbitration Agreement Is Enforceable.</u>

 "To determine whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, whether a general contract-based defense prevents enforcement of the Arbitration Agreement is guided by state law.

Application of state law, however, is limited by Section 2 of the FAA, which permits arbitration agreements to be declared unenforceable only "upon such grounds as exist at law or in equity for the revocation of any contract." Under this saving clause, state law may be applied to invalidate an arbitration agreement only "[i]f that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). "A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.* Accordingly, while courts can consider "generally applicable contract defenses,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                    8                          8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1    such as, fraud, duress, or unconscionability," the FAA preempts state-law defenses

2    "that apply *only* to arbitration or that derive their meaning from the fact that an

3    agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (emphasis added).

4         Plaintiffs have no state-law enforceability defenses to invalidate the

5    arbitration clause here.  As explained above, by clicking the "Place Order" button on

6    Tesla's website, plaintiffs agreed to be bound by the terms of their Order

7    Agreement, including the Arbitration Agreement.  The Order Agreement was set off

8    in a bold red font, making it obvious that the words "Model S Order Agreement"

9    was a hyperlink to the actual text of the Order Agreement. Plaintiffs thus

10   indisputably agreed to and were on notice of the Arbitration Agreement by virtue of

11   the hyperlink to the Order Agreement, and they manifested their assent to the

12   Agreement by clicking "Place Order."  And if there were any doubt, they received

13   copies of the Order Agreement, including Arbitration Agreement, in their Tesla

14   Accounts.

15        Courts across the country have upheld agreements very similar to Tesla's.

16   For example, in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), the court

17   vacated a denial of a motion to compel arbitration, holding that the plaintiff

18   unambiguously "clicked" his assent to the app-based contract depicted below:



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

*Id.* at 78-79 & Addendum B.   Numerous factors compelled this conclusion, including: (1) "the transactional context of the parties' dealings," (2) the proximity of the hyperlinked terms to "the mechanism for manifesting assent—i.e., the register button," (3) the fact that the terms were provided "simultaneously to enrollment," and (4) language signaling the creation of a contract ("By creating an Uber account, you agree").  *Id.* at 78-80.

Likewise, in *Wiseley v. Amazon.Com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017), the court affirmed an order compelling arbitration of an online agreement. The court held that the "[t]he notices on Amazon's checkout and account registration pages, which alerted [plaintiff] that clicking on the corresponding action button constituted agreement to the *hyperlinked* [Conditions of Use], were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms."  *Id.* (applying Washington law but stating that the court would "reach the same result under California law").

These cases are not isolated examples—courts commonly enforce hyperlinked agreements,[8] and have even done so when consumers are required to take several steps and clicks to find the arbitration agreement.[9]  The law is no different in each of the named plaintiffs' home states.[10]

_____

[8]   *See, e.g., Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (hyperlink was colored blue); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (hyperlink was underlined); *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-cv-04825-JW, 2005 WL 756610, at *2 (N.D. Cal. Apr. 1, 2005) (the hyperlink was underlined and highlighted).

[9]   *In re Holl*, 925 F.3d 1076, 1079, 1083 (9th Cir. 2019) (upholding enforcement of arbitration clause on mandamus challenge, even though "locating the arbitration clause at issue here requires several steps and a fair amount of web-browsing intuition").

[10]   *See, e.g., Knezovich v. DirecTV, L.L.C.*, No. 4:17-cv-00165-MWB, 2017 U.S. Dist. LEXIS 170111, at *35-36 (D. Idaho Oct. 13, 2017) (applying Idaho law and (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Here, there is no question that plaintiffs assented to the Order Agreement. The Tesla Order Agreement shares all of the core features that compelled enforcement of the arbitration agreement in *Meyer and Wiseley*.  Specifically, as depicted again below, Tesla's hyperlinked terms are presented in a patently commercial context, are located immediately below the "Place Order" button that signals assent, and are presented with language signaling the creation of a contract ("By placing this order you agree to the Model S Order Agreement"):



But far more, three of the plaintiffs subsequently reaffirmed their assent by signing a delivery declaration stating they "agree" with their "final motor vehicle purchase agreement" uploaded to their Tesla Account.  The fourth, plaintiff Brock, physically signed a second copy of his Motor Vehicle Purchase Agreement that included the Arbitration Agreement. There is no question that plaintiffs assented to the Arbitration Agreements at issue here.

