Edward C. Chen (SBN 312553)
LAW OFFICES OF EDWARD C. CHEN
1 Park Plaza, Suite 600
Irvine, CA 92614
Telephone: (949) 287-4278
Facsimile: (626) 385-6060
Edward.Chen@edchenlaw.com

*Attorney for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGH NGUYEN, TODD WOLVEN, IAN ELLWOOD, E'RIKA BROCK, individuals, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a/ TESLA MOTORS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 8:19-cv-01442-JLS-JDEx<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**Date:** February 14, 2020<br>**Time:** 10:30 a.m.<br>**Court:** 10A |

# TABLE OF CONTENTS

I.   INTRODUCTION .............................................................1

II.  ARGUMENT...................................................................3

    A. THE ARBITRATION PROVISION IS INVALID AND UNENFORCEABLE – GENERAL

       CONTRACT DEFENSES ............................................... 3

    *1.  The Court – Not An Arbitrator – Must Determine Whether an Agreement Was*

    *Formed*.............................. 4

    *2.  California Law Is Applicable Here* ............................... 5

    *3.  Tesla Fails To Prove That A Signed Agreement To Arbitrate Exists* ............. 6

    *4.  The Lawsuit Was Properly Filed In Accordance With Agreement By The Parties*.... 7

    *5.  Tesla Updates Its Warranties in Bad-Faith Attempt to Force Mandatory*

    *Arbitration* ................................ 8

    *6.  Inconsistencies And Ambiguities Between The Arbitration Agreements At Issue Are*

    *Construed Against the Drafter (Tesla)* ............................ 10

    B. THE ARBITRATION PROVISION IS PROCEDURALLY UNCONSCIONABLE ...... 11

    C. THE ARBITRATION PROVISION IS SUBSTANTIVELY UNCONSCIONABLE ...... 13

    *1.  The arbitration provisions prohibit the right to seek public injunctive relief in*

    *violation of the McGill rule.*.............................. 13

    D. STAYING THE CASE IS NOT PERMITTED HERE AND WOULD IRREPARABLY HARM

       THE PUBLIC IF GRANTED .................................. 16

III. CONCLUSION ..............................................................17

# TABLE OF AUTHORITIES

**Cases**

*A & M Produce Co. v. FMC Corp.,* 135 Cal. App. 3d 473, 486 (1982). ...........................11

*Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017) ..................3

*Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) ....................................................................9

*Blair v. Rent-A-Center, Inc.*, No. 17-17221 ......................................................................2

*Bridge Fund Capital Corp. v. Fasbucks Franchise Corp.,* 622 F. 3d 996, 1104 (9th Cir. 2010) ...................................................................................................................13

*Broughton v. Cigna Healthplans,* 21 Cal. 4th at 1081 n.5 ...............................................15

*Delisle v. Speedy Cash*, Case No.: 3:18-CV-2042-GPC-RBB (S.D. Cal. Jun. 10, 2019)....12

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ........................3

*Gutierrez v. Autowest, Inc.,* 114 Cal.App.4th 77, 89 (2003). ...........................................12

*Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 389 (2016) ..................................9

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) .......................................4

*Iskanian v. CLS Transp. L.A., LLC,* 59 Cal. 4th 358, 383 (2014)).....................................11

*Kilgore v. KeyBank, N.A.,* 718 F.3d 1052,1061 (9th Cir. 2013). .......................................16

*Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999).................11

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) .....................4

*Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) ...............................................16

*McArdle v. AT&T Mobility LLC* No. 17-17221 ..................................................................2

*McGill v. Citibank, N.A.,* 393 P.3d 85 (Cal 2017).............................................................2

*Mohammed v. Uber Techs., Inc.,* 848 F.3d 1201, 1211-11 (9th Cir. 2016) .......................11

*Nager vs. Tesla Motors, Inc.* Case No. 19-2382-JAR Order (Sept. 9, 2019) ......................6

*Nedlloyd Lines B.V. v. Super. Ct.,* 3 Cal. 4th 459, 466 (1992)............................................5

*Nken v. Holder*, 556 U.S. 418, 433 (2009). .....................................................................16

*Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017)..............3

*Peleg v. Neiman Marcus Grp., Inc.,* 204 Cal. App. 4th 1425, 1465 (2012) .........................9

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ...................................4

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015).........................3

*Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013) ........................9

*Sheinfeld v. BMW Fin. Servs.*, Case No. 2:18-cv-02083-JAD-EJY (D. Nev. Sep. 24, 2019), ...........................................................................................10

*Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 892 (9th Cir. 2003) ......10

*Three Valleys Mun. Water Dist. v. E.F.  Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) .............................................................................................3

*Tillage v. Comcast Corp.* No. 18-15288 (9th Cir. Jun. 28, 2019).........................................2

*Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). ...........................................16

*Weshba v. Apple Comp., Inc.,* 91 Cal. App. 4th 224, 242 (2001) ...........................................5

## I.     INTRODUCTION

Defendant Tesla, Inc.'s ("Tesla") understanding of this case is severely misguided.[1] This case is about a used car dealer that sold, and continues to sell used, certified pre-owned ("CPO") vehicles in violation of state and federal regulations and warranty laws including Tesla's misrepresentations, omissions, bad-faith, fraud, failures to disclose, and other acts that concern Tesla's unfair warranty practices, national advertising campaign, and used, certified pre-owned car sales.[2][3]   More specifically, Plaintiffs Hugh Nguyen, Todd Wolven, Ian Ellwood, and E'rika Brock ("Plaintiffs") seek remedy and relief from the Court for themselves and on behalf of the putative class members and consumers nationwide.

Tesla now wishes to compel arbitration by invoking what it tries to default to and use as an all-claims inclusive arbitration provision and seeks individual arbitration of all claims, on the basis that all of the claims arise out of Plaintiffs' "relationship with Tesla." (Mot., Dkt. 15, ln. 3-5).   Tesla strongly asserts that there are no contract defenses available and simply tries to move quickly before actual review begins.   Upon closer inspection, however, things are quite as clear cut as Tesla makes them out to be.   For multiple reasons, Tesla Tesla's stance on mandatory arbitration here is completely opposite of recent holdings of

---

[1] EPA estimated mileage ratings is not the key issue here.   Instead, Plaintiffs are alleging that Tesla committed and continues to commit violations including the failure to disclose any useful, relevant, or material information in regard to their used/certified pre-owned cars and continuing failure to uphold the duties and obligations it agreed to and pursuant to the warranty agreements it provides. (FAC, Dkt. 14, ¶¶ 8-9).

[2] *See* Dkt. 15-6 (evidence submitted by Tesla in support of its motion to compel clearly shows the term used/CPO in writing).

[3] "[P]laintiffs are consumers from four states who purchased used electric vehicles from Tesla." (Mot., Dkt. 15.).   While Plaintiffs did purchase directly from Tesla, the fact is that Plaintiffs purchased used, certified pre-owned ("CPO") cars.   This distinction is important as Plaintiffs' have alleged various federal and state law claims, especially regarding the sale of used motor vehicles including the "FTC Used Car Rule."

the Ninth Circuit which confirmed the California Supreme Court's decision in *McGill v. Citibank, N.A.,* 393 P.3d 85 (Cal 2017) that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law.[4]  The Court must deny Tesla's attempt to compel individual arbitration here, because the claims and remedies have broader implications that would affect the general public and consumers nationwide.

Denial of Tesla's motion to compel arbitration is further warranted by the fact that there are irreconcilable inconsistencies that exist between the arbitration provision that Tesla relies upon and the arbitration provision that Tesla chooses conveniently not to disclose here. Tesla fails to mention the fact that it is a party to the arbitration agreement contained in its own warranty agreements.  As a result of the ambiguities and inconsistencies between the two arbitration provisions, real world application of the two agreements has led to at least one named Plaintiff having to arbitrate twice already.

The arbitration provisions employed by Tesla have caused harm, undue burden, unnecessary delay and expense for the Plaintiffs.  Despite Tesla's assertion that there are no contract defenses that exist to invalidate the argument, the fact is that there is a myriad of different reasons that warrant denial of Tesla's attempt to compel arbitration.  The arbitration agreements are permeated with both the procedural and substantive unconscionability that is prohibited by the savings clause of the FAA.  Tesla's motion to compel arbitration should be denied.

/ / /

/ / /

/ / /

---

[4]  See *Blair v. Rent-A-Center, Inc.*, No. 17-17221; *McArdle v. AT&T Mobility LLC* No. 17-17221; and *Tillage v. Comcast Corp.* No. 18-15288 (9th Cir. Jun. 28, 2019).

## II.  ARGUMENT

### A. The Arbitration Provision Is Invalid and Unenforceable – General Contract Defenses

Under the Federal Arbitration Act ("FAA"), an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The final clause of § 2, its saving clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015).  Tesla merely assumes that the agreements it has proffered as evidence in support of its motion is enough to fulfill even the most basic methods of authentication as proscribed by the Federal Rules of Evidence.

When the parties contest whether an agreement was formed, the court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability.  *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that there was an agreement to arbitrate. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Conversely, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Therefore, a court may find that an agreement to arbitrate exists as a matter of law "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Id.* (internal quotation omitted); see also *Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017) (same).

/ / /

/ / /

/ / /

1

2

### 1.  The Court – Not An Arbitrator – Must Determine Whether an Agreement Was Formed

It is anticipated that Tesla may likely assert for the first time in its reply papers that Plaintiffs' challenges to contract formation must be decided by an arbitrator, rather than the Court, because the arbitration agreement delegates questions of arbitrability to an arbitrator. However, Tesla's argument does not accurately reflect the law.  While it is true that parties to an arbitration agreement may "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010), so long as they do so "clearly and unmistakably," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). But because "arbitration is a matter of contract," *Rent-A-Ctr.*, 561 U.S. at 67, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists," *Henry Schein*, 139 S. Ct. at 530. Thus, "challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007).

This threshold question—whether an agreement existed—is one properly for the Court, without reference to any delegation provision. See *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("Although challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court."). Here, the language of the purchase agreement that Tesla relies on clearly does not delegate this duty to an arbitrator.  The agreement to arbitrate states that, "[i]f a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy… must be brought in court and any other claims must be arbitrated." (Dkt. 15-3).   Clearly, the agreement leaves the duty to a court or arbitrator and therefore these issues are properly before the Court.

2.  California Law Is Applicable Here

Tesla does not make reference to, and the moving papers are devoid of any reference to the choice of law provision that governs the purchase agreement.  Instead, Tesla simply assumes that the arbitration provision is valid and claims that Plaintiffs do not have any defenses to validity and enforcement.  Tesla's purchase agreement contains a governing law section and provides as follows:

> **"Governing Law; Integration; Assignment**.  The terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration." (Dkt. 15-3).

Where a contract includes a choice-of-law provision, California courts follow the approach laid out in Restatement (Second) Conflict of Laws § 187 and inquire (1) "whether the chosen state [in the choice-of-law provision] has a substantial relationship to the parties or their transaction," or (2) "whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Super. Ct.,* 3 Cal. 4th 459, 466 (1992).  As alleged in the First Amended Complaint ("FAC"), Tesla's principal place of business is in Palo Alto California (FAC, Dkt. 14 ¶ 29).  Tesla's headquarters is in California, where it designs, tests and manufactures its vehicles.  (*Id.* at ¶ 30.)  Tesla's control emanates primarily from its headquarters in California. (*Id.* at ¶ 31).  The Court should therefore apply California law in determining the contract defenses asserted by Plaintiffs here.  Any arguments brought forth in Tesla's reply to this opposition must be disregarded because California has the strongest interest in protecting its consumers. [5]

---

[5] *Weshba v. Apple Comp., Inc.,* 91 Cal. App. 4th 224, 242 (2001) (court noting that California's consumer protection laws have been recognized as "among the strongest in the country").

### 3.   Tesla Fails To Prove That A Signed Agreement To Arbitrate Exists

Tesla has failed its burden to prove that an agreement to arbitrate exists.  Rather than introducing evidence of a signed and executed agreement to arbitrate, Tesla provided a document that purports to show Plaintiff Hugh Nguyen's agreement to arbitrate. (Dkt. 15-3).  Without a signed agreement to arbitrate, there is no agreement to arbitrate.  In fact, Plaintiff Hugh Nguyen does not recall whether the agreement was presented to him or whether he signed the agreement.  (Declaration of Hugh Nguyen, ¶ 2).  Tesla does proffer some evidence that purportedly show Plaintiffs agreed to the arbitration provisions contained in the terms of the purchase agreement.  However, Tesla has failed to meet its burden of proof in demonstrating that an enforceable agreement to arbitrate even exists and this is not the first time that Tesla has tried doing this. [6]  Despite providing declarations in support of their assertion, Tesla has offered just some random document with no connection to Plaintiff Nguyen and claims that an agreement to arbitrate exists.[7]  In fact, the first time that Plaintiff Nguyen learned that there was an arbitration clause contained in a purchase agreement was nearly two years after having made his claims known to Tesla, shortly after learning that Tesla had brought the instant motion to compel arbitration.  *Id.* at ¶¶ 3-4.

Tesla includes copies of its Motor Vehicle Order Agreement, with the operative arbitration provision that it wishes to force Plaintiffs to adhere to, yet interestingly, Tesla fails to properly authenticate the agreement.  There is no signature to the purchase agreement for Plaintiff Hugh Nguyen, and Tesla has failed to meet its burden of proving a signature to the contract.  This is not the first time that Tesla has tried to do this and Tesla's deliberate

---

[6] See *Nager vs. Tesla Motors, Inc.* Case No. 19-2382-JAR Order (Sept. 9, 2019) (court refusing to find that an agreement to arbitrate existed where agreement unsigned and only supported by affidavits from Tesla employees).

[7] *Id.* (court agreeing with plaintiffs that Tesla "offered what appears…just some random document with no connection to plaintiffs or the transaction at issue in this case.").

failure to include a properly authenticated, unsigned agreement as evidence does not equal a valid agreement to arbitrate.

4. The Lawsuit Was Properly Filed In Accordance With Agreement By The Parties

Plaintiff Hugh Nguyen learned, for the first time, that there was an alleged agreement to arbitrate by the parties after being informed by counsel of the instant motion. (Nguyen Decl. ¶ 4). In fact, Plaintiff Nguyen had been operating with the correct assumption that he was acting in accordance with the terms provided by Tesla by the warranty agreement. *Id.* at ¶ 5. The only time that Plaintiff Nguyen was wary that arbitration existed when he followed the language under Tesla's Preowned Vehicle Limited Warranty. *Id.* at ¶ 4, Exhibit A. Again, Tesla conveniently chose not to introduce this as evidence in support of its motion, however, the language of the section regarding dispute resolution clearly allows for this action to proceed and proceed on a class basis as well.[8] Under the section titled "Warranty Enforcement Laws and Dispute Resolution", the agreement provides that:

> "Tesla requires that you submit your dispute to our dispute settlement program and wait for a decision to be issued prior to pursuing any remedy under federal or state laws (including 15 U.S.C. Section 2310 or California Civil Code Section 1793.22(b))."

*Id.,* Exh. A.

///
///
///

---

[8] Tesla introduced what is purportedly the newest version of its vehicle warranty, but did not introduce evidence of the applicable and operative warranty at least as to Plaintiff Nguyen. See Nguyen Decl. 2, 6, Exh. A; *cf.* Dkt. 15-22.

Additionally, the agreement provides that:

"[y]ou may be entitled to pursue a remedy without submitting under certain state laws or if you pursue any rights or remedies not created by these laws."

*Id.,* Exh. A.

Plaintiff Nguyen followed the exact wording of the warranty language, from the first time that he contacted Tesla to inform them of the issues that he was having, to the point of having completed two separate arbitrations with the National Center for Dispute Settlement ("NCDS").[9]  After disagreeing with both decisions by the arbiters, Plaintiff Nguyen was left with only one decision and that was to pursue this action against Tesla in court.  Indeed, the language of the warranty agreement explicitly and expressly allowed for this case to be brought against Tesla.  It advises consumers that, "[i]f you are not satisfied with the arbitrator's decision or Tesla's compliance, <u>you may pursue any other legal remedies available to you</u>." *Id.* (*emph. add.*).  The agreement expressly permits consumers to seek any other legal remedies available, and that is exactly what Plaintiff Nguyen did.

> 5.  Tesla Updates Its Warranties in Bad-Faith Attempt to Force Mandatory Arbitration

Assuming, arguendo, that Tesla takes the position that the prior used vehicle limited warranty is superseded by the newer one, the fact that Tesla has the unilateral ability to modify the agreements renders the arbitration agreement unenforceable.  Tesla cannot be saved here.  In California, "it has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract

---

[9]  See FAC, Dkt. 14, ¶¶ 80 ("[o]n April 15, 2018, Plaintiff [Nguyen] submitted a claim to NCDS"); ¶¶ 81 ("[p]laintiff's claims were set for arbitration on May 4, 2018, and an arbitration was conducted on the same date.").

illusory" because of the implied covenant of good faith and fair dealing implicit in every contract - i.e., under the implied covenant, the party with the authority to modify "may not change the agreement in such a manner as to frustrate the purpose of the contract." *Serpa v. Cal. Sur. Investigations, Inc*., 215 Cal. App. 4th 695, 706 (2013); see also *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 389 (2016); *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) (noting that "an unqualified right to modify . . . the contract is not enforceable[,] [b]ut the fact that one party reserves the implied power to . . . modify a unilateral contract is not fatal to its enforcement if the exercise of the power is subject to limitations, such as fairness and reasonable notice").  Here, Tesla is able to unilaterally modify the terms of the warranty language and has failed to provide adequate notice, if any notice at all, to its customers.  In fact, Plaintiff Nguyen has never seen nor was he ever provided a copy of the updated warranty that Tesla purports to be controlling here.  (Nguyen Decl. ¶ 6).

Tesla cannot rely upon the warranty that it has unilaterally modified because it has done so in bad faith.  Coupled with the fact that Tesla has failed to give notice of these updates, the implied covenant of good faith and fair dealing cannot be used as a saving grace here.  *See Peleg v. Neiman Marcus Grp., Inc.,* 204 Cal. App. 4th 1425, 1465 (2012) (noting that the implied covenant can, in effect, save a unilateral modification provision unless, e.g., the unilateral modification provision expressly states that contract changes can apply "to claims that have accrued or are known to the employer," in which case the implied covenant cannot be used to save the unilateral modification provision because that would "contradict the express language" of the contract).  Here, the earlier version of the warranty agreement allowed customers to pursue any legal remedy available to them, whereas the updated agreement explicitly removes this language and allows for customers to pursue their claims in small claims court instead.  This material change is significant and completely disallows the ability of customers to seek injunctive relief as they are now limited to small claims court.  Tesla's unilateral ability to modify the warranty agreement was done so here in

extremely bad faith and therefore any changes to the arbitration provision in the warranty agreement must be disregarded by the Court here.

> 6.   Inconsistencies And Ambiguities Between The Arbitration Agreements At Issue Are Construed Against the Drafter (Tesla)

As discussed above, Plaintiff Nguyen was operating under the correct assumption that Tesla's "Preowned Vehicle Limited Warranty" was the operative terms of the agreement here.  Under California law, a standard rule of contract interpretation is that when provisions are inconsistent, specific terms control over general ones. *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 892 (9th Cir. 2003).  In *Sheinfeld v. BMW Fin. Servs*., Case No. 2:18-cv-02083-JAD-EJY (D. Nev. Sep. 24, 2019), the court was tasked with determining whether there was a specific arbitration provision in a auto manufacturer's warranty that would apply and override the general arbitration provisions a lease/purchase agreement.

Denial of Tesla's motion to compel arbitration is warranted by the fact that there are irreconcilable inconsistencies that exist between the arbitration provision that Tesla relies upon and the arbitration provision that Tesla chooses conveniently not to disclose here. Tesla fails to mention the fact that it is a party to the arbitration agreement contained in its own warranty agreements.  The court in *Sheinfeld* found that while there was recourse for consumers under New Jersey's lemon law and mediation or arbitration via a free informal dispute resolution program, that there was no inconsistency because the plaintiff could not avail himself to the New Jersey dispute resolution program as a non-resident of that state. *Id.* at 12.  This is not the same case here, where Plaintiff Nguyen has already gone through arbitration, twice.

As a result of the ambiguities and inconsistencies between the two arbitration provisions, real world application of the two agreements has led to at least one named

Plaintiff having to arbitrate twice already.  The arbitration provisions employed by Tesla have caused harm, undue burden, unnecessary delay and expense for the Plaintiffs.

## B. The Arbitration Provision is Procedurally Unconscionable

The arbitration agreement that Tesla relies upon is permeated with both the procedural and substantive unconscionability that is prohibited by the savings clause of the FAA. Procedural unconscionability "concerns the manner in which the contract was negotiated and the respective circumstances of the parties at the time." *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999).  At heart is the level of unfair surprise and oppression involved in the agreement. See *A & M Produce Co. v. FMC Corp.,* 135 Cal. App. 3d 473, 486 (1982).  Surprise "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*.  Oppression arises from an inequality which results in no real negotiation and an absence of meaningful choice. *Id*. The arbitration provision that Tesla relies upon is procedurally unconscionable for at least the following reasons: (1) the purchase agreements were provided to Plaintiffs on a take it or leave it basis; (2) Plaintiffs were not afforded a reasonable opportunity or time to review the terms of the contract before signing; (3) Tesla was the only party with meaningful negotiating power; (4) Tesla failed to give notice or draw attention to the arbitration provision; and (5) the opt out provision fails to cure the unconscionability.

In *Mohammed v. Uber Techs., Inc.,* 848 F.3d 1201, 1211-11 (9th Cir. 2016), opt-out provisions which would require plaintiffs to waive statutory causes of action "before they knew any such claims existed" are unenforceable. *Id*. (holding, in a case involving a waiver of a labor law claim under the Private Attorneys General Act, that although plaintiffs were given an option to opt out within 30 days, that "it is 'contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises.'" (quoting *Iskanian v. CLS Transp. L.A., LLC,* 59 Cal. 4th 358, 383 (2014)).  As discussed below, the arbitration

agreement that Tesla relies upon would force consumers to waive their statutory causes of action, including the right to seek preliminary and permanent injunctive relief.

Additionally, the fact that there is limited availability of electric vehicles that are available for purchase by consumers goes towards a showing that the arbitration agreement in question is procedurally unconscionable. The only other way to purchase a used Tesla would be to purchase one from a private third-party or used auto dealer. This is prime grounds for a determination that the agreement to arbitrate here is procedurally unconscionable. If one decides to purchase a used Tesla vehicle and avail themselves of Tesla's warranties, then one can only purchase a Tesla from their used, certified preowned sales program. There is also no separate signature line for consumers to agree explicitly to arbitration. Instead, Tesla preys on the fact that its customers are going to be too excited to purchase and receive delivery of their vehicles on the date of their vehicle delivery, with the hope that their customers will sign whatever paperwork is necessary to complete the purchase. The fact that the agreement to arbitrate is located within a purchase agreement is also another reason to refuse enforcement of arbitration. Courts have found such placement supports a finding of procedural unconscionability.[10]

Similarly, in *Delisle v. Speedy Cash*, Case No.: 3:18-CV-2042-GPC-RBB (S.D. Cal. Jun. 10, 2019), the plaintiffs there argued that the "[arbitration agreements] were procedurally unconscionable because they were provided to them on a take it or leave it bases, and that they were not afforded an opportunity to review their terms before signing." *Id.* Here, Plaintiffs were allegedly provided copies of the purchase agreement containing the arbitration provision prior to sale. However, Plaintiffs were required to opt out of arbitration before any dispute existed or before they were wary of any disputes that existed.

---

[10] *E.g., Gutierrez v. Autowest, Inc.,* 114 Cal.App.4th 77, 89 (2003).

Thus, the purported agreements to arbitrate as provided for by the purchase agreement are procedurally unconscionable.

### C. The Arbitration Provision Is Substantively Unconscionable

Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1330 (internal quotations and citations omitted). In California, "mandatory waivers of non-waivable statutory rights" are viewed as inherently suspect, since they present "the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable." *Bridge Fund Capital Corp. v. Fasbucks Franchise Corp.,* 622 F. 3d 996, 1104 (9th Cir. 2010). Here, the arbitration provision relied upon by Tesla acts as a waiver of consumers' rights to seek preliminary and permanent injunctive relief, and therefore the arbitration provision is substantively unconscionable.

1. The arbitration provisions prohibit the right to seek public injunctive relief in violation of the *McGill* rule.

The *McGill* rule is a generally applicable contract defense derived from long-established California public policy. It is a "ground[] . . . for the revocation of any contract" and falls within the FAA's saving clause at the first step of the preemption analysis. 9 U.S.C. § 2. In *McGill v. Citibank*, *N.A., supra*, the California Supreme Court decided that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law. Public injunctive relief is defined as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* At 87.

The court in *McGill* that an agreement to waive the right to seek public injunctive relief violates California Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by a private agreement." *Id*. at 93. Under § 3513, a party to a private contract may waive a statutory right only if the "statute does not prohibit

1   doing so, the statute's public benefit is merely incidental to its primary purpose, and waiver

2   does not seriously compromise any public purpose that the statute was intended to serve."

3   *Id*. at 94.

4   　　　The *McGill* rule is a generally applicable contract defense and the California Supreme

5   Court specified that a waiver of public injunctive relief in 'any contract' – even a contract

6   that has no arbitration provision – is unenforceable under California law.  *Id*.  Plaintiffs are

7   clearly seeking public injunctive relief here.  In the FAC, Plaintiffs asked the Court to enjoin

8   Tesla's unfair or deceptive acts or practices under Cal. Civ. Code § 1780(e) (FAC, Dkt. 14

9   ¶ 215) known as the California Legal Remedies Act (CLRA); enjoin further unlawful, unfair,

10  and/or fraudulent acts or practices by Tesla under Cal. Bus. & Prof. Code § 17200 *et seq*.

11  (FAC, Dkt. 14 ¶ 222); amongst other requests to the Court for order enjoining Tesla's acts.

12  　　　Here, the arbitration provision relied upon by Tesla provides the following:

13
14  　　　"The arbitrator may only resolve disputes between you and Tesla, and may
　　　not consolidate claims without the consent of all parties.  The arbitrator cannot
15  hear class or representative claims or requests for relief on behalf of others
　　　purchasing or leasing Tesla vehicles.  In other words, you and Tesla may bring
16  claims against the other only in your or its individual capacity and not as a
　　　plaintiff or class member in any class or representative action."
17
18  　　　(Dkt. 15-3) (*emph. add.*).

19
20  　　　The language above expressly disallows a consumer from seeking public injunctive

21  relief.  The relief that Plaintiffs are seeking here falls squarely within the ambit of public

22  injunctive relief.  Plaintiffs have alleged that Tesla continues to engage in a business practice

23  that is ongoing and harmful to the California and nationwide consumer public and are

24  seeking to enjoin Tesla to cease such unlawful and unfair business practices.   It is

25  specifically alleged in the FAC that:

26
27

28

> "Tesla has denied, and will continue to deny purchases of its vehicles lawful and proper remedies under warranty.  Tesla also fails to provide or disclose any material information regarding the vehicle inspections that it purportedly conducts prior to selling its used vehicles, and therefore Plaintiff and other putative class members were unaware of any issues prior to purchase and have been harmed as a result thereof.  <u>Tesla continues to engage in this fraudulent scheme of tricking consumers and leading them to believe that these issues will be taken care of by Tesla, and thousands of consumers are at risk of Tesla's fraudulent and dishonest acts…</u>"

(FAC ¶ 102) (*emph. add.*).

The relief that Plaintiffs are seeking here goes beyond any relief or requested remedy for themselves as individuals, but rather, transcends beyond Plaintiffs individually and includes the general public as a whole. Tesla's attempt to enforce what it believes should be held as an all-encompassing arbitration agreement is exactly the type of situation that the now known as *McGill* rule was ultimately decided to prevent.  Tesla's call for an all-encompassing agreement to arbitrate the present claims would effectively bar the relief that Plaintiffs seek here.

As recognized by *McGill*, "public injunctive relief under the UCL [and] the CLRA is relief that has the primary purpose and effect of "prohibiting lawful acts that threaten future injury to the general public." 2 Cal. 5th at 955.  Here, Plaintiffs' requested injunction would benefit them directly, since they have "already been injured, allegedly, by [the Defendant's] practices and is aware of them." *Broughton v. Cigna Healthplans,* 21 Cal. 4th at 1081 n.5 (considering an injunction sought pursuant to the CLRA).  In this case, as was true in *Broughton,* "if a CLRA plaintiff stands to benefit from an injunction against a deceptive business practice, it appears likely that the benefit would be incidental to the general public benefit of enjoining such a practice." *Id.*  If Plaintiffs' injunction is granted, then the public would not be exposed to the unfair and lawful business acts from Tesla's failure to disclose pertinent information for its used, CPO vehicles, and instead, would receive the benefit of

corrective advertising.  There is certainly a "real prospective benefit to the public at large from the relief sought." *Kilgore v. KeyBank, N.A.,* 718 F.3d 1052,1061 (9th Cir. 2013).

The fact that Plaintiffs would receive incidental benefit from the requested injunction is of no moment.  To have standing to raise a claim of public injunctive relief under the UCL in the first place, Plaintiffs are required by statute to have "suffered injury in fact" and "lost money or property as a result of the unfair competition." Section 17204. Thus, it is natural, if not almost inevitable, that a prayer for public injunctive relief under this section the UCL would have the ancillary effect of benefiting a UCL plaintiff.  Plaintiffs' FAC seeks public injunctive relief within the definition of *McGill* and therefore the arbitration provision that Tesla relies upon cannot be enforced by this Court as it is substantively unconscionable.

### D. Staying The Case Is Not Permitted Here And Would Irreparably Harm The Public If Granted[11]

Granting a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009).  A "stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 427 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).  A stay is not permitted here and the Court should refrain from granting a stay where doing so would be at the risk of harming consumers nationwide.

In considering whether to issue a stay, courts review four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;  (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (citing *Nken*, 556 U.S. at 426). The first two factors "are the most critical," and we only reach the last two

---

[11] Tesla requests that the Court dismiss the case, however, this section addresses Tesla's request for dismissal in the context of a stay.

"[o]nce an applicant satisfies the first two." *Nken*, 556 U.S. at 434-35. "The [applicant] of a stay bears the burden of establishing its need." *Id*. at 433-34.  Tesla is unable to succeed on a showing of all four factors.

First, Tesla has made no showing that it will succeed on the merits.  To the contrary, the FAC clearly alleges that Tesla has committed technical violations of the FTC's Used Car Rule.  Absent any evidence to the contrary, Tesla cannot make a showing that it will prevail on the merits.[12]  Second, Tesla will not be injured if a stay is not granted and instead, it is the Plaintiffs and consumers who will continue to be at risk of harm.  The third and fourth factors also clearly outweigh any need for a stay here.[13]  (Nguyen Decl. ¶ 7).  Tesla does not and will not be able to make a requisite showing for a stay here.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Tesla's motion to compel arbitration.

Dated: January 3, 2020                          By:____/s/ Edward C. Chen_____
                                                 Edward C. Chen (SBN 312553)
                                                 LAW OFFICES OF EDWARD C. CHEN
                                                 *Attorney for Plaintiffs and the Proposed*
                                                 *Classes*

---

[12]  Tesla mentions in its moving papers that it will prove "at a later time" how it has not committed technical violations of the law.  Tesla had the opportunity to introduce this allegedly redeeming evidence in support of its request for a stay but has since waived that opportunity to do so.  (See Dkt. 15, pg. 2 ln. 1-2.).

[13]  Of all four named Plaintiffs, Plaintiff Nguyen bears the largest burden of risk of continued harm if a stay were granted.  As alleged in the FAC, Plaintiff Nguyen has the duty of transporting his wife for medical treatment of a terminal illness up to three or four times per week.  (Dkt. 14, ¶¶ 75, 89-90).  The dispute between Plaintiff Nguyen and Tesla have been unresolved for over two years now to date.