1
2
3
4
5
6

LEWIS BRISBOIS BISGAARD & SMITH LLP
ERIC Y. KIZIRIAN, SB# 210584
  E-Mail: Eric.Kizirian@lewisbrisbois.com
MICHAEL K. GRIMALDI, SB# 280939
  E-Mail: Michael.Grimaldi@lewisbrisbois.com
ZOURIK ZARIFIAN, SB# 306368
  E-Mail: Zourik.Zarifian@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

7
8

Attorneys for Defendant
TESLA, INC.

9
10
11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| HUGH NGUYEN, TODD WOLVEN, IAN ELLWOOD, E'RIKA BROCK, individuals, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>    vs.<br><br>TESLA, INC., a Delaware corporation,<br><br>       Defendant. | Case No. 8:19-CV-01422-JLS-JDE<br><br>**REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL ALL PLAINTIFFS TO INDIVIDUAL ARBITRATION AND TO DISMISS THE ACTION**<br><br>Concurrently filed with the Declaration of Michael Grimaldi, the Supplemental Declaration of Jasjit Ahluwalia, and the Declaration of Lis Fraser<br><br>Date:     February 14, 2020<br>Time:     10:30 a.m.<br>Courtroom.:  10A |

23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1

# TABLE OF CONTENTS

Page

I.      Introduction ........................................................................................ 1

II.     The Parties Agree On Several Issues. ............................................... 2

III.    Plaintiffs Agreed Multiple Times to Arbitrate, and the Opposition Does Not Meaningfully Dispute This.......................................................... 3

IV.     Nguyen's Use of Tesla's Nonbinding Dispute-Resolution Program Did Not Invalidate His Binding Arbitration Agreement.......................... 6

V.      The Arbitration Agreement Is Not Unconscionable ...................... 10

        A.    Plaintiffs Have Not Established Procedural Unconscionability. .......... 11

        B.    Plaintiffs Have Not Established Substantive Unconscionability.......... 13

VI.     The *McGill* Rule Does Not Change This Result............................ 13

        A.    *McGill* Does Not Apply to Non-Resident Plaintiffs Wolven, Ellwood, and Brock................................................................... 13

        B.    *McGill* Does Not Apply to California Plaintiff Nguyen or Any Other Plaintiff Because the FAC Does Not Seek "Public Injunctive Relief." .............................................................. 14

        C.    The *McGill* Rule Is Preempted under Supreme Court Precedent and Likely Will Be Determined So by the Supreme Court. ................ 17

        D.    At Most, *McGill* Would Require a Court to Decide Nguyen's Right to a Public Injunction *Remedy* on His CLRA, UCL, and FAL Claims After He Prevailed in Individual Arbitration on the Merits. ...................................................................... 18

VII.    Conclusion ....................................................................................... 19

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

# TABLE OF AUTHORITIES

2

## Cases

*A & M Produce Co. v. FMC Corp.*,
      135 Cal. App. 3d 473 (1982) ........................................................................ 13

*Blair v. Rent-A-Center, Inc.*,
      928 F.3d 819 (9th Cir. 2019) ................................................................. 20, 22

*Blair v. Rent-A-Center, Inc.*,
      2017 WL 4805577 (N.D. Cal. Oct. 25, 2017) ............................................. 19

*Blau v. AT&T Mobility*,
      2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ...................................................... 4

*Broughton v. Cigna Healthplans of Cal.*,
      21 Cal. 4th 1066 (1999) ................................................................................ 22

*Delisle v. Speedy Cash*,
      2019 U.S. Dist. LEXIS 96981 (S.D. Cal. June 10, 2019) ............................ 14

*Epic Systems Corp. v. Lewis*,
      138 S. Ct. 1612 (2018) ................................................................................. 20

*Eurosemillas, S.A. v. PLC Diagnostics Inc.*,
      2017 U.S. Dist. LEXIS 138094 (N.D. Cal. Aug. 28, 2017) ........................... 4

*Ferguson v. Corinthian Colleges, Inc.*,
      733 F.3d 928 (9th Cir. 2013) ........................................................................ 22

*Friedman v. Mercedes Benz USA LLC*,
      2013 WL 12086785 (C.D. Cal. Jan. 31, 2013) ............................................ 23

*Fteja v. Facebook, Inc.*,
      841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................ 7

*Gutierrez v. Autowest, Inc.*,
      114 Cal. App. 4th 77 (2003) ......................................................................... 14

*Harbers v. Eddie Bauer, LLC*,
      2019 U.S. Dist. LEXIS 200703 (W.D. Wash. Nov. 19, 2019) ....................... 7

*In re Holl*,
      925 F.3d 1076 (9th Cir. 2019) ........................................................................ 6

*Johnson v. JP Morgan Chase Bank, N.A.*,
      2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ............................................ 19

*Kinney v. United Healthcare Servs., Inc.*,
      70 Cal. App. 4th 1322 (1999) ....................................................................... 12

*KPMG LLP v. Cocchi*,
      565 U.S. 18 (2011) ........................................................................................ 22

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Marcus v. Countrywide Home Loans, Inc.*,
  2017 U.S. Dist. LEXIS 143453 (C.D. Cal. Aug. 31, 2017)...........................4

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)...................................................12, 16

*McArdle v. AT&T Mobility, LLC*,
  474 F. App'x 515 (9th Cir. 2012)....................................................20

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017)........................................................... Passim

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ........................................................5, 6

*Nager v. Tesla Motors, Inc.*,
  2019 U.S. Dist. LEXIS 149360 (D. Kan. Sep. 3, 2019) ........................5, 6, 8

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .........................................................5

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564 (2013) ...................................................................2

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) .......................................................12

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) .............................................................2, 19, 20

*Roberts v. AT&T Mobility, LLC*,
  2018 U.S. Dist. LEXIS 42235 (N.D. Cal. Mar. 14, 2018)...........................16

*Sheinfeld v. BMW Fin. Servs. NA, LLC*,
  2019 U.S. Dist. LEXIS 163984 (D. Nev. Sep. 24, 2019) ............................9

*Sponheim v. Citibank, N.A.*,
  2019 U.S. Dist. LEXIS 100857 (C.D. Cal. June 10, 2019) ........................19

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ..............................................7

*Tillage v. Comcast Corp.*,
  772 F. App'x 569 (9th Cir. 2019)....................................................21

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014) ........................................7

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  143 F. Supp. 3d 982 (N.D. Cal. 2015) .............................................4, 6

*Wiseley v. Amazon.Com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017)....................................................6

*Wright v. Sirius XM Radio Inc.,*
    2017 WL 4676580 (C.D. Cal. June 1, 2017) ...........................................19, 20

<u>Statutory Authorities</u>

9 U.S.C. § 3 ...........................................................................................................19

49 U.S.C. § 30101...................................................................................................15

Cal. Bus. & Prof. Code § 17203 ............................................................................18

Cal. Civ. Code § 1642...........................................................................................8, 10

Cal. Civ. Code § 1780.............................................................................................18

# I.   INTRODUCTION

Tesla customers are the most satisfied vehicle owners in the United States.[1] And in rare cases where owners, like plaintiffs, become dissatisfied with any aspect of their "relationship with Tesla," they agree to *individual* arbitration as an efficient and cost-effective way to resolve all claims.  Plaintiffs could have opted out of this arbitration process within 30 days of purchase, but chose not to. Plaintiffs thus must arbitrate their claims against Tesla on an *individual* basis.

Nothing in the opposition supports a contrary result.  The three non-California plaintiffs (Wolven, Ellwood, and Brock) rely on California law to support their contract defenses when the "governing law" provision in their agreements dictate that other states' laws apply.  These plaintiffs have not met their burden to establish viable contract defenses that invalidate the arbitration provisions in their Order Agreements.  Nor have they provided *any* evidence to support their anti-arbitration arguments.  Wolven, Ellwood, and Brock rely on conclusory assertions and try to ride the coat tails of Nguyen's conclusory declaration making *his* arguments against arbitration.  They effectively concede Tesla's motion by failing to oppose it at all.

But Nguyen's declaration does not help him, or any of the other plaintiffs, to avoid arbitration.  Nguyen only states that he "does not recall" seeing the arbitration agreement or signing it.  His lack of recollection is no defense to Tesla's undisputed evidence, which shows that all four plaintiffs were presented with an arbitration clause and clicked their agreement to individual arbitration during the online-order process.   Plaintiffs' half-hearted claims of unconscionability do not establish a contract defense to arbitration. Nor does their attempt to evade arbitration by

---

[1] *See, e.g.*, Electrek, Feb. 1, 2019, https://electrek.co/2019/02/01/tesla-model-3-tops-satisfaction-brings-joy/;   Business   Insider   (Feb.   20,   2019), https://www.businessinsider.com/tesla-tops-consumer-reports-owner-satisfaction-list-2019-2.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                          1
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

claiming they really seek unspecified "public injunctive relief." That argument is belied by the FAC's hundreds of allegations focusing on plaintiffs' *individual* circumstances, claims, and remedies. As further explained below, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), does not save any claim or remedy in the FAC from arbitration because plaintiffs plainly seek to "redress or prevent injury to an individual plaintiff or to a group of individuals similarly situated" rather than "prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 955.  Tesla's motion should be granted in its entirety.

## II.    THE PARTIES AGREE ON SEVERAL ISSUES.

As shown by the Opposition, many threshold issues are undisputed:

**The Court Should Decide Questions of Arbitrability:** Plaintiffs agree the Court should decide the "questions of arbitrability." (Opp. 4:1-26); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) ("Those questions — which 'include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy' — are presumptively for courts to decide.").  And "questions of arbitrability" include both "the existence of a legally binding and valid arbitration agreement" as well as the "scope" of an arbitration agreement.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 78 (2010).

**The Arbitration Agreement Precludes Class Claims:** The Opposition does not address and thus concedes that arbitration must be limited to plaintiffs' individual claims.

**The Federal Arbitration Act and State Law Apply:**  The parties agree that state law applies "in determining the contract defenses asserted by plaintiffs." Opp. 5:1-27; Motion to Compel ("MTC") 8:16-18.[2] And plaintiffs do not dispute the FAA

---

[2] The Opposition incorrectly claims that California law governs contract-based
(footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                      2                              8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1    also applies (Opp. 3:4-6) and preempts contrary state law.

2    **III.   PLAINTIFFS AGREED MULTIPLE TIMES TO ARBITRATE, AND THE OPPOSITION DOES NOT MEANINGFULLY DISPUTE THIS.**

3

4         Tesla's motion establishes through evidence that all four plaintiffs ordered

5    their vehicles online, clicked the "Place Order" button on the order screen, and

6    agreed to the hyperlinked "Model S Order Agreement," which requires that their

7    claims be arbitrated on an individual basis. *See* Declaration of Victor Barclay (Dkt.

8    15-1) ("Barclay Decl.") ¶¶3, 5-7 & Exs. A, C-E; Declaration of Jasjit Ahluwalia

9    (Dkt. 15-7) ("Ahluwalia Decl."), ¶¶ 3, 4, 8, 9, 11, 12, 15, 16 & Exs. 1, 2, 4, 5, 6, 7,

10   9, 10. It is also undisputed that: (1) plaintiff Brock signed a separate Purchase

11   Agreement with the same arbitration clause, (2) the other three plaintiffs (Nguyen,

12   Wolven, Ellwood) signed a delivery declaration acknowledging they previously

13   "accepted" Tesla's online offer, and (3) the arbitration clause is reaffirmed in both

14   the used vehicle and new-vehicle warranties. MTC 5:25-7:3 & n.6.

15        Plaintiff Nguyen—the lone plaintiff who submitted a declaration opposing

16   Tesla's motion—does nothing to rebut Tesla's evidentiary showing. Nguyen Decl.

17   Dkt. 17-1, ¶¶ 1-4. His sole contention is that "Nguyen does not recall whether the

18   agreement was presented to him or whether he signed the agreement," and that he

19   first learned "there was an arbitration clause contained in a purchase agreement"

20   after this litigation was filed. Nguyen Decl. ¶ 2; Opp. 6:6-8, 6:13-16.  Nguyen's

21   asserted lack of recollection is not enough.  As Judge Breyer has put it, "[p]laintiffs'

22   statements that they 'do not recall' seeing the terms of service * * * do not rise to

23   the level of unequivocal denials of having agreed to those terms," and accordingly

24   the plaintiffs "have not met their burden of putting at issue the making of" their

25   arbitration agreements. *Blau v. AT&T Mobility*, 2012 WL 10546, at *4 (N.D. Cal.

26   _____

27   defenses for *all* plaintiffs.  Opp. 5:2-22.  But as set forth in Section IV below,

28   California law only applies to plaintiff Nguyen's contract defenses.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                    3                    8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

Jan. 3, 2012).  Of course, Nguyen's memory lapse is not evidence at all as to the other plaintiffs (who submitted no evidence).

Moreover, plaintiff Nguyen altogether fails to dispute the facts that establish, beyond question, that he assented to the Order Agreement.  Nguyen does not dispute that he ordered online, clicked his assent to a hyperlinked Order Agreement, received a copy of the Order Agreement, had weeks to review it, acknowledged at delivery that he had assented to it, and did not opt out.  Nguyen Decl. ¶¶ 2-4.[3]  The other plaintiffs submitted no evidence at all—thereby conceding Tesla's undisputed showing that each of them assented to the Arbitration Agreement in multiple ways.

As set forth in Tesla's opening brief, plaintiffs' contracts with Tesla are valid and enforceable because any "reasonably prudent user would be on inquiry notice of the terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). The terms were hyperlinked next to the "Place Order" button, immediately adjacent to bolded text making clear that the consumer "agree[d]" to the terms by placing the order. MTC 4:1-27. Nor does it matter whether they took the time to read the terms.  As the court explained on similar facts in *Meyer*, "[w]hile … many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice." *Meyer*, 868 F.3d at 79; *see also* MTC 9:15-10:6.

Plaintiffs cite *Nager v. Tesla Motors, Inc.*, 2019 U.S. Dist. LEXIS 149360 (D.

---

[3] *See, e.g.*, *Marcus v. Countrywide Home Loans, Inc.*, No. CV 17-950 PA, 2017 U.S. Dist. LEXIS 143453, at *11 n.3 (C.D. Cal. Aug. 31, 2017) ("Plaintiff effectively concedes her lack of standing by failing to address the issue in her Oppositions"); *Eurosemillas, S.A. v. PLC Diagnostics Inc.*, No. 17-cv-03159-MEJ, 2017 U.S. Dist. LEXIS 138094, at *8 n.2 (N.D. Cal. Aug. 28, 2017) (plaintiff's failure to oppose the motion to dismiss as to a claim required "dismiss[al] with prejudice as to that claim"); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1003 n.8 (N.D. Cal. 2015) ("failure to address argument in opposition can be considered a concession of the issue").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                    4                    8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

Kan. Sep. 3, 2019), arguing (without evidence) that "Tesla has offered just some random document with no connection to Plaintiff Nguyen and claims that an agreement to arbitrate exists." Not so. The plaintiffs in *Nager* provided affirmative (albeit disputed) *testimony* that they never clicked their assent to the online terms because "their purchase of the vehicle was by telephone, and their only use of the Tesla website was to upload photographs of their drivers' licenses and insurance cards." *Id.* at *3.[4] Here, in contrast, Tesla submitted evidence to show each plaintiff ordered online and clicked their assent to specific versions of the Order Agreement at the time of their orders. Barclay Decl. ¶¶3, 5-7 & Exs. A, C-E; Ahluwalia Decl. ¶¶3, 8, 11, 15 & Exs. 1, 4, 6, 9. Unlike in *Nager*, plaintiffs do not rebut this showing with their own contrary evidence. Their unsupported argument that the Order Agreements "have no connection to" plaintiffs is meaningless. Opp. 6:13-14.

Nguyen's only other argument, made without *any* legal support, is that "[w]ithout a signed agreement to arbitrate, there is no agreement to arbitrate." Opp. 6:2-7:2. As set forth in Tesla's motion, courts routinely enforce **online arbitration agreements** where, as here, the terms were visible and accessible to the user before the user finalized the transaction. MTC 9:14-10:28 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017); *Wiseley v. Amazon.Com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017); *In re Holl*, 925 F.3d 1076, 1079, 1083 (9th Cir. 2019)). Nguyen does not acknowledge these cases, much less attempt to distinguish them. It also is irrelevant that Nguyen did not physically "sign" his agreement (Opp. 6:19) because he clicked his acceptance. Numerous courts have recognized that a physical "signature" is not required, and that arbitration agreements can be formed online. MTC 10 n.8 (citing cases enforcing hyperlinked agreements with arbitration

---

[4] Even then, the court did not deny arbitration but permitted "expedited discovery limited to the issue of whether plaintiffs agreed to arbitrate." *Id.* at *11.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  clauses)[5]; Barclay Decl. ¶¶3, 5-7 & Exs. A, C-E; Ahluwalia Decl. ¶¶3, 8, 11, 15 &

2  Exs. 1, 4, 6, 9.  Again, plaintiffs offers no response to these authorities.

3      In short, there is no dispute regarding plaintiffs' assent to the Arbitration

4  Agreements, both during and after the online-order process. MTC 5:25-6:24.

5  **IV.  NGUYEN'S USE OF TESLA'S NONBINDING DISPUTE-RESOLUTION PROGRAM DID NOT INVALIDATE HIS BINDING ARBITRATION AGREEMENT.**

7      Nguyen's four-page argument on Tesla's nonbinding dispute-resolution

8  program *for warranty disputes* is the ultimate red herring.  Opp. 7:4-11:2. Most

9  automakers offer non-binding dispute resolution programs to help efficiently resolve

10 warranty disputes. Tesla is no exception, and the company explains this option in its

11 warranty documents and in other disclosures. Ahluwalia Decl. Ex. 13, Dkt. 15-21.

12 This nonbinding dispute program was explained in the "Notice to Consumers of

13 California" that was provided to Nguyen at the time of his  purchase. Supp.

14 Ahluwalia Decl., Ex. 14

15     As Tesla explains, "in the event of any disputes, differences or controversies

16 … between [the owner] and Tesla *related to this Pre-Owned Vehicle Limited

17 Warranty*" (Dkt. 17-2) (emphasis added), a consumer may but is not required to

---

19 [5] *See also, e.g., Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR, 2019 U.S. Dist.

20 LEXIS 200703, at *3 (W.D. Wash. Nov. 19, 2019) (enforcing arbitration clause that

21 was hyperlinked to language in the order process stating "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use"); *Tompkins v. 23andMe, Inc.*,

22 No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *1 (N.D. Cal. June 25, 2014),

23 *aff'd*, 840 F.3d 1019 (9th Cir. 2016) ("The fact that the [terms of service] were hyperlinked and not presented on the same screen does not mean that customers

24 lacked adequate notice"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904,

25 911-12 (N.D. Cal. 2011) (enforcing arbitration clause where the plaintiff "was provided with an opportunity to review the terms of service in the form of a

26 hyperlink immediately under the 'I accept' button"); *Fteja v. Facebook, Inc.*, 841 F.

27 Supp. 2d 829, 839 (S.D.N.Y. 2012) (concluding that Facebook's website provided adequate notice of terms because courts have long upheld contracts where "the

28 consumer is prompted to examine terms of sale that are located somewhere else").

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

seek relief through the National Center for Dispute Settlement ("NCDS"). NCDS's decision "is binding on Tesla but not on [the consumer]." *Id.* If the consumer is "not satisfied with the arbitrator's decision or Tesla's compliance, [he or she] may pursue any other legal remedies available to [them.]" *Id.*; *see* Supp. Ahluwalia Decl., Ex. 14 (explaining "[w]hether or not you decide to submit your dispute to [this nonbinding process], you are free to pursue other legal remedies.").

Nguyen did file two claims with the NCDS. And he *lost* both times before *two different neutrals* on the *same* battery-related complaints. *See* Declaration of Michael Grimaldi Exs. 1-2. But Nguyen's participation in these arbitrations (focused only on his warranty claims) does not invalidate the broader, mandatory arbitration provisions in Nguyen's (and the other plaintiffs') Order Agreement. Although Nguyen can still "pursue any other legal remedies available to [him]," he remains bound by his specific agreement that "***any dispute*** *arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules*." Ahluwalia Decl. ¶¶ 4, 9, 12, 16 & Exs. 2, 5, 7, 10.

Plaintiffs' suggestion that the NCDS arbitration process somehow creates ambiguity is wrong. There is no ambiguity. A customer can choose to participate in the NCDS resolution process or can choose to forego it. If a customer is unhappy with the NCDS arbitration process, wishes to forego it, or wants to bring non-warranty claims—as plaintiffs do here—their recourse is to file an arbitration against Tesla. There is no ambiguity or inconsistency whatsoever.

Plaintiffs' lone case citation, *Sheinfeld v. BMW Fin. Servs. NA*, LLC, No. 2:18-cv-02083-JAD-EJY, 2019 U.S. Dist. LEXIS 163984 (D. Nev. Sep. 24, 2019), Opp. 10:10-24, *undermines* plaintiffs' argument. There, the defendant sought to enforce the arbitration clause in the consumer's lease agreement. *Id.* at *1. The plaintiff tried to avoid arbitration, arguing—as Nguyen does here (Opp. 10:4-

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                    7                              8:19-cv-01422-JLS-JDE

REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

11:2)—that "BMW's warranty contains a specific [informal] arbitration provision that should control over the more general arbitration provisions contained in the lease agreement." *Id.* at *13. The court concluded the warranty-arbitration option was not available to plaintiff, but clarified in any event that "the court can easily harmonize these provisions while giving full effect to the arbitration clause." *Id.*

The same is true here. For warranty claims, Tesla gives customers the *option* to pursue informal arbitration before NCDS, where the neutral's decisions are binding on Tesla, but not on the customer. If the customer is not satisfied with that process—or wants to forego it or bring non-warranty claims—the customer remains bound by the broader agreement to submit all disputes to binding arbitration. There is no tension between these provisions. *See also* Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.").

Plaintiffs accuse Tesla of "bad faith" in updating its vehicle warranty. Opp. 8:17-10:2. This is another red herring. Tesla is not seeking to enforce its current June 20, 2019 Used Vehicle Limited Warranty (Ahluwalia Decl. ¶ 20 Ex. 13) against Nguyen, who purchased in October 2017 (Ahluwalia Decl. ¶ 3 Ex. 1).

At the time of Nguyen's purchase, the warranty applicable to his vehicle was the Used Vehicle Extended Limited Warranty[6]—effective September 2017— applicable to vehicles with more than 50,000 miles at the time of sale. Ahluwalia Decl. ¶ 3 Ex. 1; Declaration of Lis Fraser ¶ 2 Ex. 1. The extended warranty

---

[6] Nguyen attaches the "2014-2015" used vehicle warranty to his declaration, but fails to authenticate it, declaring only that a "copy of the only Tesla Preowned Vehicle Limited Warranty that I am aware of is attached hereto as Exhibit 'A.'" Nguyen Decl. ¶5 Ex. A. Nguyen does not allege that he received a copy of this document, and does not otherwise allege any facts to suggest it applies to him. He appears to have found it online: *https://www.tesla.com/sites/default/files/model-s-preowned-warranty.pdf*.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                    8                    8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

applicable to Nguyen states:

> Dispute Resolution (U.S. Only)
>
> In the event any disputes, differences or controversies arise between you and Tesla related to this Tesla Used Vehicle Extended Limited Warranty, Tesla will explore all possibilities for an amicable settlement. In case an amicable settlement is not reached, Tesla offers a dispute settlement program that proceeds in two steps. First, if you choose, you may submit your dispute to an optional dispute settlement program through the National Center for Dispute Settlement ("NCDS").
>
> Second, if you prefer not to submit your dispute to the NCDS, or if you are not satisfied with the outcome of the NCDS procedure, you agree to resolve your dispute with Tesla through binding arbitration or small claims court under the terms of the Agreement to Arbitrate in your Vehicle Purchase Agreement. [Fraser Decl. ¶ 2 Ex. 1.]

The dispute-resolution process applicable to Nguyen's purchase was thus crystal clear: the informal NCDS process was optional, with binding arbitration available for more formal dispute resolution.

In any event, there is no substantive conflict between the warranty versions submitted by Nguyen and in the moving papers by Tesla. Both versions give customers the option to submit a warranty dispute to ADR through the informal NCDS dispute-settlement program.  Ahluwalia Decl. Ex. 13, Dkt. 15-21.  And if they elect to skip NCDS or are not satisfied with the result, they may pursue binding arbitration against Tesla.  Ahluwalia Decl. ¶¶ 4, 9, 12, 16 & Exs. 2, 5, 7, 10.  Under all circumstances, customers who have agreed to the arbitration agreement remain bound by that agreement if they decide to pursue formal legal action.  The fact that Tesla "reproduce[s]" the arbitration clause in some versions of the vehicle warranty, for the customer's "convenience," does not change that result.[7]

---

[7] Ahluwalia Decl. Ex. 13, Dkt. 15-21 ("All disputes not resolved by NCDS will be arbitrated under the terms of the Agreement to Arbitrate in your Vehicle Order Agreement. Under that Agreement, you agreed to resolve disputes with Tesla by arbitration rather than by litigation in court. Please see the Vehicle Order Agreement for more details. If you prefer not to submit your dispute to NCDS, you may (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

In short, there is only one mandatory arbitration clause that covers all disputes. Tesla's optional, informal dispute-resolution process—for warranty claims only—does not relieve plaintiffs of their obligation to arbitrate any disputes they want to pursue further. As in *Sheinfeld* and as required under Civil Code section 1642, the Court can easily harmonize these provisions and give full effect to both the NCDS process and the mandatory Arbitration Agreement.

## V.   THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE

Plaintiffs' contract defenses have no merit either. As a threshold matter, plaintiffs are wrong that "California law" applies in determining *all* plaintiffs' contractual defenses. Opp. 5. The Order Agreements plainly provide that the "Agreement [is] governed by, and [is] to be interpreted according to, the laws of the State in which [Tesla is] licensed to sell motor vehicles *that is nearest to your address indicated on your Vehicle Configuration.*" Opp. 5:7-10 (citing Dkt. 15-3) (emphasis added). Plaintiffs fail to explain convincingly why the contractual choice of law should not be honored.

Moreover, the three non-California plaintiffs—who have alleged non-California claims in the complaint—have stated no basis for applying California contract law. Their nonsensical choice-of-law analysis (Opp. 5:1-27) is unavailing and contrary to *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), which held in a similar context that the laws of the states where the consumers purchased their product control their claims.

Plaintiffs' failure to establish a contract defense under the proper law, by itself, defeats any bid to prove unconscionability or any other contract defense. *See, e.g., Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (applying

---

proceed directly to binding arbitration or small claims court under the terms of the Vehicle Order Agreement. *For your convenience, the Agreement to Arbitrate is reproduced here:…*").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                         10                         8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

California law) (party opposing arbitration bears the burden of proving any defense, such as unconscionability). Because plaintiffs rely only on California law, Tesla responds only to plaintiffs' California law arguments.

### A.   Plaintiffs Have Not Established Procedural Unconscionability.

Procedural unconscionability "concerns the manner in which the contract was negotiated and the respective circumstances of the parties at the time." *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). At issue is the level of unfair surprise and oppression involved in the agreement. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).

Plaintiffs' procedural unconscionability argument discusses the different ways to purchase used Tesla vehicles (Opp. 12:6-11) as build-up to a conclusory claim that "Tesla preys on the fact that its customers are going to be *too excited* to purchase and receive delivery of their vehicles on the date of their vehicle delivery, with the hope that their customers will sign whatever paperwork is necessary to complete the purchase." Opp.12:11-14 (emphasis added).  Unsurprisingly, plaintiffs do not cite a single case supporting this "excitement" theory of unconscionability. Indeed, if "excitement" about a new product could establish unconscionability, few (if any) consumer purchase agreements would withstand this subjective claim.

Plaintiffs' "excitement" theory also does not survive factual scrutiny.  As an initial matter, plaintiffs fail to explain or provide evidence about how Tesla supposedly exploits consumer excitement to its advantage.  And the record evidence shows the opposite.  Plaintiffs ordered their vehicles online, clicked their assent to a prominently hyperlinked agreement, and immediately received copies of that agreement, and three of them waited *weeks* to receive their vehicles and execute their final-transaction paperwork.  Ahluwalia Decl. ¶¶3, 6, 11, 13, 15, 17; MTC 6:16-23.  Weeks after their initial order, three of the plaintiffs reaffirmed their assent by signing a declaration "agree[ing] with your final motor vehicle purchase agreement, which has been uploaded to and is available in your mytesla account."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                    11                         8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1   Ahluwalia Decl. ¶¶6, 13, 17 & Exs. 3, 8, 11.    And plaintiff Brock *signed* a Purchase

2   Agreement that included the arbitration clause. Ahluwalia Decl. ¶5.    Moreover, all

3   of the plaintiffs had 30 days to opt out of their Arbitration Agreements and none of

4   them did. Ahluwalia Decl. ¶¶7, 12, 17, 22. The undisputed evidence shows that

5   plaintiffs had ample time to review their agreements and to consider and deliberate

6   before their purchases. There is nothing in the record to support plaintiffs' legally-

7   defective theory of unconscionability.

8        Plaintiffs further assert "the fact that the agreement to arbitrate is located

9   within a purchase agreement is also another reason to refuse enforcement of

10  arbitration. Courts have found such placement supports a finding of procedural

11  unconscionability."    Opp. 12:14-16 & n.10. Plaintiffs cite *Gutierrez v. Autowest,*

12  *Inc.*, 114 Cal. App. 4th 77 (2003), on this point, but it does not help them.    *Gutierrez*

13  examined an "arbitration clause that was particularly inconspicuous, printed in

14  eight-point typeface on the opposite side of the signature page of the lease," and

15  required the consumer to pay substantial fees (approximately $8,000) to initiate

16  arbitration.  *Id.* at 91.   The court there held only that "where a consumer enters into

17  an adhesive contract that mandates arbitration, it is unconscionable to condition that

18  process on the consumer posting fees he or she cannot pay."  *Id.* at 89.   Here, it is

19  undisputed Tesla pays "all AAA fees" and each of the arbitration agreements is

20  printed in a readable font size, in a standalone text box, as part of an agreement

21  spanning just 3 or 4 pages. MTC 5:12; Ahluwalia Decl. ¶¶ 4, 9, 12, 16 & Exs. 2, 5,

22  7, 10.  *Gutierrez* has no application here.

23       Plaintiffs also cite *Delisle v. Speedy Cash*, No. 3:18-CV-2042-GPC-RBB,

24  2019 U.S. Dist. LEXIS 96981 (S.D. Cal. June 10, 2019) (Opp. 12:17), where the

25  court found "elements of procedural unconscionability, notwithstanding the 30-day

26  opt out provision" where consumers were "not afforded an opportunity to review

27  their terms before signing." *Id.*   at *13. Unlike *Delisle*, plaintiffs here had ample

28  opportunity to review the terms of the arbitration agreement, including at the time of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

their order, after their Order Agreements were uploaded to their personal accounts, and in the weeks before they concluded the transactions.  MTC 6:17-24.  *Delisle* too is unavailing.

### B.    Plaintiffs Have Not Established Substantive Unconscionability.

Plaintiffs' only substantive unconscionability argument is that their right to seek public injunctive relief cannot be waived. Opp. 13:10-12. Plaintiffs' arguments regarding *McGill* are wrong for reasons discussed below. *See infra* Sect. V. However, *McGill* is a public policy decision, and has no relevance to an unconscionability defense.   As such, plaintiffs have not offered any viable *substantive unconscionability* defense, and this argument should be rejected.

## VI.    THE *MCGILL* RULE DOES NOT CHANGE THIS RESULT.

*McGill* is no panacea for plaintiffs' efforts to avoid individual arbitration. First, *McGill* only announces a rule of *California law.*  Thus, it does not apply to the non-California claims of non-resident plaintiffs Wolven, Ellwood, and Brock. Second, *McGill* also does not help Nguyen, the lone California plaintiff, because his claims cannot credibly be read to encompass a remedy for "public injunctive relief. Third, the *McGill* rule is expressly preempted by the FAA.  Finally, to the extent that the Court concludes for any reason that any claim or remedy is not arbitrable (which it should not do), it should sever that claim or remedy and compel the balance of the case to arbitration.

### A.    *McGill* Does Not Apply to Non-Resident Plaintiffs Wolven, Ellwood, and Brock.

*McGill* only addresses California "public policy."  *McGill*, 5 Cal. 4th at 952. *McGill* does not address any other states' laws or public policy decisions.  Thus, *McGill* does not preclude arbitration of public injunctive relief remedies (if any) by non-California plaintiffs Wolven, Ellwood, and Brock.  Those three plaintiffs allege that they reside in, and purchased their vehicles in, states other than California. FAC ¶¶ 17, 20, 25.  They allege no other nexus to California. They expressly agreed

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                13                            8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1   that their disputes with Tesla would be governed by the laws of their home states

2   (states close to their home).   Ahluwalia Decl. ¶¶ 9, 12, 16 & Exs. 5, 7, 10.   They

3   expressly invoke the laws of their home states (FAC ¶¶ X (Idaho), XI (Oregon), XII

4   (Virginia), and they have no basis to allege claims under the UCL, FAL, or CLRA,[8]

5   which are the only claims in the FAC to which the *McGill* rule could possibly apply.

6   (*See* Section V(D) infra.)

7           Plaintiffs thus have no plausible basis to invoke *McGill*, which is grounded in

8   "California public policy" that simply does not apply to them.   *McGill*, 2 Cal. 5th at

9   962.   As the court in *Roberts v. AT&T Mobility, LLC*, Case No. 15-cv-03418-EMC,

10  2018 U.S. Dist. LEXIS 42235 (N.D. Cal. Mar. 14, 2018), noted in denying an

11  Alabama's plaintiff's effort to seek refuge under *McGill*, his claims were not subject

12  to California law, and "it is not clear that Alabama courts would rule the same as

13  California courts."   2018 U.S. Dist. LEXIS 42235, at *29.   As a consequence,

14  nothing in *McGill* precludes an order compelling individual arbitration of all claims

15  and remedies asserted by the non-California plaintiffs.

16          **B.**   ***McGill* Does Not Apply to Nguyen or Any Other Plaintiff Because
17          **the FAC Does Not Seek "Public Injunctive Relief."**

18          This litigation is manifestly *not* about public injunctive relief.   To the

19  contrary, Nguyen has always been laser-focused on obtaining monetary relief based

20  on his individual used Tesla purchase.   Nguyen first filed *two* claims with the NCDS

21  seeking battery replacements in for his car, and lost both times.   After he was turned

22  away by *two* separate neutrals, Nguyen filed his original complaint seeking relief

23  almost exclusively for the alleged *damages* he and putative class members allegedly

---

[8]   *See, e.g.*, *Mazza*, 666 F.3d at 594 (where plaintiffs alleged alleging
misrepresentations in connection with their vehicle leases, holding that "each class
member's consumer protection claim should be governed by the consumer
protection laws of the jurisdiction in which the transaction took place.").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                14                          8:19-cv-01422-JLS-JDE

REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1    were "forced to pay … for things that should have been and were supposed to have
2    been taken care of by Tesla as promised."  Complaint (Dkt. 1), ¶ 8.

3        The FAC does not mask the true colors of Nguyen's and his co-plaintiffs'
4    money-centric claims.  The word "damage" appears 67 times in the FAC, "punitive"
5    appears 16 times, "restitution" appears 10 times, "money" or "monetary" 9 times,
6    and the "$" symbol appears 18 times.  The FAC, like the original complaint,
7    introduces the lawsuit by arguing that the named plaintiffs "and the putative class
8    members have been *damaged* by Tesla," with no reference to injunctive relief (much
9    less public injunctive relief).  FAC ¶ 8.

10        In stark contrast, the words "enjoin" or "injunction" appear just 7 times each
11    in plaintiffs' 94-page, *435 paragraph* FAC—the same number of times as the
12    generic request for "attorneys' fees."  Indeed, the word "enjoin" surfaces for the first
13    time in paragraph 215 of the FAC (p. 59, CLRA claim), and then in paragraph 222
14    (p. 62, UCL claim).  In both cases, the generic requests to "enjoin" Tesla are made
15    *after* plaintiffs' multi-paragraph, detailed explanations of their claimed monetary
16    injuries.  FAC ¶¶ 209-210, 213-214, 220-221.

17        Even when plaintiffs reference injunction, the FAC focuses on the individual
18    relief sought by the named plaintiffs for themselves and individuals similarly
19    situated.  For example, plaintiffs allege that Tesla continues to deny them and other
20    Tesla owners "repairs," "adjustments," vehicle "replacement," and various
21    disclosures.  *See, e.g.*, FAC ¶¶ 11-13, 82, 96, 100-102, 106.  They seek "injunctive"
22    or "equitable" relief for a "buyback," "repair," or "repurchase" of their Model S
23    vehicles.  *See, e.g.*, FAC ¶¶ 9, 100-101, 434(D).  Plaintiffs also seek "injunctive
24    relief in the form of a recall" (FAC, 434.C), which is **not** a private remedy, *see* 49
25    U.S.C. § 30101, *et seq.*, and could only possibly affect Tesla owners, not the public.
26    This is *private* relief, as *McGill* explains, because it seeks to "redress or prevent
27    injury to an individual plaintiff or to a group of individuals similarly situated" rather
28    than "prohibiting unlawful acts that threaten future injury to the general public."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *McGill*, 2 Cal. 5th at 955.

2      Plaintiffs otherwise fail to identify, much less seek to change, any identifiable

3  *ongoing practice* that would affect the public at large.  The FAC is utterly silent on

4  this point.  By and large, the FAC presents only a static image of what plaintiff

5  Nguyen ostensibly was told or believed when he bought his used car in 2017.  Even

6  Nguyen's declaration opposing arbitration here centers exclusively on what he

7  learned, believes, or experienced.  Dkt. 17-1, ¶¶ 3, 4, 6, 7. The FAC is all about

8  Nguyen, the named plaintiffs, and possibly Tesla owners at most.  There is no

9  specific identification of any ongoing harm, much less a meaningful demand for

10  relief, as to the public at large.

11      In *McGill*, the California Supreme Court distinguished between public

12  injunctive relief and nonpublic injunctive relief, explaining that "public injunctive

13  relief under the UCL . . . is relief that has 'the primary purpose and effect of'

14  prohibiting unlawful acts that threaten future injury to the general public," while

15  "[r]elief that has the primary purpose or effect of redressing or preventing injury to

16  an individual plaintiff—or to a group of individuals similarly situated to the

17  plaintiff—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955

18  (citations omitted).

19      Plaintiffs cannot change the character of their claims by sprinkling

20  "injunction" or "enjoin" strategically in the FAC, and then arguing this case is all

21  about public injunction. As numerous courts have held, "[m]erely declaring that a

22  claim seeks a public injunction, … is not sufficient to bring that claim within the

23  bounds of the rule set forth in *McGill*." *Sponheim v. Citibank, N.A.*, 2019 U.S. Dist.

24  LEXIS 100857, at *12 (C.D. Cal. June 10, 2019) (citing *Blair v. Rent-A-Center,

25  Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *2 (N.D. Cal. Oct. 25, 2017);

26  *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 172477 JGB (SPx), 2018 WL

27  4726042, at *6 (C.D. Cal. Sept. 18, 2018); *Wright v. Sirius XM Radio Inc.*, No.

28  SACV 16-01688, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017)).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1         16         8:19-cv-01422-JLS-JDE

REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

The court in *Wright* held that conclusory throw-in claims for injunctive relief did not alter the fundamentally private nature of the plaintiff's and putative class claims. There, plaintiff sued after the defendant satellite radio provider denied plaintiff's request to transfer his "lifetime" subscription to a new receiver device. *Wright*, 2017 U.S. Dist. LEXIS 221407, at *2. Plaintiff invoked *McGill* when defendant moved to compel arbitration and claimed his suit should stay in court because his complaint tacked on a broader request to enjoin the defendant "from committing such unlawful, unfair, and fraudulent business practices" and from "making such material misrepresentations and failing to disclose or actively concealing its practice of regularly canceling and limiting or prohibiting transfers of lifetime subscriptions." *Id.* The court held *McGill* did not apply because, while these summary allegations could possibly benefit future subscribers, they were "vague, generalized allegations" that did not adequately request public injunctive relief, and any public benefit was merely incidental. *Id.*

Plaintiff here points to almost identical "vague, generalized allegations" for injunctive relief. Opp. 14:8-11 (FAC ¶¶ 215, 222). The FAC, at most, seeks to benefit Nguyen, the other named plaintiffs, and other Tesla owners. As in *Wright,* there is no specific claim of present harm to the public, and no demand for any public relief in particular. The FAC thus does not come within the rule of *McGill*, and must be arbitrated in its entirety.

### C. The *McGill* Rule Is Preempted under Supreme Court Precedent and Likely Will Be Determined So by the Supreme Court.

Even if plaintiffs had pled a credible public injunctive claim for which *McGill* could apply, the *McGill* rule is preempted because it interferes with the "fundamental attributes" of individualized arbitration. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018). The *McGill* rule is also preempted because it is not a "ground … for the revocation of any contract" as required Section 2 of the FAA. Tesla acknowledges that the Ninth Circuit has recently rejected this argument. *See,*

REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*e.g.*, *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 822 (9th Cir. 2019); *McArdle v. AT&T Mobility, LLC*, 474 F. App'x 515 (9th Cir. 2012); *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019)).  However, *petitions for certiorari* are all but inevitable, and Tesla sees a high likelihood that the high court would take interest. Tesla thus raises this issue to preserve its rights in the event of a change in the law.

### D. At Most, *McGill* Would Require a Court to Decide Nguyen's Right to a Public Injunction *Remedy* on His CLRA, UCL, and FAL Claims After He Prevailed in Individual Arbitration.

As set forth above, the *McGill* rule does not apply to *any* of the claims in the FAC.  Even if it did, it would apply only to the remedy portion of plaintiff Nguyen's claims that provide a "statutory right to seek public injunctive relief." *McGill*, 2 Cal. 5th at 966. Although plaintiffs assert 23 total claims (MTC fn. 4), only eleven are based on California law and of those, just *three* claims—under the CLRA (FAC ¶¶ 194-215), UCL (FAC ¶¶ 216-224), and the FAL (FAC ¶¶ 225-233)—provide a "statutory right to seek public injunctive relief."  *See* Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780.  Thus, even if the *McGill* rule applied (it does not), *McGill* does not preclude individual arbitration of 20 of plaintiffs' 23 claims.

*McGill*, if it applies, also does not preclude arbitration of plaintiff Nguyen's *individual* CLRA, UCL, and FAL claims.  The parties agreed in advance to sever any claim or remedy that cannot be arbitrated, committing that if any part of the "agreement to arbitrate cannot be enforced as to a particular claim for relief or *remedy*, then that claim or *remedy* (and only that claim or *remedy*) must be brought in court and any other claims must be arbitrated." Barclay Decl. Ex. B; Ahluwalia Decl. ¶¶ 4, 9, 12, 16 & Exs. 2, 5, 7, 10. Under the parties' agreement, that remedy (at most) may be severed, and the rest of the case arbitrated.

The parties' agreement to sever nonarbitrable claims or remedies is readily enforceable.  Under longstanding precedent, "when a complaint contains both arbitrable and nonarbitrable claims," the FAA requires courts to "compel arbitration of pendent arbitrable claims," even if that results "inefficient maintenance of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                    18                          8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

separate proceedings in different forums." *KPMG LLP v. Cocchi,* 565 U.S. 18, 22 (2011). Critically, this applies equally to "arbitrable and inarbitrable remedies derived from the same statutory claim" *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1088 (1999) (compelling arbitration of individual CLRA claims, and holding that "the [public] injunctive relief action alone should be decided in a judicial forum").[9]  As the Ninth Circuit has explained, parties are "welcome to agree to split decision making between a court and an arbitrator" in this manner, including by severing only "the potential public injunctive remedy" (if applicable) and arbitrating the rest.  *Blair*, 928 F.3d at 831.  And unlike the severability clause in *Blair*, which provided for the severing of inarbitrable "*claims* for relief," *id.* at 831, Tesla's Arbitration Agreements require the severing of inarbitrable "*remedies*." (Aluwahlia Decl. Exs. 2, 5, 7, 10.)

As discussed above, Tesla believes that all claims, parties, and remedies should be ordered to arbitration.  But, in the event the Court believes that any remedy must be decided in a judicial forum, that remedy should be severed, and the case stayed pending arbitration of the remaining claims and issues.  *See, e.g.*, FAA, 9 U.S.C. § 3 (mandatory stay where the "the issue involved in such suit or proceeding is referable to arbitration"); *Friedman v. Mercedes Benz USA LLC*, No. CV 12-7204 GAF (CWX), 2013 WL 12086785, at *12 (C.D. Cal. Jan. 31, 2013) ("the Court will sever Plaintiffs' public injunctive remedy from the arbitration proceeding and stay that remedy pending resolution of the arbitrable claims").

## VII.   CONCLUSION

For the foregoing reasons, Tesla respectfully requests that plaintiffs be compelled to individually arbitrate all their claims and remedies. If the Court orders individual arbitration as to all plaintiffs, claims, and remedies, which Tesla submits

---

[9] *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013), invalidated the court's rule on arbitrability, but did not disturb its severability analysis.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-2383-1986.1                                   19                          8:19-cv-01422-JLS-JDE
REPLY IN SUPPORT OF TESLA'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

1  is the correct outcome, the entire case should be dismissed. MTC 15:9-21.

2      But if the Court is inclined to apply *McGill* (it should not), the Court should
3  sever the public-injunctive-relief remedy from plaintiff Nguyen's CLRA, UCL, and
4  FAL claims and order the rest of the case to arbitration. Before any public injunctive
5  relief can be ordered, plaintiff Nguyen must prevail on the merits on his CLRA,
6  UCL, and FAL claims. The Court should thus stay any judicial action on public
7  injunctive relief until individual arbitration concludes.

8
9  DATED: January 17. 2020          LEWIS BRISBOIS BISGAARD & SMITH LLP
10
11                                  By: _____
12                                      Eric Y. Kizirian
                                        Attorneys for Defendant Tesla, Inc.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW