JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:19-cv-01422-JLS-JDE                                        Date: April 06, 2020
Title: Hugh Nguyen v. Tesla, Inc.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:
              Not Present                                                    Not Present

**PROCEEDINGS:** (IN CHAMBERS) ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING PROCEEDINGS PENDING ARBITRATION (Doc. 15)

Under submission is Defendant Tesla, Inc.'s Motion to Compel all Plaintiffs to Individual Arbitration and to Dismiss the Action ("Motion to Compel"). (Mot., Doc. 15.) Plaintiffs opposed, and Tesla replied. (Opp'n, Doc. 17; Reply, Doc. 18.) Having considered the parties' briefs, the Court GRANTS IN PART Tesla's Motion to Compel and STAYS the proceedings pending arbitration.

## I. BACKGROUND

### A. Nature of Litigation

In this putative class action, Plaintiffs Hugh Nguyen, Todd Wolven, Ian Ellwood, and E'rika Brock are consumers from four states—California, Idaho, Oregon, and Virginia, respectively—who purchased used electric vehicles from Tesla. (First Am. Compl. ("FAC"), Doc. 14 ¶¶ 9, 14, 17, 20, 25.) In their operative, First Amended Complaint, they bring various warranty and consumer protection claims against Tesla, alleging that it misrepresented, concealed, and falsely advertised the condition of its used vehicles—specifically, the battery range—and the scope and quality of its warranty coverage for those vehicles. (*See id.* ¶¶ 2–8; *see also* Opp'n at 1 n.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

Plaintiffs initiated this action on July 23, 2019 and filed the FAC on November 5, 2019.  Tesla filed the instant Motion a month later, on December 4, 2019.

### B.   Agreement to Arbitrate

Plaintiffs each purchased a preowned Tesla Model S online directly from Tesla between October 26, 2017 (Nguyen) and June 28, 2019 (Wolven).  (Ahluwalia Decl. ISO Mot., Doc. 15-7 ¶¶ 3, 8, 11, 15.)  To purchase a used vehicle on Tesla's website, "customers select their vehicles, provide payment and other details, and then click on a button labeled 'Place Order.'"  (Barclay Decl. ISO Mot., Doc. 15-1 ¶ 2.)  By fall 2017, "the 'Place Order' button was accompanied by language stating 'By placing this order you agree to the **Model S Order Agreement** and the Customer Privacy Policy.'"  (*Id.* (formatting in original to replicate appearance on website).)  The text "Model S Order Agreement" was hyperlinked to the agreement itself, "giving customers the opportunity to review the agreement before clicking the 'Place Order' button."  (*Id.*)

A screenshot of a "Place Order" button substantially like that Plaintiffs encountered while placing their online order is copied below.



(Ex. A to Barclay Decl., Doc. 15-2 (cropped to highlight "Place Order" area); *see also* Exs. C–E to Barclay Decl., Docs. 15-4–6.)  The Order Agreement (alternatively, the "Motor Vehicle Purchase Agreement") contains within it an arbitration agreement, the "Agreement to Arbitrate," which provides for binding arbitration of "any dispute arising out of or relating to any aspect of the relationship between [the consumer-signatory] and Tesla[.]"  (Motor Vehicles Order Agreement, Ex. B to Barclay Decl., Doc. 15-3 [hereinafter Order Agreement] at 2.)  Consumer-signatories have the option of opting out

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

of the arbitration agreement within thirty days after signing the Order Agreement.  (*See id.*)

After Plaintiffs placed their online orders, a copy of the Order Agreement was "placed" in their personal Tesla ("MyTesla") accounts.  (Ahluwalia Decl. ISO Mot. ¶¶ 4, 8, 12, 16.)  Then, when Plaintiffs took delivery of their vehicles, they each signed delivery documents that, among other things, reaffirmed their assent to the Order Agreement.  (*See id.* ¶¶ 6, 9, 13, 17.)  Finally, Tesla's Used Vehicle Limited Warranty and Used Vehicle Extended Limited Warranty both expressly incorporate the Order Agreement's binding arbitration provision.  (*See* Exs. 1–2 to Fraser Decl. ISO Reply, Docs. 18-5–6.[1])  In the Dispute Resolution section of both warranties, Tesla first offers "an optional dispute settlement program through the National Center for Dispute Settlement ('NCDS')."  (Extended Warranty, Ex. 1 to Fraser Decl., Doc. 18-5 at 10; Warranty, Ex. 2 to Fraser Decl., Doc. 18-6 at 10.)  Tesla then clarifies to consumers that, "if [they] prefer not to submit [their] dispute to the NCDS, or if [they] are not satisfied with the outcome of the NCDS procedure, [they] agree to resolve [their] dispute with Tesla through binding arbitration or small claims court under the terms of the Agreement to Arbitrate in [their] Vehicle Purchase Agreement."  (*Id.* at 11 (both warranties).)  Tesla then reiterates this point under a subsection titled "Agreement to Binding Arbitration (U.S. Only)," which reads:

> All disputes not resolved by NCDS will be arbitrated under the terms of the Agreement to Arbitrate in your Vehicle Purchase Agreement.  Under that Agreement, you agreed to resolve disputes with Tesla by arbitration rather than

---

[1] The warranties Tesla submitted as Exhibits 1 and 2 to the Fraser Declaration were effective from September 2017 through January 2018.  (Fraser Decl. ¶¶ 2–3.)  Plaintiffs Ellwood and Wolven purchased their preowned Teslas outside of that period, but neither Tesla nor Plaintiffs submitted the warranty language those Plaintiffs received with their vehicles.  Attached to his declaration, Plaintiff Nguyen submitted a copy of "the only Tesla Preowned Vehicle Limited Warranty that [he is] aware of," which appears to be the 2014-2015 version of the warranty.  (*See* Nguyen Decl., Doc. 17-1 ¶ 5; Ex. A to Nguyen Decl., Doc. 17-2.)  The attached warranty lacks foundation and the Court therefore disregards it.  *See* Fed. R. Evid. 602.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01422-JLS-JDE                                    Date: April 06, 2020
Title: Hugh Nguyen v. Tesla, Inc.

by litigation in court. . . . If you prefer not to submit your dispute to NCDS, you may proceed directly to binding arbitration or small claims court under the terms of the Vehicle Purchase Agreement.

(*Id.* at 11–12 (both warranties).)

## II. <u>LEGAL STANDARD</u>

Congress enacted the Federal Arbitration Act "to overcome courts' reluctance to enforce arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The Act applies to written contractual provisions "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract[s.]" 9 U.S.C. § 2. The rest of Section 2 "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, *save upon such grounds that exist at law or in equity for the revocation of any contract*.'" *Circuit City*, 279 F.3d at 892 (quoting 9 U.S.C. § 2). In other words, "although 'courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Circuit City*, 279 F.3d at 892 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

"The court's role under the [FAA] is [] limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The "party seeking to compel arbitration has the burden under the FAA to show [these two elements]." *Ashbey v. Archstone Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Importantly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01422-JLS-JDEDate: April 06, 2020
Title: Hugh Nguyen v. Tesla, Inc.

## III.DISCUSSION[2]

### A.Clear Agreement to Arbitrate and Scope of Agreement

"The threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.'" *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)). "In California, general principles of contract law determine whether the parties have entered a binding agreement to arbitrate." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015) (internal quotation marks and brackets omitted).[3] Nguyen argues that Tesla does not meet its burden of proving that an agreement to arbitrate exists, offering in support a few frequently rejected arguments. (*See* Opp'n at 6.)

Nguyen first argues that, "[w]ithout a signed agreement to arbitrate, there is no agreement to arbitrate." (*Id.*) Quite the contrary: the FAA does not require that arbitration agreements be signed. *See Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013). Then, Nguyen contends that he "does not recall whether the agreement was presented to him or whether he signed the agreement." (Opp'n at 6; Nguyen Decl. ¶ 2.) Whether or not he recalls having seen the agreement or signed it is of no moment, for Tesla presents sufficient evidence that the agreement *was* presented to Nguyen (and the other Plaintiffs, for that matter) and that he (and the other Plaintiffs)

---

[2] The parties agree that the FAA applies to the Arbitration Agreement. (*See* Mot. at 7; Opp'n at 3.)

[3] Plaintiffs ask the Court to apply California law across the board—*i.e.*, even to non-California Plaintiffs—even though the Order Agreement contains a Governing Law provision that provides: "The terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration." (Order Agreement at 2). The Court need not address whether California law should apply to all Plaintiffs, however, because only Nguyen raises any defenses to the arbitration provision, and the parties agree that California law applies to his claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01422-JLS-JDE                                          Date: April 06, 2020
Title: Hugh Nguyen v. Tesla, Inc.

assented to it.[4]  (*See* Ahluwalia Decl. ISO Mot. ¶¶ 3–18; Exs. 1–11A to Ahluwalia Decl. ISO Mot., Docs. 15-8–19; *Blau v. AT & T Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) ("Plaintiffs' statements that they 'do not recall' seeing the terms of service at the time they agreed . . . do not rise to the level of unequivocal denials of having agreed to those terms.  If a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless."); *Luafau v. Affiliated Computer Servs., Inc.*, No. C 06-0347 CW, 2006 WL 1320472, at *3 (N.D. Cal. May 15, 2006) (stating that company's "Dispute Resolution Plan" was "not unenforceable merely because Plaintiff allegedly did not see the [Plan] and its rules").)  In fact, Nguyen himself relies on the same agreement that contains the Agreement to Arbitrate—the Order Agreement—when he invokes the Governing Law provision (*see* Opp'n at 5), which is located *on the same page* as the binding arbitration provision (Order Agreement at 2).

Accordingly, the Court finds that the parties in fact agreed to arbitrate the dispute.[5]  This finding also applies to the arbitration agreements between Tesla and Plaintiffs Brock, Wolven, and Ellwood, because Tesla sufficiently demonstrates that they, too, "agreed to the hyperlinked 'Model S Order Agreement,' which requires that their claims be arbitrated on an individual basis" (Mot. at 3).  And, as the Court has already noted, none of the three present any defenses.

Next, the Court must determine whether Tesla has demonstrated that the arbitration agreement encompasses the dispute at issue.  *Chiron Corp.*, 207 F.3d at 1130.  The arbitration agreement here extends broadly, specifically to "any dispute arising out of

---

[4] For the same reason, the Court also rejects Nguyen's argument that "Tesla has offered just some random document with no connection to Plaintiff Nguyen[.]" (Opp'n at 6).

[5] Nguyen makes a third argument, namely that the Agreement to Arbitrate conflicts with the language in Tesla's Used Vehicle Limited Warranty, which language should supersede that in the Agreement to Arbitrate.  (*See* Opp'n at 7–11.)  But as the Court notes above, *see supra* note 1, Nguyen offers no acceptable evidentiary basis for the Court to admit the version of Tesla's Used Vehicle Limited Warranty that he contends is "the only Tesla Preowned Vehicle Limited Warranty that [he is] aware of."  (Nguyen Decl. ¶ 5.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

or relating to any aspect of the relationship between [the consumer-signatory] and Tesla," including "claims arising before this Agreement, such as claims related to statements about [Tesla's] products." (Order Agreement at 2.) But the arbitration agreement includes a class/collective action waiver. (*See id.*) Plaintiffs' individual claims,[6] however, certainly fall within the arbitration agreement's wide reach, meaning that the arbitration agreement "encompasses the dispute at issue[,]" *Chiron Corp.*, 207 F.3d at 1130.

### B. Validity of Agreement

Although Tesla adequately demonstrates the existence of a clear agreement to arbitrate that encompasses Plaintiffs' individual claims, Nguyen argues that the arbitration agreement is unconscionable and therefore unenforceable. (*See* Opp'n at 11.)

Under the FAA, "arbitration agreements are valid, irrevocable and enforceable except upon grounds that exist for revocation of the contract generally." *Serpa v. Cal. Sur. Investigations, Inc*., 215 Cal. App. 4th 695, 701–02 (2013). The party challenging the validity of the arbitration agreement bears the burden of proof. *See Pinnacle*, 55 Cal. 4th at 236.

In California, a contract is not enforceable if it is found to be unconscionable. *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). "Unconscionability under California law 'has both a procedural and a substantive element,'" and "[c]ourts use a 'sliding scale' in analyzing these two elements." *Kilgore v. KeyBank, N.A*. (*Kilgore 2012*), 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 114 (2000)). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. "No matter how heavily one side of the scale tips, however, *both* procedural and substantive unconscionability are required for a

---

[6] The Court addresses Plaintiffs' class claims in Part III.C of this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

court to hold an arbitration agreement unenforceable." *Kilgore 2012*, 673 F.3d at 963 (citing *Armendariz*, 24 Cal. 4th at 114).

### i.     Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002). Under California law, "[a] provision is substantively unconscionable if it involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms." *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1573 (2009). Here, Nguyen argues that the arbitration agreement is substantively unconscionable because it requires that consumer-signatories waive their right to seek public injunctive relief against Tesla. (Opp'n at 13–16.)

In *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), the California Supreme Court held that arbitration provisions that waive the right to seek public injunctive relief in any forum are "contrary to California public policy and [] thus unenforceable under California law." *Id.* at 952, 961; *cf. Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) (holding that "the FAA does not preempt the *McGill* rule."). Public injunctive relief is "relief that 'by and large' benefits the general public and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public.'" *McGill*, 2 Cal. 5th at 955 (alteration in original) (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1079, 1080 n.5 (1999)).

Here, Nguyen seeks public injunctive relief against Tesla under California's Consumer Legal Remedies Act (the "CLRA"), California's Unfair Competition Law (the "UCL"), and California's False Advertising Law (the "FAL"). (*See* FAC ¶ 215 (asking the Court to "enjoin[] Tesla's unfair or deceptive acts or practices" under the CLRA); *id.* ¶ 222 (asking the Court for an order "enjoin[ing] further unlawful, unfair, and/or fraudulent acts or practices by Tesla" under the UCL); *id.* ¶ 232 (asking that the Court "enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices" under the FAL).) In *McGill*, the California Supreme Court reiterated its prior holding that "public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01422-JLS-JDE                              Date: April 06, 2020
Title: Hugh Nguyen v. Tesla, Inc.

'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." 2 Cal. 5th at 955 (quoting *Broughton*, 21 Cal. 4th at 1077). As a result, the California Supreme Court held, "[a]greements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the false advertising law are not enforceable in California." *McGill*, 2 Cal. 5th at 956.

Tesla fails to grapple with this unequivocal holding—indeed, it does not mention this part of *McGill*—insisting that the injunctive relief Nguyen seeks is private in nature. (*See* Reply at 14–17.) But the California Supreme Court's holding in *McGill* forecloses this argument. And, even if Tesla believes that "Nguyen has always been laser-focused on obtaining monetary relief based on his individual used Tesla purchase" (Reply at 14), that does not mean that he is not also seeking public injunctive relief against Tesla. In fact, Plaintiffs' FAC contains plenty of references to the public harm Plaintiffs allege that Tesla has been causing. (*See, e.g.*, FAC ¶ 73 ("The fact that Tesla's used vehicles are sold as 'certified' in some way, shape, or form by Tesla, is publicly known and relied upon by consumers such as Plaintiff and the putative class."); *id.* ¶ 199 ("Tesla made numerous representations . . . that were misleading, all of which emanated from Tesla's headquarters in California, as well as Tesla's showroom stores and service centers throughout California, and publicly displayed on Tesla's website."); *id.* ¶ 228 ("Tesla caused to be made or disseminated throughout California and the United States, through advertising, marketing, and other publications . . . statements that were untrue or misleading[.]").)

Finally, the case Tesla relies on for the proposition that *McGill* does not apply here, *Wright v. Sirius XM Radio Inc.*, No. SACV1601688JVSJCGX, 2017 WL 4676580 (C.D. Cal. June 1, 2017), does not persuade the Court. In *Wright*, as Tesla points out, the court held that Wright was seeking only "private relief" even though he sought, among other things, "'an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices' and 'making such material misrepresentations and failing to disclose or actively concealing its practice of regularly canceling and limiting or prohibiting transfers of lifetime subscriptions.'" *Id.* at *10. That was in addition to the injunction Wright sought "barring Sirius from '(1) terminating or purporting to terminate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

[lifetime subscriptions]; (2) failing to honor any and all "lifetime" satellite radio subscriptions previously purchased; and (3) charging and/or purporting to charge Plaintiff and/or Class members any additional monies for any such services.'" *Id.* (alteration in original). The court found that those requests "solely benefit[ed] the putative class members" and that they could not be salvaged by the above-quoted request for public injunctive relief because "such vague, generalized allegations do not request public injunctive relief." *See id.* In support of this conclusion, the court in *Wright* cited *McGill*, but, respectfully, the Court detects nothing in the cited portion of *McGill* that lends itself to the kind of distinction the *Wright* court was making. On the contrary, the California Supreme Court in *McGill* reiterated that an injunction "against a defendant's deceptive methods, acts, and practices"—such as those available under the CLRA, UCL, and the FAL—"'generally benefit[s]' the public," as is required for injunctive relief to be public. *See* 2 Cal. 5th at 955.

Here, the Agreement to Arbitrate provides, in relevant part:

> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

(Order Agreement at 2.) Although the provision does not say so explicitly, its various proscriptions combine to preclude consumer-signatories from seeking public injunctive relief *in any forum*, rendering the provision unenforceable under *McGill*.

But the same provision also contains a severability clause that applies to both inarbitrable claims and remedies. Here, severance is appropriate, because other than this unenforceable provision, the Agreement to Arbitrate is not permeated with illegality. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

*Armendariz*, 24 Cal. 4th at 124; *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) ("[T]he dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce.") (quoting *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008)). The Court therefore determines that Nguyen's public injunctive relief requests alone should be decided in a judicial forum. *See Broughton*, 21 Cal. 4th at 1088 (severing CLRA injunctive relief action to be decided in a judicial forum while "damages portion" of CLRA claim and malpractice claim proceed to arbitration, "assuming the damages portion of the CLRA claim is found to be arbitrable" under the relevant arbitration agreement).

Because Nguyen's lone substantive unconscionability argument concerns the arbitrability of his requests for public injunctive relief under the CLRA, UCL, and FAL, and the Court has severed those remedies from the scope of the arbitration agreement, Nguyen's residual arbitration agreement is free of substantive unconscionability concerns. In other words, Nguyen has not shown substantive unconscionability as to the arbitration agreement in its current state. Therefore, the Court need not reach Nguyen's procedural unconscionability arguments. *See Kilgore 2012*, 673 F.3d at 963.

**C. Request to Stay Proceedings**

Tesla requests that, if the Court applies the *McGill* rule in this fashion, it then "stay any judicial action on public injunctive relief until [Nguyen's] individual arbitration concludes." (Reply at 20.) As to Plaintiffs' class claims, Tesla correctly notes that the arbitration agreement precludes such claims, thereby asking that the Court dismiss them. (*See* Mot. at 6–7; Reply at 2.) Plaintiffs oppose a stay, arguing, quite peculiarly and without support, that a stay "is not permitted here." (*See* Opp'n at 16.)

The Court first dismisses Plaintiffs' class claims, which are barred by Plaintiffs' individual arbitration agreements. Second, "[a]s to nonarbitrable claims and issues . . . the district court has discretion whether to stay the litigation pending arbitration." *Winfrey v. Kmart Corp.*, 692 F. App'x 356, 357 (9th Cir. 2017) (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979)). A trial court may grant a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01422-JLS-JDE | Date: April 06, 2020 |
| Title: Hugh Nguyen v. Tesla, Inc. | |

stay "pending resolution of independent proceedings which bear upon the case" where "it is efficient for [the court's] own docket and [is] the fairest course for the parties." *Leyva*, 593 F.2d at 863.

Although a stay is mandatory as to Plaintiffs' individual, arbitrable claims, the Court has discretion to decide whether to stay the proceedings as to Nguyen's nonarbitrable requests for public injunctive relief under the CLRA, UCL, and FAL. The Court finds that a stay is proper—even incumbent upon the Court—in these circumstances. For the Court to order public injunctive relief under the CLRA, UCL, and FAL, Nguyen must succeed on the merits of his claims under those statutes. Therefore, "[a] stay is most consistent with Rule 1 of the Federal Rules of Civil Procedure and these Plaintiffs' agreement to arbitrate their individual claims." *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1131 (N.D. Cal. 2018).

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Tesla's Motion to Compel, compelling arbitration of Plaintiffs' individual claims but declining to compel arbitration of Plaintiff Nguyen's requests for public injunctive relief. The Court also DISMISSES Plaintiffs' class claims and STAYS the proceedings pending arbitration. Plaintiffs must submit their individual, arbitrable claims against Tesla to binding arbitration. The parties are ORDERED to file a joint status report at the earlier of **six (6) months** from the date of this Order or within **ten (10) days** of completion of the arbitration proceedings.

Initials of Preparer:  tg