## 2.  <u>Plaintiffs' Agreement to Arbitrate "Any Dispute" with Tesla Indisputably Encompasses Their Claims Here.</u>

Plaintiffs agreed *multiple* times to arbitrate "any dispute arising out of or relating to any aspect of the relationship between [plaintiffs and Tesla]."  This broad language indisputably covers plaintiffs' claims regarding their battery range and for

compelling arbitration, and noting "rule in Idaho is well established that a party's failure to read a contract will not excuse his performance"); *Beard v. PayPal, Inc.*, No. 09-1339-JO, 2010 WL 654390, at *1 (D. Or. Feb. 19, 2010) (applying Oregon law and enforcing "clickwrap" agreement where plaintiffs had access to the all terms and conditions on defendant's website); *A.V. v. iParadigms*, 544 F. Supp. 2d 473, 479-80 (E.D. Va. 2008) (applying Virginia law and enforcing terms of online clickwrap agreement and noting "a contract is no less a contract simply because it is entered into via a computer").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                                11                        8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

alleged technical violations of FTC's "used car rule" and the California Vehicle Code in connection with the sale of their vehicles. These claims clearly arise from plaintiffs' relationship with Tesla, and are covered by the Arbitration Agreement.

### 3. <u>The Arbitration Must Be Limited to Plaintiffs' Individual Claims.</u>

Class arbitration is "not arbitration as envisioned by the FAA" and "lacks its benefits." *Concepcion*, 563 U.S. at 351. Accordingly, the Arbitration Agreement includes an express class-action waiver, which states:

> The arbitrator may only resolve disputes between you and Tesla on an individual basis. The arbitrator cannot award relief for anyone who is not a party and may not consolidate claims. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.

Barclay Decl. ¶¶3-4 & Exs. A-B.

Plaintiffs are bound by the class-action waivers they accepted. Any contrary interpretation would interfere with the fundamental attributes of the "streamlined" bilateral proceedings the parties bargained for. And as *Concepcion* confirms, the FAA bars a court from applying a "generally applicable" state doctrine "in a fashion that disfavors arbitration." *Concepcion*, 563 U.S. at 341.

### B. The Arbitration Agreement Is Not Unconscionable.

As with contract formation issues (*see* Section III(A)(1)), a contract defense of unconscionability is governed by state law. To prove unconscionability, plaintiffs must show the Arbitration Agreement is both procedurally and substantively unconscionable. *Kilgore*, 718 F.3d at 1058 (applying California law).[11] The procedural aspect of unconscionability focuses on oppression or

---

[11] *See also, e.g., Lovey v. Regence Blueshield of Idaho*, 139 Idaho 37, 42 (2003) ("For a contract or contractual provision to be voided as unconscionable, it must be both procedurally and substantively unconscionable."); *Sanders v. Certified* (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                    12                    8:19-cv-01422-JLS-JDE
TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1   surprise, whereas the substantive aspect focuses on "overly harsh" terms, "unduly

2   oppressive" terms, or terms so one-sided that "shock the conscience." *Sanchez v.*

3   *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). All of these formulations

4   require a high degree of unfairness, well beyond "a simple old-fashioned bad

5   bargain." *Id.* at 911.

6                    1.    **The Arbitration Agreement Is Not Procedurally**

7                          **Unconscionable.**

8        An arbitration agreement cannot be rendered unenforceable just because it is

9   offered on a "take it or leave it" basis. *Miguel v. JPMorgan Chase Bank, N.A.*, 2013

10  U.S. Dist. LEXIS 16865, at *10 (C.D. Cal. Feb. 5, 2013) (citing *Lagatree v. Luce,*

11  *Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1127 (1999)). The

12  drafter is under "no obligation to highlight the arbitration clause of its contract, nor

13  [is] it required to specifically call that clause to [the plaintiff's] attention." *Sanchez*,

14  61 Cal. 4th at 914 (applying FAA and upholding arbitration term in an automotive

15  sales contract against a wide array of unconscionability challenges).

16       The Arbitration Agreement here is part of a short Order Agreement and is

17  featured prominently in its own standalone text box. It can't be missed. After

18  plaintiffs placed their initial orders (and first assented to the Order Agreement), the

19  Order Agreement for each was uploaded to their personal Tesla Account, giving

20  ample time and opportunity to again review the Agreement at any time. The Order

21  Agreement is also available online to anyone for easy viewing. Barclay Decl. ¶4.

22  _____

23  *Car Ctr., Inc.*, 93 Va. Cir. 404, 406 (2016) ("A contract is said to be unconscionable

24  if no person in his senses would make it on the one hand and no fair and honest

25  person would accept it on the other. In practice, this means a court will not enforce a

26  contract or contract provision if, it is both procedurally and substantively

27  unconscionable."); *Bagley v. Mt. Bachelor, Inc.*, 356 Ore. 543, 554 (2014) (under

28  Oregon law, the test for unconscionability has both procedural and substantive

    components).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1  Each plaintiff also had the opportunity to opt out, though none did, and all went
2  through with the sale. Ahluwalia Decl. ¶¶7, 10, 14, 18.

3      Further, in connection with the delivery of their vehicles, all plaintiffs
4  subsequently reaffirmed their assent to the Order Agreement, giving them additional
5  notice and opportunity to review the document in full.  And the significance of the
6  purchases—Tesla's premium model, all-electric sedan—gave plaintiffs every
7  incentive to review the documents to which they had agreed. Lastly, both the New
8  Vehicle Warranty and the Used Vehicle Warranty contain the same Arbitration
9  Agreement. Ahluwalia Decl. Exs. 12-13. In short, plaintiffs have no basis to claim
10 "oppression" or "surprise" and could never establish procedural unconscionability.

11     **2.**     **The   Arbitration   Agreement   Is   Not   Substantively**
12          **Unconscionable.**

13     Substantive unconscionability evaluates whether the terms of the agreement
14 create an "overly harsh" or "one-sided" result. *Serpa v. Cal. Surety Investigations,*
15 *Inc.*, 215 Cal. App. 4th 695, 703 (2013); *see also Chavarria*, 733 F.3d at 921-22 ("A
16 contract is substantively unconscionable when it is unjustifiably one-sided to such
17 an extent that it `shocks the conscience'"). The Arbitration Agreement easily clears
18 any substantive unconscionability hurdle because it:

19     • *is mutually binding*—both plaintiffs and Tesla must arbitrate "any dispute"
20       and the Arbitration Agreement.

21     • *gives consumers the right to opt-out*—which none of them did.

22     • *calls for a neutral arbitrator*—the arbitration will be administered by
23       AAA under its Consumer Arbitration Rules."[12]

24     • *allows for adequate discovery*—AAA rules provide for an "Exchange of
25       Information" consistent with the streamlined proceedings the parties

26

27  [12]          https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-1735-0830.5                        14                    8:19-cv-01422-JLS-JDE
                    TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1    agreed to.  *See* AAA Rule 22.

2    • *requires a written award and reasoned opinion.  See* AAA Rule 43.

3    • *allows plaintiffs to bring any claims*—the Agreement permits plaintiffs to
4      bring any claims in their "individual capacity."

5    • *does not require plaintiffs to pay **any** costs*—making arbitration even less
6      expensive than filing a lawsuit.

7    In short, plaintiffs have no basis to avoid the Arbitration Agreement, and it is
8    fully enforceable under the FAA.

9    **III.  THE COURT SHOULD DISMISS THE CASE SO THE PARTIES CAN**
10   **BILATERALLY ARBITRATE.**

11   "[A] district court may either stay the action or dismiss it outright when, as
12   here, the court determines that all of the claims raised in the action are subject to
13   arbitration."  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th
14   Cir. 2014). Accordingly, "[t]he weight of authority clearly supports dismissal of the
15   case when all of the issues raised in the district court must be submitted to
16   arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.
17   1992); *see e.g., Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015)
18   (granting motion to compel and dismissing case because there was no "compelling
19   reason to keep this case on the Court's docket").  Because all of the claims are
20   subject to arbitration, there is no reason to keep this case open on the Court's
21   docket.  The case should be dismissed.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**IV.    CONCLUSION**

The Court should interpret the parties' Agreement and follow *Concepcion*, which requires arbitration on an individual basis with individual remedies. The action should then be dismissed.


DATED: December 4. 2019            LEWIS BRISBOIS BISGAARD & SMITH LLP


By: _____
Eric Y. Kizirian
Attorneys for Defendant Tesla, Inc.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW